No. 25-2494

IN THE

# United States Court of Appeals for the Eighth Circuit

IOWA ASSOCIATION OF BUSINESS AND INDUSTRY, *et al.*,

*Plaintiffs-Appellees*,

v.

IOWA INSURANCE COMMISSIONER, Doug Ommen,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Southern District of Iowa
Case No. 4:25-cv-211
(The Honorable Stephanie M. Rose)

## BRIEF OF DEFENDANT-APPELLANT


BRENNA BIRD
Attorney General of Iowa

ERIC WESSAN
*Solicitor General*

PATRICK C. VALENCIA
*Deputy Solicitor General*

Hoover State Office Building
1305 East Walnut Street
Des Moines, Iowa 50319
(515) 823-9117 / (515) 281-8770
eric.wessan@ag.iowa.gov
patrick.valencia@ag.iowa.gov


October 1, 2025


*Counsel for Defendant-Appellant*

## SUMMARY OF CASE AND STATEMENT ON ORAL ARGUMENT

Iowa's Legislature enacted Senate File 383 to restrict pharmacy benefit managers ("PBMs") and third-party payors' ability to hurt customers, hurt pharmacies, and engage in misleading conduct. The law protects Iowa's community pharmacies and Iowans' access to healthcare—ensuring better choice, care, costs, and health outcomes. The district court preliminarily enjoined enforcement of 13 sections of SF383, applying ERISA preemption and the First Amendment. Though the court erred on the merits, there are other threshold errors requiring vacatur.

This case presents key questions of justiciability, ERISA preemption's scope, and federal courts' equitable authority to grant injunctive relief. This Court's action is needed to ensure the limits of Article III, the Supremacy Clause, and equity are applied.

*First*, the court determined Plaintiffs have standing and a cause of action to challenge several sections that do not regulate Plaintiffs. *Second*, the court skipped a key part of the ERISA preemption analysis, which Supreme Court precedent says should save at least some of the law now enjoined. *Third*, the court granted nonparties injunctive—despite the Supreme Court's instruction otherwise.

Defendant requests 15 minutes per side for oral argument.

**TABLE OF CONTENTS**

**Page**

SUMMARY OF CASE AND STATEMENT ON ORAL ARGUMENT ............ i

TABLE OF AUTHORITIES ............ iv

STATEMENT OF JURISDICTION ............ 1

STATEMENT OF THE ISSUES FOR REVIEW ............ 1

INTRODUCTION ............ 3

STATEMENT OF THE CASE ............ 5

I. Pharmacy Benefit Managers' Outsized Influence. ............ 5

II. Iowa Enacts Senate File 383 to Protect Iowans' Healthcare. ............ 11

III. A Group of Third-Party Payors Sue to Enjoin SF383 In Its Entirety. ............ 14

SUMMARY OF THE ARGUMENT ............ 15

ARGUMENT ............ 19

I. Standard Of Review. ............ 20

II. Plaintiffs' Claims Against the Parts of SF383 Regulating Only PBMs Are Not Justiciable. ............ 20

A. Plaintiffs lack standing to challenge laws regulating only PBMs. ............ 21

B. Plaintiffs lack equitable cause of action to assert preemption claim against laws regulating only PBMs. ............ 27

C. Plaintiffs lack standing to challenge section 510B.4B(4). ............ 30

**TABLE OF CONTENTS—Continued**

**Page**

III. Plaintiffs Are Not Likely to Succeed on the Preemption Merits. .......... 30

A. The district court erred by failing to consider ERISA's insurance Saving Clause. .......... 31

B. No section is "connection with" preempted. .......... 39

IV. Plaintiffs Are Not Likely to Succeed on the First Amendment Merits. .......... 52

A. Section 510B.4B(2)(*a*)'s notice requirement. .......... 52

B. Section 510B.4(4)'s referral-discrimination prohibition. .......... 57

V. The Injunction Is Overbroad. .......... 61

A. The district court erred by granting relief to nonparty PBMs. .......... 62

B. The district court erred by enjoining enforcement of section 510B.8B(3) as inseverable. .......... 65

VI. The District Court Abused Its Discretion by Downplaying the Irreparable Harm to the State and Public and by Waiving the Injunction Bond. .......... 69

A. The other preliminary-injunction factors weigh against relief. .......... 69

B. The district court should have required injunction bond as Rule 65(c) mandates. .......... 71

CONCLUSION .......... 73

CERTIFICATE OF COMPLIANCE .......... 74

CERTIFICATE OF SERVICE .......... 75

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*1-800-411 Pain Referral Serv. LLC v. Otto*,
744 F.3d 1045 (8th Cir. 2014) .......... 2, 53, 55
*281 Care Committee v. Arneson*,
638 F.3d 621 (8th Cir. 2011) .......... 22
*Abbott v. Perez*,
585 U.S. 579 (2018) .......... 69
*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004) .......... 50, 51
*Am. Fed'n of Tchrs. v. Bessent*,
2025 WL 2313244 (4th Cir. Aug. 12, 2025) .......... 19, 20
*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) .......... 1, 28
*Auer v. Trans Union, LLC*,
902 F.3d 873 (8th Cir. 2018) .......... 30
*Brandt v. Griffin*,
147 F.4th 867 (8th Cir. 2025) .......... 58, 59, 60
*Breeden v. Iowa Dep't of,
Corrs.*, 887 N.W.2d 602 (Iowa 2016) .......... 65
*Bribriesco-Ledger v. Klipsch*,
957 N.W.2d 646 (Iowa 2021) .......... 59
*Cal. Div. of Lab. Standards Enf't v. Dillingham Const., N.A., Inc.*,
519 U.S. 316 (1997) .......... 39
*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
447 U.S. 557 (1980) .......... 2, 52, 56
*City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*,
636 F.2d 1084 (5th Cir. 1981) .......... 72
*De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*,
520 U.S. 806 (1997) .......... 46
*Dept. of Educ. v. Brown*,
600 U.S. 551 (2023) .......... 21
*DeVillier v. Texas*,
601 U.S. 285 (2024) .......... 28
*Dixon v. City of St. Louis*,
950 F.3d 1052 (8th Cir. 2020) .......... 2, 20

**Page(s)**

*Edenfield v. Fane*,
507 U.S. 761 (1993) .......... 56
*Egelhoff v. Egelhoff*,
532 U.S. 141 (2001) .......... 42
*Ex parte Young,*
209 U.S. 123 (1908) .......... 1, 29
*FMC Corp. v. Holliday*,
498 U.S. 52 (1990) .......... 32
*Free Speech Coal., Inc. v. Att'y Gen.*,
825 F.3d 149 (3d Cir. 2016) .......... 24
*GLBT Youth v. Reynolds*,
114 F.4th 660 (8th Cir. 2024) .......... 20, 21
*Gunn v. Minton*,
568 U.S. 251 (2013) .......... 28
*H&R Block, Inc. v. Block, Inc.*,
58 F.4th 939 (8th Cir. 2023) .......... 19
*Hodak v. City of St. Peters*,
535 F.3d 899 (8th Cir. 2008) .......... 27
*Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*,
182 F.3d 598 (8th Cir. 1999) .......... 69
*Ky. Ass'n of Health Plans, Inc. v. Miller*,
538 U.S. 329 (2003) .......... 1, 31, 32, 33, 35, 36, 37, 38
*Liberty Mut. Insurance v. Donegan*,
746 F.3d 497 (2d Cir. 2014) .......... 27
*Lorillard Tobacco Co. v. Reilly*,
533 U.S. 525 (2001) .......... 57
*Metro. Life. Ins. Co. v. Massachusetts*,
471 U.S. 724 (1985) .......... 42
*Missouri Prot. & Advoc. Servs., Inc. v. Carnahan*,
499 F.3d 803 (8th Cir. 2007) .......... 25
*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
514 U.S. 645 (1995) .......... 39, 41, 42, 46, 49
*PCMA v. Gerhart*,
2015 WL 616444 (S.D. Iowa 2015) .......... 34
*PCMA v. Mulready*,
78 F.4th 1183 (10th Cir. 2023) .......... 25, 33
*PCMA v. Rowe*,
429 F.3d 294 (1st Cir. 2005) .......... 6, 51, 55, 56

Page(s)

*PCMA v. Wehbi*,
18 F.4th 956 (8th Cir. 2021) . 2, 24, 25, 34, 39, 40, 41, 42, 43, 47, 48, 49
*Pharm. Rsch. & Manufacturers of Am. v. Stolfi*,
2025 WL 2448851 (9th Cir. Aug. 26, 2025) .................................... 2, 53
*Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*,
530 F.3d 724 (8th Cir. 2008) ................................................. 1, 19, 69
*Powers v. Ohio*,
499 U.S. 400 (1991) ................................................................ 27
*Prudential Ins. Co. of Am. v. National Park Medical Ctr., Inc.*,
413 F.3d 897 (8th Cir. 2005) ................................................. 27, 36
*Religious Sisters of Mercy v. Becerra*,
55 F.4th 583 (8th Cir. 2022) ................................................... 25
*Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*,
826 F.3d 1030 (8th Cir. 2016) ................................................ 71
*Rodgers v. Bryant*,
942 F.3d 451 (8th Cir. 2019) .................................................. 63
*Rush Prudential HMO, Inc. v. Moran*,
536 U.S. 355 (2002) ................................................................ 38
*Rutledge v. PCMA*,
592 U.S. 80 (2020) .............. 1, 5, 6, 34, 39, 40, 41, 42, 43, 44, 46, 49, 50
*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ................................................................ 21
*State v. Abrahamson*,
696 N.W.2d 589 (Iowa 2005) .................................................. 60
*Steel Co. v. Citizens for a Better, Env.*,
523 U.S. 83 (1998) .................................................................. 21
*Steffel v. Thompson*,
415 U.S. 452 (1974) ................................................................ 22
*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ............................................................ 1, 22
*Tenn. Electric v. Tenn Valley Auth*,
306 U.S. 118 (1939) ................................................................ 29
*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ............................................ 2, 23, 62, 63, 64
*Turtle Mountain Band of Chippewa Indians v. Howe*,
137 F.4th 710 (8th Cir. 2025) ................................................. 28
*UNUM Life Ins. Co. of Am. v. Ward*,
526 U.S. 358 (1999) ................................................................ 38

**Page(s)**

*Veix v. Sixth Ward Bldg. & Loan Ass'n*,
310 U.S. 32 (1940) ........ 11, 70

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ........ 19

*Zanders v. Swanson*,
573 F.3d 591 (8th Cir. 2009) ........ 22

*Zauderer v. Office of Disciplinary Counsel*,
471 U.S. 626 (1985) ........ 2, 53

**Statutes**

28 U.S.C. § 1292 ........ 1

28 U.S.C. § 1331 ........ 1

29 U.S.C. § 1001 ........ 39

29 U.S.C. § 1144 ........ 2, 31, 39

Iowa Code § 4.4 ........ 2, 20, 60

Iowa Code § 4.12 ........ 2, 20, 65

Iowa Code § 510B.1 ........ 12, 13, 32

Iowa Code § 510B.4 ........ 13, 37, 57, 58, 59, 60

Iowa Code § 510B.4B ..... 12, 13, 14, 20, 23, 30, 36, 37, 38, 46, 47, 49, 50, 51, 52, 58, 60, 68

Iowa Code § 510B.8 ........ 12, 21, 23, 36, 37, 38, 45, 46

Iowa Code § 510B.8B ........ 12, 14, 21, 23, 66, 68

Iowa Code § 510B.8D ........ 13, 38, 44, 45, 65

**Rules**

Fed. R. Civ. P. 65(c) ........ 71

**Other Authorities**

Samuel L. Bray & Paul B. Miller, *Getting Into Equity*,
97 Notre Dame L. Rev. 1763 (2022) ........ 29

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 and issued its order granting in part Plaintiffs' motion for preliminary injunction on July 21, 2025. App.Vol.IV.617-703, R.Doc.54. Defendant timely appealed on July 25. R.Doc.56. This Court has jurisdiction under 28 U.S.C. § 1292(a)(1) to review an interlocutory order granting a preliminary injunction. *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 730 (8th Cir. 2008).

## STATEMENT OF THE ISSUES FOR REVIEW

1. Whether Plaintiffs' claims for injunction relief against laws that are not enforceable against them are justiciable.

**Cases**: *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)

*Ex parte Young,* 209 U.S. 123 (1908)

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015)

2. Whether the district court abused its discretion by enjoining enforcement of 10 SF383 sections as "connection with" preempted under ERISA without applying ERISA's Saving Clause.

**Cases**: *Rutledge v. PCMA*, 592 U.S. 80 (2020)

*Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003)

*PCMA v. Wehbi*, 18 F.4th 956 (8th Cir. 2021)

**Statutes**: 29 U.S.C. § 1144(a)

29 U.S.C. § 1144(b)(2)(A

3. Whether the First Amendment prohibits regulating inherently misleading commercial speech.

**Cases**: *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980)

*Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985)

*1-800-411 Pain Referral Serv. LLC v. Otto*, 744 F.3d 1045 (8th Cir. 2014)

*Pharm. Rsch. & Manufacturers of Am. v. Stolfi*, 2025 WL 2448851 (9th Cir. Aug. 26, 2025)

**Statute**: Iowa Code § 4.4(1)

4. Whether the district court abused its discretion in granting nonparty relief and declining to apply Iowa's severability law.

**Case**: *Trump v. CASA, Inc.*, 606 U.S. 831 (2025)

**Statute**: Iowa Code § 4.12

5. Whether the district court abused its discretion in assessing the preliminary-injunction factors and waiving the mandatory injunction-bond requirement.

**Case**: *Dixon v. City of St. Louis*, 950 F.3d 1052 (8th Cir. 2020)

## INTRODUCTION

Pharmacy benefit managers ("PBMs")—and their affiliated health benefit plans—leverage their outsized market power to impose coercive cost and network restrictions on Iowa pharmacies. That wreaks havoc across Iowa, leaving many Iowans in pharmacy deserts and with skyrocketing drug costs. So Iowa's Legislature enacted Senate File 383 to minimize PBMs' harmful practices and to increase transparency in the system. SF383 restricts PBMs' and third-party payors' ability to engage in misleading conduct. That in turn will reduce harm to community pharmacies and protect Iowans' access to healthcare, thus ensuring better choice, care, costs, and—crucially—health outcomes.

Plaintiffs—an Iowa business representative organization, two ERISA plans, and two ERISA-plan sponsors—sought sweeping emergency injunctive relief against Iowa Insurance Commissioner Doug Ommen's enforcement of SF383. Plaintiffs challenged 26 parts of the statute on ERISA-preemption and First Amendment grounds. The district court enjoined enforcement of 13 of them.

But five of those enjoined sections are not even enforceable against Plaintiffs. They impose duties only on PBMs. Whether viewed through

an injury-in-fact, redressability, or cause-of-action lens, the picture is clear: Plaintiffs' claims against laws regulating only PBMs are not justiciable. Yet the district court brushed off those concerns, because it believed Plaintiffs are correct on the merits. But standing is an independent requirement the district court failed to properly assess.

The trouble continues with the district court's merits analysis, which missed a key part of the ERISA-preemption analysis: ERISA's insurance Saving Clause. And that clause saves every enjoined section. Couple that with the district court's conclusion that two parts of SF383 violate the First Amendment because—in the court's telling—SF383 does not address inherently misleading speech, and Plaintiffs' lack of likelihood of success on the merits becomes clear.

Even if Plaintiffs could succeed on the merits, the injunction issued is far too broad. It purports to grant nonparties relief—despite the Supreme Court's recent admonition that injunctive relief may extend to nonparties only where that is an incidental effect of the party-specific relief. Here, the district court purposefully granted nonparty relief to avoid what it saw as a pyrrhic victory. But that reality speaks not to

remedies available here but to Plaintiffs' decision to not include any of their PBMs as plaintiffs.

Plaintiffs failed to carry their burden at every step. The district court should have held them to account for that failure. This Court should vacate the injunction.

## STATEMENT OF THE CASE

### I. Pharmacy Benefit Managers' Outsized Influence.

"Pharmacy benefit managers (PBMs) are a little-known but important part of the process by which many Americans get their prescription drugs." *Rutledge v. PCMA*, 592 U.S. 80, 83 (2020). Before reaching a patient, prescription drugs flow through a complex system of intermediaries with different interests, stakeholders, and incentives. PBMs are the intermediaries between drug manufacturers, pharmacies, and employer-sponsored health plans.

PBMs interact with all facets of the prescription drug market. *See generally* App.Vol.I.148, R.Doc.31-1 (Wiese Decl.). PBMs first negotiate volume discounts with drug manufacturers, including accepting rebates from manufacturers in return for placing that manufacturer's drug on

the PBMs' drug formulary (the list of drugs covered in the PBM's network). *See, e.g.*, App.Vol.I.173-175, R.Doc.31-4 ¶¶12-18.

Next, PBMs contract with pharmacies to create the PBM's own network of preferred pharmacies. Then, PBMs contract with health benefit plans to administer their prescription drug benefits, bringing PBM's curated pharmacy network to the negotiating table.

Finally, PBMs act as claims processors: "When a beneficiary of a prescription-drug plan goes to a pharmacy to fill a prescription, the pharmacy checks with a PBM to determine that person's coverage and copayment information." *Rutledge*, 592 U.S. at 84. The PBM reimburses the pharmacy for the prescription, less the beneficiary's cost-sharing amount. Then the plan reimburses the PBM. *Id.*

But reimbursements are also a profit center for PBMs. "A PBM's reimbursement from a plan often differs from and exceeds a PBM's reimbursement to a pharmacy. That difference generates a profit for PBMs." *Id.* That spread pricing is a byproduct of PBMs' position as intermediary. PBMs often also profit from rebates negotiated with the manufacturers. *PCMA v. Rowe*, 429 F.3d 294, 298 (1st Cir. 2005).

PBMs have captured such an outsized role in the process that they often reimburse pharmacies below cost; indeed, many PBMs own and operate pharmacies of their own and leverage that market power to deploy coercive restrictions—forcing consumers to obtain prescriptions from PBM-affiliated pharmacies, regardless of whether that benefits consumers. App.Vol.I.151-152, R.Doc.31-1 ¶¶12-18; R.Doc.24-6 ¶5; App.Vol.I.186-187, R.Doc.31-6 ¶5; App.Vol.I.171-172, R.Doc.31-4 ¶¶8-9; App.Vol.I.174, R.Doc.31-4 ¶13; App.Vol.I.175-176, R.Doc.31-4 ¶¶20-23; App.Vol.I.190, R.Doc.31-7 ¶6. A 2018 article explained that the PBM operated by CVS reimburses a CVS pharmacy $400.65 for a fentanyl patch and $5.86 for Ibuprofen, but reimburses unaffiliated pharmacies $75.74 for the patch and $1.39 for the Ibuprofen. Linette Lopez, *What CVS is Doing to Mom-and-Pop Pharmacies in the U.S. Will Make Your Blood Boil,* Business Insider (Mar. 30, 2018), tinyurl.com/vqph452.

As PBMs self-deal, unaffiliated pharmacies suffer, especially independent, rural pharmacies. *See* App.Vol.I.152, R.Doc.31-1 ¶¶19-22. "The more prescriptions [they] fill, the more money [they] lose." Stephen Gruber-Miller, *Saving pharmacies or raising drug costs? Iowa Gov. Kim*

*Reynolds signs law regulating PBMs*, DSM Register, (June 12, 2025), perma.cc/WGR3-LH6G.

Those coercive tactics cause pharmacy deserts in Iowa. App.Vol.I.190, R.Doc.31-7 ¶6; App.Vol.I.166, R.Doc.31-3 ¶¶5-6; App.Vol.I.167, R.Doc.31-3 ¶12. "Local pharmacies, especially in rural areas, are vital to community health and local hospitals but are being driven out by opaque, one-sided contracts—evidenced by the closure of 34 rural pharmacies in Iowa last year." App.Vol.I.45, R.Doc.1-1 at 2; App.Vol.I.176, R.Doc.31-4 ¶23. And more than 150 Iowa pharmacies have closed in the last decade. *See* Robin Opsahl, *Bill regulating pharmacy benefit managers passes Iowa Senate*, Iowa Capital Dispatch (Apr. 28, 2025), tinyurl.com/4y679x3u.

PBMs' opaque, coercive practices delay or disrupt access to much-needed drugs, and often deny continuity of care, especially care that had been integrated with local providers. App.Vol.I.162-163, R.Doc.31-2 ¶¶7-9; R.Doc.24-6 ¶5; App.Vol.I.190, R.Doc.31-7 ¶¶6, 7. And that harms Iowans' health outcomes. R.Doc.24-6 ¶5; App.Vol.I.175, R.Doc.31-4 ¶18. One Iowa pharmacy is unable to fill any prescriptions for employees of the second-largest employer in the community because those employees

are forced to use a chain pharmacy, causing "several patients struggle to receive their medications." App.Vol.I.187, R.Doc.31-6 ¶6.

Yet because of PBMs' outsized power, many pharmacies have no choice but to deal with PBMs. App.Vol.I.166-167, R.Doc.31-3 ¶¶6-10; App.Vol.I.150-152, R.Doc.31-1 ¶¶9-15. Then if a pharmacy declines to fill a prescription at a loss, it faces termination from the PBM's network and closure. App.Vol.I.166-167, R.Doc.31-3 ¶10.

"Over time, consolidation has led to three major PBMs controlling 80% of the market and a close affiliation with both insurers and pharmacies." App.Vol.I.45, R.Doc.1-1 at 2. "This vertical integration" "often result[s] in unaffordable drug costs." *Id.*

Though PBMs argue they lower drug prices by negotiating volume discounts and increasing efficiencies in plan administration, non-transparent PBMs in fact contribute to the trend of increased drug prices. App.Vol.I.174, R.Doc.31-4 ¶¶13-16; App.Vol.I.149, R.Doc.31-1 ¶6; App.Vol.I.154-155, R.Doc.31-1 ¶¶24-30; App.Vol.I.157-159, R.Doc.31-1 ¶¶38-43. That much is clear by comparing plan sponsors' savings after moving to a transparent PBM. App.Vol.I.158, R.Doc.31-1 ¶¶41, 42

($35,000 monthly savings for one plan sponsor as to just one specialty drug; triple rebate savings for another).

"PBM[s] actually win[] when list price go up." Alex M. Azar II, U.S. Secretary of Health & Human Services, *Fixing Healthcare: Driving Value Through Smart Purchasing and Policy* (May 16, 2018), tinyurl.com/kwmyhve3. Secretary Azar provided a helpful anecdote to show this patient-harming practice in action:

> Imagine you take a $1,000 drug. The PBM working for your insurance plan negotiates a 30 percent rebate, $300, which gets sent back to your employer, minus a percentage cut for the PBM. Now imagine the list price goes up to $1,500-now the rebate would be $450, allowing the PBM to keep the added $150, while the patient pays significantly more in cost-sharing.

*Id.* PBMs' nontransparent rebate structure skews incentives to increase drug costs—even though the PBMs can claim ever higher rebate "savings." All the while, PBMs reimburse at a markup rate bearing "no necessary relation to pharmacies' acquisition costs." App.Vol.I.151-152, R.Doc.31-1 ¶¶14-17 (three largest PBMs reimburse their affiliate pharmacies at 1,000% or greater markup 22% of the time).

That greatly harms consumers' pocketbooks. And Iowa's too. *See*, *e.g.*, Iowa DHHS, *Iowa Medicaid Update* (Jan. 2025)

hhs.iowa.gov/media/15349/download; Williams, et al, *Recent Trends in Medicaid Outpatient Prescription Drugs and Spending*, KFF (Oct. 11, 2024) perma.cc/Y42C-CE4B (prescription drugs account for about 6% of Medicaid spending). Worse, it harms Iowa's "vital interest[]" in its residents' "health," "safety," and "economic needs." *Veix v. Sixth Ward Bldg. & Loan Ass'n*, 310 U.S. 32, 38-39 (1940).

## II. Iowa Enacts Senate File 383 to Protect Iowans' Healthcare.

Across the nation, PBMs' practices have raised concerns. PBMs "exercise undue market power." White House, *Annual Report of the Council of Economic Advisers*, at 313 (Feb. 2018), perma.cc/5CUP-H2V4. And as forty-five States said: "PBM business practices have caused widespread harm," so States have passed an "array of measures" to regulate PBMs and "protect access to affordable prescription drugs." Amici Brief for California et al., *Rutledge v. PCMA*, 2020 WL 1372774, *5, *14 (2020).

Most States have acted to restrict PBMs' ability to harm consumers' pocketbooks and increase access to care. And after significant legislative debate, Iowa joined those States by enacting SF383 to "bring[] greater accountability to the role of [PBMs]." App.Vol.I.45, R.Doc.1-1 at 2. Senate

File 383 "target[s] PBM practices that harm both patients and independent pharmacies." App.Vol.I.45, R.Doc.1-1 at 2.

Plaintiffs claim SF383 will increase costs in Iowa, but that has not proven true in other States after they enacted similar laws, and is hotly contested by others in the industry who believe SF383 will assist in reducing costs. *See, e.g.*, App.Vol.I.154, R.Doc.31-1 ¶23; App.Vol.I.156, R.Doc.31-1 ¶¶31-33.

SF383 protects consumer choice and access to healthcare by ensuring fair reimbursement for all pharmacies. Iowa Code § 510B.8B(1). *E.g.*, App.Vol.I.162-163, R.Doc.31-2 ¶¶7-10. SF383 limits PBMs' ability to apply more favorable cost and reimbursement strategies to affiliated or favored pharmacies, like cost-sharing rates, fees, and other financial penalties or incentives. Iowa Code §§ 510B.4B(1)(*a*), (*f*). It establishes rules for how cost-sharing. *Id.* §§ 510B.8(5)-(7). It requires PBMs to reimburse pharmacies at least at the national average drug acquisition cost. *Id.* § 510B.8B(2). And it sets a floor for the reimbursement rate for retail pharmacies by requiring a $10.68 dispensing fee. *Id.* §§ 510B.8B(3), 510B.1(21A). It also requires PBMs to use "pass through" pricing, where

all rebates received from manufacturers are passed onto plan sponsors and not pocketed by PBMs. *Id.* §§ 510B.8D(1)-(2).

SF383 seeks to minimize PBMs' conflicts of interest. So it limits PBMs', and in smaller part third-party payors' (as defined, Iowa Code § 510B.1(22)), ability to steer business to their own affiliated pharmacies. The law prohibits discriminating against one pharmacy over another "with respect to participation, referral, or reimbursement of a covered service. *Id.* § 510B.4(4). They may set network-participation terms as they see fit, but SF383 requires those terms be applied equally to any willing pharmacy. *Id.* §§ 510B.4B(1)(*b*), (2)(*a*).

PBMs may not "promot[e] one participating pharmacy over another" or "compar[e] the reimbursement rates of a pharmacy against mail order pharmacy reimbursement rates" if a pharmacy has "agreed to participate" in the plan. *Id.* § 510B.4B(1)(*a*). Nor may they impose accreditation requirements on pharmacies beyond state requirements. *Id.* § 510B.4B(1)(*c*). These restrictions do not apply to third-party payors.

And SF383 aims to increase transparency in the system. A third-party payor may restrict access to its network, but if it does so it must make sure all pharmacies in the plan's geographic coverage area are

notified of the plan's decided terms of participation. *Id.* §§ 510B.4B(2)(*a*)-(*b*). And it must inform its beneficiaries who has chosen to participate in their pharmacy network. *Id.* As for PBMs, they must issue a quarterly report documenting when they have reimbursed 10% above or below the national average acquisition cost. *Id.* §§ 510B.8B(4)(*a*), (*b*), (*d*).

Lastly, SF383 gives pharmacies the right to appeal PBM decisions, and gives covered persons and pharmacies the right to enforce some SF383 duties. *Id.* §§ 510B.8E(1)-(3), 510B.4B(4).

SF383 passed both chambers on May 12; the Governor signed it into law on June 11. App.Vol.I.45, R.Doc.1-1 at 2. SF383 took effect on July 1.

## III. A Group of Third-Party Payors Sue to Enjoin SF383 In Its Entirety.

Plaintiffs—an Iowa business representative organization, two ERISA plans, and two ERISA-plan sponsors—sued on June 23 and moved for temporary restraining order and preliminary injunctive relief on June 26. R.Docs. 1, 6. That day, Defendant resisted and requested a hearing. R.Doc.8. The district court issued an *ex parte* TRO on June 30, enjoining Defendant's enforcement of the law against only Plaintiffs and Plaintiff-organization's members. R.Doc.17.

After a preliminary-injunction hearing, the district court granted in part and denied in part Plaintiffs' motion. App.Vol.IV.617-703, R.Doc.54. Plaintiffs sought relief against 26 parts of SF383. The district court enjoined Defendant's enforcement of 13 of those parts, one under two theories—10 under ERISA-preemption grounds, two under First Amendment, and two as inseverable (including one it had found preempted).

Despite Defendant's request to limit injunctive relief to parties to the case, the district court extended relief to nonparty PBMs "who assist in the administration" of Plaintiffs' plans.

Defendant's appeal and Plaintiffs' cross-appeal followed.

## SUMMARY OF THE ARGUMENT

**I.** Plaintiffs' claims against laws that do not regulate Plaintiffs are non-justiciable. But the district court enjoined Defendant's enforcement of five sections that impose duties only on nonparty PBMs. Plaintiffs are not PBMs, so those sections are not enforceable against Plaintiffs. Plaintiffs lack injury-in-fact and redressability tied to those sections. Yet the district court found likelihood of success on the merits backfilled standing. But standing is a separate inquiry. Properly

analyzed as standing, Plaintiffs lack standing. Plaintiffs also lack cause of action—they sue under the Supremacy Clause but lack an equitable cause of action against a law that is not enforceable against them.

**II.** The district court erred in finding 10 sections ERISA preempted. First, it failed to apply a key part of ERISA's preemption analysis. The ERISA Saving Clause prevents preempting state laws that regulate insurance. Supreme Court and this Court's precedent saved laws like several SF383 sections. And for the other sections, the analysis applies the same to save them from preemption.

On the merits of the preemption question the district court erred. "Connection with" ERISA preemption pertains to state laws binding plans or administrators to specific rules about benefit eligibility or requiring payment of specific benefits. So state laws that do not dictate the "who" or the "what" of plan benefits are not preempted. Each SF383 section survives that standard.

Cost-related regulations do not dictate benefit eligibility or coverage, they merely affect the cost of benefits while leaving discretion to the plan. And contract terms noting state law cannot intrude on

fiduciary duties, because fiduciaries operate against a backdrop of state law.

Similarly, prohibiting PBMs from unreasonably designating a prescription drug as specialty requires PBMs to act reasonably. The district court preempted that section only because it read the reasonable standard out of the law.

SF383 then creates a cause of action authorizing consumers or pharmacies to enforce a subset of the duties SF383 created. The district court determined this cause of action was preempted because it created an alternative to ERISA's enforcement mechanisms. That overstated what the law authorizes.

**III.** SF383's notice requirement and referral-discrimination prohibition regulate inherently misleading commercial speech. They do not violate the First Amendment. The district court concluded they violated the First Amendment because they did not relate to any inherently misleading speech. But PBMs' and plans' opaque and costly practices proceed under the guise of saving consumers money—restricting those practices furthers Iowa's substantial interests in transparency, choice, and access to healthcare.

**IV.** Even if some injunction is warranted, the injunction is overbroad. The court extended injunctive relief to nonparties, despite *CASA v. Trump*'s holding that courts lack authority to do so. Defendant argued any relief should be limited to Plaintiffs and ABI members, none of whom are PBMs. The court determined Plaintiffs might be harmed if PBMs choose to follow state law, so it issued an "as applied" injunction enjoining Defendant from enforcing the law against nonparty PBMs.

Then the court failed to apply SF383's severability clause and enjoined SF383's dispensing fee requirement as inextricably tied to SF383's anti-discrimination framework. But that fee has independent effect. PBMs and plans might pass the added cost onto consumers, but consumers often choose to pay a little more for what they view as a better-quality or a necessary product. And here that means Iowans might choose to pay for the ability to visit their local, rural pharmacy. That independent effect furthers the Legislature's intent to increase consumer access and help rural pharmacies avoid operating at a constant loss. The dispensing fee should not be enjoined.

**V.** The district court abused its discretion in assessing the remaining preliminary-injunction factors. It reasoned the injunction

necessary to preserve the status quo. But under the TRO, SF383 took effect on July 1 as to all but the named parties. So when the court enjoined Defendant from enforcing the law against nonparty PBMs, it disrupted that status quo. The court further abused its discretion by failing to require injunction bond. Rule 65(c)'s mandatory language requires a bond before the injunction may take effect. Courts lack discretion to waive that requirement altogether.

This Court should vacate the preliminary injunction.

## ARGUMENT

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Plaintiffs bear the burden. *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 946 (8th Cir. 2023). Because Plaintiffs seek to enjoin enforcement of a state statute, they must show they are "likely to prevail on the merits." *Rounds*, 530 F.3d at 730.

The Fourth Circuit recently detailed the challenge in winning an injunction when there are serious standing, cause of action, and merits concerns. *Am. Fed'n of Tchrs. v. Bessent*, 2025 WL 2313244, at *3 (4th Cir. Aug. 12, 2025). Each issue must be considered as a prerequisite to

succeed on the merits. That "multiplicative problem" means that even if plaintiffs have "good odds to win any one issue, their overall odds crater because they must run the table to ultimately prevail." *Id.*

## I. Standard Of Review.

This Court reviews a preliminary injunction for abuse of discretion, reviewing legal conclusions de novo and factual findings for clear error. *Rounds*, 530 F.3d at 730. A district court abuses its discretion when it disregards "a relevant factor that should have been given significant weight." *Dixon v. City of St. Louis*, 950 F.3d 1052, 1055 (8th Cir. 2020) (quotation marks omitted).

And when interpreting Iowa statutes, this Court applies Iowa's codified rules of construction. *See GLBT Youth v. Reynolds*, 114 F.4th 660, 670-671 (8th Cir. 2024). "In enacting a statute, it is presumed that . . . [c]ompliance with the Constitutions of the state and of the United States is intended." Iowa Code § 4.4(1). Iowa's laws are presumed severable. *id.* § 4.12.

## II. Plaintiffs' Claims Against the Parts of SF383 Regulating Only PBMs Are Not Justiciable.

The court enjoined Defendant's enforcement of five sections that apply only to PBMs. *See* Iowa Code §§ 510B.4B(1)(*b*), (*d*), (*f*); *id.*

§ 510B.8(3); *id.* § 510B.8B(3). But Plaintiffs are not PBMs, so those five sections do not cause them injury-in-fact. Any harm is not redressable by an order of this Court, because any injunction cannot grant these Plaintiffs relief. And even if they have standing, Plaintiffs lack cause of action under *Ex parte Young* because those SF383 sections are not about to be enforced against Plaintiffs. Indeed, they cannot be enforced against Plaintiffs.

The district court erred by creating a novel theory of standing. Worse, the court relied on precedent where similar standing and cause-of-action questions were not decided, because in those cases—unlike here—the regulated entity was party to the case. *See Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 91 (1998) ("[D]rive-by jurisdictional rulings . . . have no precedential effect.").

### A. Plaintiffs lack standing to challenge laws regulating only PBMs.

Article III standing is mandatory to proceed in federal court. *Dept. of Educ. v. Brown*, 600 U.S. 551, 560 (2023); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). At this stage, standing is assessed based on Plaintiffs' allegations. *GLBT Youth*, 114 F.4th at 667.

1. To establish injury-in-fact, Plaintiffs must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and . . . a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014); *Zanders v. Swanson*, 573 F.3d 591, 594 (8th Cir. 2009).

Plaintiffs cannot allege a credible threat of prosecution by a statute that does not apply to them. Indeed, "persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." *281 Care Committee v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011). Or Plaintiffs must allege that officials have threatened enforcement against them. *See Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (police warned plaintiff to stop proscribed conduct or else he would be prosecuted).

And here, no Plaintiffs are PBMs. Plaintiffs are two third-party payors and two Iowa businesses, one sponsoring a self-funded ERISA plan and the other an insured ERISA plan. As logic has it, a law imposing a duty only on PBMs cannot create a "credible threat of prosecution" against anyone other than a PBM.

Yet 5 of the 13 enjoined SF383 sections impose duties only on, and are enforceable only against, PBMs. *See* Iowa Code §§ 510B.4B(1)(*b*), (*d*), and (*f*) ("A pharmacy benefits manager shall not do any of the following"); 510B.8(3) (similar); 510B.8B(3) (similar); *see also* R.Doc.16 at 6-10 (highlighting in bold "the entity to which each particular provision is aimed"). Those laws do not allow Defendant to enforce those duties against these Plaintiffs.

For similar reason, Plaintiffs fail to establish redressability, even if they could establish injury-in-fact. If Plaintiffs succeed in establishing need for injunctive relief, that relief cannot extend to grant nonparties relief. *See Trump v. CASA, Inc.*, 606 U.S. 831, 841-847, 851-852 (2025). After all, courts cannot grant roving universal relief—particularly where, as here, plaintiffs waived any claim to a facial injunction and thus pursue relief only "as applied to Plaintiffs" and "as applied to ERISA plans." R.Doc.44 at 1, 2, 21

The district court recognized this hurdle for Plaintiffs' First Amendment claim. There the court concluded Plaintiffs lacked standing to support their First Amendment challenge to a section imposing duties

only on PBMs: Plaintiffs cannot "rest[] their claim to relief on the legal rights or interests of third parties." App.Vol.IV.632, R.Doc.54 at 16.

Yet for preemption, the court crafted a novel ERISA-preemption standing theory. Preemptively reaching the merits, instead of standing, the court said laws "that govern central matters of ERISA plan administration . . . impermissibly injure plans and plan sponsors, establishing standing to challenge" those laws. *Id.* In other words, the court reasoned if Plaintiffs are correct on the merits, then they must have standing. But success on the merits is not synonymous with standing. *Cf. Free Speech Coal., Inc. v. Att'y Gen.*, 825 F.3d 149, 173 n.21 (3d Cir. 2016) (success on preliminary-injunction factors "is a different inquiry" from standing).

The district court invoked precedent reasoning that "a regulation of PBMs functions as a regulation of an ERISA plan itself." App.Vol.IV.630, R.Doc.54 at 14 (quoting *PCMA v. Wehbi*, 18 F.4th 956, 966 (8th Cir. 2021)) (cleaned up). But *Wehbi* said that on the preemption merits question, not standing. The district court erred interpreting *Wehbi* to "provide[] dispositive guidance" on standing, App.Vol.IV.631, R.Doc.54 at 15.

Indeed, the cases the district court and Plaintiffs relied on for this theory of "functional interdependence" standing highlight the court's ultimate flaw: Those cases involved PBMs suing, and therefore did not address the standing question presented here. *See, e.g.*, *Wehbi*, 18 F.4th 956 (plaintiff was PBMs' trade association); *PCMA v. Mulready*, 78 F.4th 1183 (10th Cir. 2023) (same); App.Vol.IV.631, R.Doc.54 at 15 (relying on only those cases to support novel standing theory); R.Doc.44 at 3-4 (same).

2. Nor can the membership-organization Plaintiff, ABI, establish standing on behalf of its members. A membership organization may sue on behalf of its members if "(a) its members would otherwise have standing to sue in their own right; [and] (b) the interests it seeks to protect are germane to the organization's purpose." *Missouri Prot. & Advoc. Servs., Inc. v. Carnahan*, 499 F.3d 803, 809 (8th Cir. 2007). It must identify at least one member who has suffered the harm. *See Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 601-602 & n.12 (8th Cir. 2022).

Like with the other Plaintiffs, ABI does not plead that any of its members are PBMs. App.Vol.I.9, R.Doc.1 ¶8; R.Doc.19. ABI thus fails to establish standing under the first prong.

3. The district court incorrectly determined that Plaintiffs' standing was "reinforced by standard indemnification provisions in their PBM contracts." App.Vol.IV.631, R.Doc.54 at 15.

Plaintiffs forfeited that theory because they neither pleaded facts to support it, nor did they raise it or supporting facts in their motion for injunctive relief and initial declarations. Plaintiffs should not be allowed to present a brand-new standing theory relying on facts not raised until their reply brief. R.Doc.44 at 6.

More, Plaintiffs did not explain their attenuated indemnification theory. Plaintiffs began to explain that theory at the preliminary-injunction hearing, showing exactly how attenuated that theory is: "If the Iowa Bankers PBM follows the plan language," rather than following state law, the PBM might face a penalty from the State. App.Vol.IV.711, R.Doc.66 at 8:3-7. Then if the State enforces that penalty, the indemnification clause would trigger Plaintiff's liability. There are too many breaks in that causal chain for standing on that theory.

The two cases Plaintiffs and the district court cite, R.Doc.44 at 4-5; App.Vol.IV.631-632, R.Doc.54 at 15-16, undercut that theory. The first involved a plan and regulated party suing—because the regulated party

was a plaintiff, standing was not at issue. *See Prudential Ins. Co. of Am. v. National Park Medical Ctr., Inc.*, 413 F.3d 897, 901 (8th Cir. 2005). The second involved a regulated party suing to challenge a subpoena the State issued against that party. *Liberty Mut. Insurance v. Donegan*, 746 F.3d 497, 502 (2d Cir. 2014), *aff'd sub nom. Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312 (2016). Those cases do not support Plaintiffs' standing here on behalf of regulated third parties.

Plaintiffs and the district court cited no case where a plan sued on behalf of the nonparty regulated by the parts of the law the plan sought to enjoin. Instead, their cases show that, typically, it is a regulated entity that sues to enjoin enforcement of the regulation against that regulated entity. And that PBMs are litigious (which is why Plaintiffs cannot assert third-party standing, *see Powers v. Ohio*, 499 U.S. 400, 411 (1991); *Hodak v. City of St. Peters*, 535 F.3d 899, 904 (8th Cir. 2008)).

Plaintiffs lack standing to seek injunctive relief against parts of SF383 that undisputedly regulate only PBMs.

### B. Plaintiffs lack equitable cause of action to assert preemption claim against laws regulating only PBMs.

Even if Plaintiffs have standing, they lack equitable cause of action to challenge those five sections. "Federal courts are courts of limited

jurisdiction possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (cleaned up). "Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts;" instead they are "invoked defensively in cases arising under other sources of law, or asserted offensively pursuant to an independent cause of action designed for that purpose." *DeVillier v. Texas*, 601 U.S. 285, 291 (2024); *cf. Turtle Mountain Band of Chippewa Indians v. Howe*, 137 F.4th 710, 717 (8th Cir. 2025) ("To seek redress through § 1983, a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." (cleaned up)).

Plaintiffs pleaded a cause of action under the Supremacy Clause. App.Vol.I.11, R.Doc.1 at ¶15. But that clause does not create a cause of action; it is a "rule of decision." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324-325 (2015). It does not "give affected parties a constitutional (and hence congressionally unalterable) right to enforce federal laws against the States." *Id.*

So Plaintiffs must instead ground any cause of action in *Ex parte Young* and its concept of an anti-suit injunction, which, for persons "about to" be subject to state action that would violate federal law, allows

them to bring injunctive actions to forestall violation of their rights. 209 U.S. 123, 155-156 (1908). But Plaintiffs are not "about to" be subject to SF383's sections regulating PBMs. So they lack an equitable cause of action against those sections.

The district court said "Plaintiffs have demonstrated credible enforcement threats sufficient to invoke federal jurisdiction." App.Vol.IV.635, R.Doc.54 at 19. Though true for the SF383 sections imposing duties on Plaintiffs, that fails to grapple with the reality that five enjoined sections are enforceable only against PBMs.

Even if the district court correctly determined that Plaintiffs' indemnification theory of standing established injury, that does not absolve Plaintiffs' lack of cause of action. Plaintiffs must still establish the court's equitable jurisdiction. *See* Samuel L. Bray & Paul B. Miller, *Getting Into Equity*, 97 Notre Dame L. Rev. 1763, 1764, 1772-73 (2022) (equity does not have "causes of action" but instead a "suitor in equity" must have "a grievance" sufficient to invoke "equitable jurisdiction").

Equitable injury does not grant equitable cause of action; Plaintiffs must still establish a right, recognized at equity. *See Tenn. Electric v. Tenn Valley Auth*, 306 U.S. 118, 127-140 (1939). Here, Plaintiffs have

failed to establish the need for the anti-suit injunction, because they are not about to be enforced against, nor have they established any equitable right about to be inhibited.

At a minimum, given the belated nature of Plaintiffs' reliance on the indemnification clauses, the Court should vacate and remand for the district court to consider briefing on that attenuated, undeveloped theory.

### C. Plaintiffs lack standing to challenge section 510B.4B(4).

Plaintiffs' preemption claim against SF383's grant of a cause of action to "covered person[s] or pharmac[ies]" lacks redressability. Iowa Code § 510B.4B(4). Defendant does not enforce that section, so an injunction against his enforcement cannot redress Plaintiffs' alleged harm. *See Auer v. Trans Union, LLC*, 902 F.3d 873, 877 (8th Cir. 2018) (standing cannot be waived or forfeited because it is jurisdictional). Only an injunction against a "covered person or pharmacy"—the ones tasked with enforcement—can do that.

## III. Plaintiffs Are Not Likely to Succeed on the Preemption Merits.

The district court determined 10 sections were preempted in "connection with" ERISA. App.Vol.IV.702, R.Doc.54 at 86. That is wrong.

Worse, each should have been saved under ERISA's insurance Saving Clause. But the district court failed to analyze the Saving Clause.

### A. The district court erred by failing to consider ERISA's insurance Saving Clause.

Even if a court finds any part of SF383 impermissibly connected with ERISA, that is not the end: ERISA's Saving Clause saves from preemption generally applicable state laws regulating insurance. 29 U.S.C. § 1144(b)(2)(A). *First*, "it need only be a 'law . . . which regulates insurance.'" *Kentucky Ass'n of Health Plans v. Miller*, 538 U.S. 329, 336 n.1 (2003). *Second*, the law must "substantially affect the risk pooling arrangement between the insurer and the insured." *Id.* at 342.

The district court recognized that important part of the analysis when it laid out the standards, but it never analyzed the Saving Clause. App.Vol.IV.638-639, R.Doc.54 at 22-23. That failure requires vacating the injunction.

The enjoined SF383 sections fall within the Saving Clause. Only those applications to self-funded ERISA plans are excepted, because of the exception-within-the-exception "deemer" clause. And even then, those sections as applied to the PBM with whom the self-funded plan

contracts are saved. *See FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990) (state law can deem insured plan as insurance, but not a self-funded plan).

### 1. SF383 regulates insurance, thus satisfying *Miller*'s first prong.

SF383 is codified in Title XIII, subtitle 1, which houses Iowa's insurance laws and it tasks Iowa's Insurance Commissioner with enforcement. *See* Iowa Code § 510B.1(2). SF383 is not "a law of general application" that only has some bearing on insurance. *Miller*, 538 U.S. at 334.

Even the parts of SF383 that regulate PBMs still regulate insurance for purposes of ERISA's Saving Clause—PBMs are third-party providers contracting their services to health insurers. That goes for PBMs contracting with any type of plan, whether self-funded or insured.

*Miller* saved a state-imposed any-willing-provider law that applied to companies that administered self-insured insurance plans. 538 U.S. at 334-336 & n.1. Petitioners argued that law was not saved because the administrators were not sufficiently engaged in insurance. The Supreme Court rejected that argument: ERISA's Saving Clause "does not require that a state law regulate 'insurance *companies*' or even '*the business of insurance*.'" *Id.* at 336 n.1.

That analysis applies all the same here to PBMs that, though not insurers themselves, provide administrative services to plans.

The United States agreed with that result. Amicus Br. of United States, *PCMA v. Mulready* No. 22-6074, 2023 WL 2990378, *18 (10th Cir.) (Third-party PBMs are "sufficiently engaged in the 'activity of insurance' to come within the insurance savings clause's scope" (quoting *Miller*, 538 U.S. at 336 n.1)). After all, PBMs may be subject to insurance regulation. And States may apply their insurance laws to third parties with whom plans contract, "even where that results in indirect regulation of ERISA plans." *Id.* *20-*21 & n.4.

Plaintiffs' reliance on *Mulready* is misplaced. R.Doc.16 at 25. Though the United States's amicus brief in *Mulready* is relevant here, *Mulready*'s holding—preempting a State's any-willing-provider law—is not: "Oklahoma did not preserve a saving-clause argument." 78 F.4th at 1204. That distinguishes the posture here where the issue has been briefed and preserved.

Indeed, the Saving Clause was not at issue in any of the cases Plaintiffs invoked in the district court as not "hold[ing] that any aspect [of state PBM laws] is a saved state insurance regulation." R.Doc.16 at

25. *See Rutledge*, 592 U.S. at 91 (no preemption; no Saving Clause); *Wehbi*, 18 F.4th at 976 (no preemption to ERISA plans; no Saving Clause).

And in *Gerhart*, the district court did not address the Saving Clause, *PCMA v. Gerhart*, 2015 WL 616444, at *13 n.4 (S.D. Iowa 2015), then the State on appeal did not press that argument as an alternative basis for affirmance, Brief of Defendants/Appellees, *PCMA, v. Gerhart*, 2016 WL 427760 (8th Cir. Feb. 1, 2016). Courts' silence is not binding. *Gerhart*, like *Rutledge*, *Wehbi*, and *Mulready*, thus does not answer the Saving Clause question.

Plaintiffs contend SF383 is not "specifically directed toward entities engaged in insurance," because it is more than "minimally concerned with PBMs." R.Doc.16 at 25-26. But in their standing and preemption analysis, Plaintiffs argue that, because laws regulating PBMs are the "functional equivalent" of laws regulating ERISA plans, laws regulating PBMs dictate plan design and interfere with central matters of plan administration and are preempted.

Put differently, Plaintiffs argue laws regulating PBMs regulate insurance, and thus are preempted, but are not saved from preemption because they do not regulate insurance. Plaintiffs cannot have it both

ways. If laws regulating only PBMs have a "connection with" ERISA plans, then it follows that they regulate insurance for Saving Clause purposes.

More, once Plaintiffs' claims against laws regulating PBMs drop out due to standing, cause of action, or Saving Clause hurdles, that leaves six other sections the district court said were ERISA-preempted—and Plaintiffs cannot seriously argue laws regulating ERISA plans do not regulate insurance, even under their narrowed view of what it means to regulate insurance.

#### 2. Each enjoined section substantially affects the risk pool.

As to *Miller*'s second prong, state laws must "substantially affect the type of risk pooling arrangements insurers may offer." 538 U.S. at 339. That includes laws that "expand[] the number of providers" or "alter the scope of permissible bargains between insurers and insureds," including by "dictat[ing] to the insurance company the conditions under which it must pay for the risk that it has assumed." *Id.* at 338-339 & n.3. Though such laws need not "alter or control the actual terms of insurance policies." *Id.* at 338. In *Miller*, that meant the any-willing-provider

section was saved from preemption. *Id.* at 339; *see Prudential*, 413 F.3d at 909-911 (applying *Miller*).

Plaintiffs focused their argument against the Saving Clause on *Miller*'s first prong. Plaintiffs conceded that the any-willing-provider sections (Iowa Code §§ 510B.4B(1)(*b*), (2)(*a*)) and network access cost-sharing requirements (Iowa Code §§ 510B.4B(1)(*f*), 510B.8(3)) satisfy *Miller*'s second prong. R.Doc.16 at 26-27. Plaintiffs did not dispute this concession in the district court. R.Doc.31 at 38 (Defendant noting concession); R.Doc.44 at 18 (Plaintiffs disputing Saving Clause applicability, but not refuting the noted concession).

Plaintiffs' concession reflects *Miller* having saved an "any willing provider" law: "By expanding the number of providers," the law substantially affects "the type of risk pooling arrangements that insurers may offer." 538 U.S. at 338-339. SF383's similarly expands the services and number of pharmacies that may dispense benefits. They too substantially affect the risk pool and are saved. Any contrary argument under the second prong as to those four sections is waived. So if Defendant is correct under prong one, then those four sections should be saved from preemption.

That leaves six enjoined sections to analyze under *Miller*'s second prong.

The anti-discrimination section affects the risk pool. Iowa Code § 510B.4(4).[1] That section prohibits PBMs and third-party payors from discriminating against pharmacies and will "expand[] the number of providers from whom an insured may receive health services." *Miller*, 538 U.S. at 338-339 & n.3.

The specialty-drug section prohibits "[u]nreasonably designat[ing] a prescription drug as a specialty drug to prevent . . . or limit[]" access. Iowa Code § 510B.4B(1)(*d*). That "alter[s] the scope of permissible bargains between insurers and insureds," including by "dictat[ing] to the insurance company the conditions under which it must pay for the risk that it has assumed." *Miller*, 538 U.S. at 338-339 & n.3.

So too does the deductible-credit section, which requires calculating a covered person's deductible, and thus cost sharing, in a certain way. Iowa Code § 510B.8(6). That is not materially different from the network

[1] Plaintiffs cited the anti-discrimination section as Iowa Code § 510B.1(4), rather than § 510B.4(4). *But see* App.Vol.I.48, R.Doc.1-1 at 6 (official statutory text). But section 510B.1(4) is the definition of "covered person." Despite Defendant offering the correct cite in district court briefing, the district court adopted Plaintiffs' scrivener's error.

access cost-sharing requirements in sections 510B.4B(1)(*f*) and 510B.8(3), which Plaintiffs conceded satisfy *Miller*'s second prong.

And the contract-terms sections, which mandate each contract specify pass-through pricing, Iowa Code §§ 510B.8D(1), (2), alter plan risk by mandating rebates be passed onto the plan. The Supreme Court has "repeatedly held that state laws mandating insurance contract terms are saved from preemption." *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 375 (1999).

Finally, the enforcement-action section authorizes covered persons or pharmacies to enforce section 510B.4B's duties, like the any-willing-provider and cost-sharing sections Plaintiffs conceded affect the risk pool. Iowa Code § 510B.4B(4). Surely then a section allowing enforcement of those duties similarly affects the risk pool. *Miller*, 538 U.S. at 338-339 & n.3. *See also Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 366-367 (2002) (state law granting covered person right to independent review of benefits denials is saved from preemption because it affects risk pool).

* * *

ERISA's Saving Clause prevents preempting each of the 10 sections the district court found preempted. At a minimum, this Court should

vacate the injunction and remand to allow the district court to decide the question in the first instance.

**B. No section is "connection with" preempted.**

ERISA regulates private and union employer-provided benefit plans. 29 U.S.C. § 1001 *et seq.* It supersedes state laws that "relate to any" ERISA plan. 29 U.S.C. § 1144(a). And a state law "relate[s] to" an ERISA plan "if and only if it 'has a connection with or reference to such a plan.'" *Wehbi*, 18 F.4th at 967 (quoting *Rutledge*, 592 U.S. at 86). Plaintiffs bear the burden. *Id.*

The Supreme Court has kept ERISA preemption narrow, declining to preempt state laws regulating "areas where ERISA has nothing to say," *Cal. Div. of Lab. Standards Enf't v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 330-331 (1997), or state "laws of general applicability," unless they meaningfully impact ERISA benefits. *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 661 (1995). After all, "the practice of pharmacy is an area traditionally left to state regulation." *Wehbi*, 18 F.4th at 972; *Travelers*, 514 U.S. at 661.

Even this relatively constrained approach "veer[s] from the text" and transforms ERISA preemption into a "vague and potentially

boundless purposes and objectives preemption clause." *Rutledge*, 592 U.S. at 92 (Thomas, J., concurring) (cleaned up). As Justice Thomas explained, ERISA's plain text offers a two-part preemption test that is consistent with the "outcomes of [the Court's] recent cases—if not the reasoning." *Id.* Applying that here, the answer is "No." "That alone should resolve the case." *Id.* at 94. Defendant preserves challenge here to any test other than the textual one, R.Doc.31 at 17-18, but will proceed under the Supreme Court's "connection with" precedents.

The district court determined 10 SF383 sections were "connection with" preempted. App.Vol.IV.702, R.Doc.54 at 86. That is wrong.

**1. What is "connection with" preemption?**

"Connection with" preemption is concerned with state laws that either overlap with an area where ERISA already regulates or that preordain an ERISA plan's choices about who to cover or what benefits to provide. *Wehbi*, 18 F.4th at 968. If a state law "bind[s] plan administrators to specific rules for determining beneficiary status" (the who), or "requir[es] payment of specific benefits" (the what), then it may have an impermissible "connection with" ERISA plans. *Rutledge*, 592 U.S. at 87.

But "not every state law that affects an ERISA plan or causes some disuniformity in plan administration has an impermissible connection with an ERISA plan." *Id.* at 87. ERISA does not preempt state laws that "merely affect[] costs" or alter a plan's incentives or "shopping decisions" without forcing the "plan[] to adopt any particular scheme of substantive coverage." *Id.* at 87-88. If the law does not "require plans to provide any particular benefit to any particular beneficiary in any particular way," then it is not "connection with" preempted. *Id.* at 90.

And if an effect on ERISA plan benefit structure is "attributable to the independent actions of PBMs," there is no preemption. *Wehbi*, 18 F.4th at 969. That "responsibility lies first with the PBM," and not the law; downstream effects may alter incentives or shopping options but do not trigger preemption. *Rutledge*, 592 U.S. at 91; *Travelers*, 514 U.S. at 660. In effect, there is a proximate causation element to finding ERISA preemption of laws that regulate PBMs.

Some examples illustrate the "connection with" standard.

State laws may not dictate who is eligible for coverage under a plan. *Egelhoff v. Egelhoff*, 532 U.S. 141, 147-148 (2001). Nor may they mandate

coverage of particular benefits. *Metro. Life. Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985).

But a state law was not preempted when it imposed unequal surcharges on hospital billing rates, in turn creating an indirect economic influence that would push consumers to choose a certain plan. *Travelers*, 514 U.S. at 659-660. That law did not force certain coverage because the plan could still provide uniform benefits; it simply "affect[ed] a plan's shopping decisions." *Id.* at 660, 668. So too a state law that "require[d] PBMs to reimburse pharmacies for prescription drugs at a rate equal to or higher than the pharmacy's acquisition cost, because that does not "dictate plan choices." *Rutledge*, 592 U.S. at 88.

Even state-law enforcement mechanisms are permissible, because they do not dictate plan structure. *Id.* at 89, 91. If any downstream benefits denial results, "the responsibility lies first with the PBM for" not following the State's new cost regulation. *Id.* at 91.

A state law limiting PBMs' accreditation requirements survived preemption. *Wehbi*, 18 F.4th at 968. Though such laws may cause disuniformity in plan administration, and thus affect a PBM network's

scope, they are not preempted because they stop short of dictating who to cover or what benefits to provide. *Id.*

Though the district court got much correct, it went astray in finding any preemption. SF383 does not dictate substantive coverage. Plans remain in control of setting the terms of the who and what. SF383 affects cost, network curation, enforcement mechanisms—the likes of which precedent deem permissible.

Defendant does not analyze preemption as to all 10 enjoined sections but does not concede that any section was correctly deemed preempted. Instead, for purposes of this preliminary-injunction appeal, Defendant narrowed the arguments and, for some sections, focused instead on binding Supreme Court precedent that says those anti-discrimination sections should be saved from preemption.

### 2. Cost- and reimbursement-related sections.

Cost regulations requiring a particular "pricing methodology" are not preempted so long as their effect is not a Hobson's choice, "so acute that it will effectively dictate plan choices." *Rutledge*, 592 U.S. at 88, 90. Like the laws upheld in *Rutledge*, which mandated PBMs use certain "process" or "substantive standard[s]" that affect cost, several SF383

sections also regulate "pricing methodology," "process," or "standards" and do not have an "impermissible connection" with ERISA plans. *Id.* at 89-90. Such cost-related regulations do not govern plan administration, nor do they dictate the who or what of a plan's benefits. *Id.* at 90. They "merely increase costs or alter incentives for ERISA plans without forcing plans to adopt any particular scheme of substantive coverage." *Id.* at 88.

The district court largely got that right. App.Vol.IV.658-666, R.Doc.54 at 42-50. The court correctly determined the pass-through-pricing requirement was a cost regulation and thus did not intrude on plan sponsors' fiduciary duties. App.Vol.IV.658-660, R.Doc.54 at 42-44.

Yet the court enjoined that permissible PBM pass-through-pricing standard from being required in PBM and plans' contracts. Iowa Code § 510B.8D(1); App.Vol.IV.672-674, R.Doc.54 at 56-58. The court distinguished the contract-terms sections from the pass-through-pricing section, which applied only to PBMs, because it applied to plans too and thus "intruded on fiduciary discretion." App.Vol.IV.672, R.Doc.54 at 56.

But the court failed to explain how it intrudes on fiduciary discretion to require that a contract follow state law. Fiduciary duties are executed against the backdrop of state law. So if the State's pass-through-

pricing law is permissible, then that is the law and fiduciaries must contract under its auspices—just as fiduciaries lack discretion to contract against state minimum wage laws and workplace standards.

More, requiring contracts to describe state law cannot violate fiduciary duties—particularly when the state law imposes duties only on PBMs, which are not ERISA fiduciaries.

So too for subsection 8D(2), which mandates pass-through-pricing terms to supersede contrary terms. Regardless, Plaintiffs did not argue in their preliminary-injunction motion that subsection 8D(2) was preempted; they addressed only 8D(1). R.Doc.16 at 22. Defendant pointed this out in response. R.Doc.31 at 23. Plaintiffs did not dispute that in reply. R.Doc.44 at 15. Not only was the district court wrong on the merits, but it should not have addressed an argument Plaintiffs never raised.

The district court then wrongly enjoined enforcement of three cost-sharing rules. SF383 requires crediting a covered person's deductible for any amount they paid for their prescription. Iowa Code § 510B.8(6). The district court deemed that section preempted because it "dictates the cost-sharing arrangements that plans must adopt." App.Vol.IV.669, R.Doc.54 at 53.

But that regulation, like the cost regulations upheld in *Rutledge*, requires "comply[ing] with a particular process" or "pricing methodology" that might require a plan to "recalculate and reprocess how much it" owes. 592 U.S. at 90. Though it might affect benefit cost, it does not dictate the who (coverage status) or what (specific benefits).

So too for SF383's cost-sharing rules that prohibit only PBMs from imposing "different cost-sharing" or "more costly or restrictive . . . payment or condition" based on the pharmacy a person chooses. Iowa Code §§ 510B.4B(1)(*f*), 510B.8(3). Even though those sections imposed no duties on plans, the court preempted them. App.Vol.IV.652-655, R.Doc.54 at 36-39. The court reasoned that the "regulatory effect" on PBMs "flows backward to circumscribe plan design itself." App.Vol.IV.654, R.Doc.54 at 38.

But restrictions on non-ERISA entities that affect a plan's shopping choices, even if indirectly, are not preempted. *See, e.g.*, *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 816 (1997); *Travelers*, 514 U.S. at 659, 667 n.6. Even laws that "reach[] beyond cost controls" and which might have an "effect . . . on benefit structure" are not preempted unless they impose "specific rules for determining

beneficiary status" or "requir[e] payment of specific benefits." 18 F.4th at 968. And here, if the cost-sharing rules affect PBMs' benefits, that might indirectly affect a plan's shopping decisions; but they do not dictate the who (coverage status) or the what (specific benefits) of a plan's design. The court was wrong to find these sections "flow backwards"-preempted.

Those latter two cost-sharing standards impose requirements only on PBMs. They cannot intrude on fiduciary obligations, because PBMs are not ERISA fiduciaries.

### 3. Prohibition on PBMs unreasonably designating prescription drugs as specialty.

SF383 prohibits PBMs from "unreasonably designat[ing] a prescription drug as a specialty drug to prevent" or "limit" a covered person's access to the drug from an in-network pharmacy. Iowa Code § 510B.4B(1)(*d*).

The district court left out the reasonableness requirement from its recitation of the statute, which infected the analysis from there. App.Vol.IV.647, R.Doc.54 at 31. The court reasoned this section inhibited fiduciaries from "reasonably . . . directing participants to pharmacies with specialized expertise." App.Vol.IV.648, R.Doc.54 at 32. But SF383

does not do that: It expressly prohibits only unreasonable specialty designations.

In *Wehbi*, this Court held permissible a law limiting the accreditation requirements PBMs could impose on pharmacies. 18 F.4th at 965. The plaintiff there argued the law impermissibly regulated plan structure by limiting the range of choices plans could make. This Court rejected that argument.

The district court understood that when it approved SF383's accreditation requirements: "States have long possessed the power to determine who is qualified to dispense prescription drugs and to establish professional standards for pharmacy practice." App.Vol.IV.656, R.Doc.54 at 40. "Network inclusion decisions and coverage requirements remain within PBM and plan discretion." *Id.* SF383 simply required accreditation requirements "be reasonable." App.Vol.IV.656-657, R.Doc.54 at 40-41. So, the court reasoned, it was not preempted.

So too the unreasonable-specialty-designation limitation. Specialty decisions and coverage remain within PBM discretion, so long as they are reasonable. And, like with accreditation requirements, this section engages in a traditional state power of establishing professional

standards for pharmacy practice. *See Travelers*, 514 U.S. at 661 (ERISA does not preempt "general health care regulation").

Elsewhere, the district court reasoned that "state laws governing PBM conduct fall outside ERISA's core concerns." App.Vol.IV.650, R.Doc.54 at 34. They "exclusive[ly] appl[y] to PBMs without direct regulation of ERISA plans or their sponsors" and "target[] PBM conduct rather than imposing requirements on health benefit plans or TPP." *Id.* That reasoning should have applied here too: Section 510B.4B(1)(*d*) regulates PBMs' conduct and does not "govern . . . central matters of plan administration." *Wehbi*, 18 F.4th at 968 (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 320 (2016)). Requiring PBMs to act reasonably does not violate ERISA plans' fiduciary duties.

#### 4. Cause of action to enforce section 510B.4B duties.

Iowa's private-action enforcement mechanism should not be preempted. App.Vol.IV.676-678, R.Doc.54 at 60-62.

When state law authorizes enforcing a state-law duty independent of ERISA, it is not preempted. The state law in *Rutledge* authorized self-help enforcement if the PBM failed to comply with the State's new reimbursement regulations. *Rutledge*, 592 U.S. at 85. The Court said

"responsibility lies first with the PBM for" violating state law. *Id.* Because the state-law duty imposed on the PBM was not preempted, allowing a pharmacy to enforce that duty did not create an "impermissible connection" with ERISA. *Id.*

Of course, state-law causes of action that duplicate, supplement, or supplant ERISA's civil enforcement remedies are preempted. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 210-214 (2004). In *Aetna Health*, that meant ERISA preempted a state-law enforcement mechanism where liability "derives entirely from the particular rights and obligations established by the benefit plans." *Id.* at 213.

Subsection 4B(4) grants covered persons and pharmacies a cause of action to enjoin continuation of a PBM or third-party payor's violation of section 510.4B's duties. It thus authorizes enforcement of a "legal duty independent of ERISA" and has nothing to do with ERISA remedies or ERISA-plan terms. *Id.* at 214. Regardless of whether it is an ERISA plan, if a PBM or third-party payor complies with plan terms yet fails to comply with section 510B.4B, a covered person or pharmacy is entitled to enjoin that continuing state-law violation. In other words, "responsibility lies

first with the PBM," or the third-party payor, for violating section 510B.4B's state-law duties.

The district court overstated the breadth of the cause of action. It said subsection 4B(4) authorizes "a cause of action for any violation of SF 383." App.Vol.IV.676, R.Doc.54 at 60. That is wrong—it is only for violation of "this section," which means section 510B.4B. That false view of the enforcement breadth infected the remainder of the court's analysis.

Citing *Aetna Health*, the district court found preemption because "plan terms form an essential part of the state law claim." App.Vol.IV.677, R.Doc.54 at 61. The court noted that "many" of the enforceable duties apply to third party payors—but many is not all. App.Vol.IV.676, R.Doc.54 at 60. And many section 510B.4B duties have nothing to do with plan terms. Indeed, a state-law cause of action enforcing state-law duties against PBMs cannot be an end run around ERISA's exclusive remedies, because ERISA does not regulate PBMs. *See Rowe*, 429 F.3d at 305 (ERISA does not preempt state-law enforcement mechanism targeting PBMs).

At a minimum, only certain applications should be enjoined. For the section 510B.4B duties the court did not preempt, like subsections

510B.4B(1)(*a*), (*c*), (*e*) and 510B.4B(2)(*b*), and for those this Court finds not preempted, the cause of action to enforce those permissible state-law duties should remain enforceable.

## IV. Plaintiffs Are Not Likely to Succeed on the First Amendment Merits.

### A. Section 510B.4B(2)(*a*)'s notice requirement.

SF383 requires a third-party payor, if it restricts participation in its pharmacy network, to notify all pharmacies in the geographical coverage area and offer them the opportunity to participate under identical reimbursement terms at least sixty days before the restriction takes effect. Iowa Code § 510B.4B(2)(*a*). The district court enjoined that requirement, finding it "compels disclosure of competitively sensitive" terms "to unrelated parties." App.Vol.IV.679-688, R.Doc.54 at 63-72. The court wrongly adopted Plaintiffs' theory that the disclosure is not related to the State's substantial interest.

Commercial speech First Amendment challenges are subject to either intermediate scrutiny under *Central Hudson* or less scrutiny under *Zauderer*. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 564-566 (1980).

Disclosure requirements addressing "inherently misleading" commercial speech receive *Zauderer*'s deferential review, which requires laws be "reasonably related to the State's interest in preventing deception of consumers" and not "unduly burde[n]" speech. *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 650-651 (1985). Under *Central Hudson*, the State must show the law directly advances a substantial interest and that the means chosen are not more extensive than necessary. *Pharm. Rsch. & Manufacturers of Am. v. Stolfi*, 2025 WL 2448851, at *17 (9th Cir. Aug. 26, 2025).

1. *Zauderer* governs because SF383 addresses inherently misleading commercial speech. PBMs use opaque, coercive practices to steer business from rural pharmacies, while claiming that PBMs and third-party payors are keeping costs down, causing a lack of consumer choice and skyrocketing prescription drug costs. That is a misleading practice. R.Doc.31 at 2-6 (collecting cites). And when "the possibility of deception" is "self-evident," the State does not need to produce evidence of actual deception. *1-800-411 Pain Referral Serv. LLC v. Otto*, 744 F.3d 1045, 1062 (8th Cir. 2014).

SF383 is directly related to the State's substantial interest in preventing deception by increasing transparency and thus consumer access and choice. SF383's notice requirement facilitates equal access to information for pharmacies and will benefit consumers: Pharmacies previously lacking information will now be able to participate in the market and keep their doors open.

Having more providers increases consumer choice, access, and competition. Ultimately, that reduces prescription drugs costs too. *E.g.*, App.Vol.I.149, R.Doc.31-1 ¶7 (transparency "designed to ensure that plans know what they are paying for"); App.Vol.I.154, R.Doc.31-1 ¶¶23-24 ("[L]ack of transparency can drive up drug costs"). *See, e.g.*, App.Vol.I.162-163, R.Doc.31-2 ¶¶7-9; App.Vol.I.175-176, R.Doc.31-4 ¶¶18-22; R.Doc.24-6 ¶5; App.Vol.I.190, R.Doc.31-7 ¶6. Like *Rowe*'s disclosure requirement, Iowa's notice requirement "protect[s] covered entities from questionable PBM business practices." *Rowe*, 429 F.3d at 316 (Boudin J. and Dyk, J., jointly concurring and opinion of the court as to First Amendment issue).

The notice requirement is not unduly burdensome. The district court found the law is unduly burdensome because it requires PBMs to

notify all pharmacies, even ones that have not yet shown an interest in participating. Because Plaintiffs waived facial relief, their challenge is as applied. So they must develop the record. "To decide whether the disclosure requirements are 'unduly burdensome' when applied to [plaintiffs], the record must contain more than allegations; it must contain facts demonstrating the undue burden such requirements have on the company's ability to [comply with the disclosure requirement]." *1-800-411-Pain Referral*, 744 F.3d at 1063. Plaintiffs' blanket assertions are not enough. *Id.*

The district court next found that the notice requirement created a burden by forcing Plaintiffs to reveal "commercially sensitive" information. But that is a feature, not a bug—and returns to the court's flawed conclusion that this requirement does not address inherently misleading speech. The law prioritizes transparency over permitting PBMs and third-party payors to continue their opaque practices.

No different than "product labeling laws," which might require a company to disclose the commercially sensitive, secret ingredient to their special sauce; "[t]here are literally thousands of similar regulations on the books." *Rowe*, 429 F.3d at 316. Those "routine disclosure[s] of

economically significant information" are "designed to forward ordinary regulatory purposes—in this case, protecting covered entities from questionable PBM business practices." *Id.* If the law is "reasonably related" to the State's interests, it withstands scrutiny. And SF383 is.

2. Even under intermediate scrutiny, the notice requirement survives. *Central Hudson*, 447 U.S. at 564–566.

As the Ninth Circuit recently held, the State has substantial interests in "preserv[ing]" a "fair bargaining process" by reducing the "informational asymmetries" that plague the prescription drug process, "facilitating informed commercial transactions, and improving the efficiency of the pharmaceutical market." *Stolfi*, 2025 WL 2448851, at *17-18 (cleaned up).

SF383 "directly advances" those substantial interests because it promotes accurate, transparent information in the marketplace. *See also Edenfield v. Fane*, 507 U.S. 761, 769 (1993) (Under *Central Hudson*, "there is no question [the State's] interest in ensuring the accuracy of commercial information in the marketplace is substantial."). And as discussed, that transparency directly leads to increased consumer

information, choice, and care. *Cf. Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555 (2001).

And SF383 is not more extensive than necessary. *Central Hudson* requires only "a reasonable fit between the means and ends of the regulatory scheme." *Id.* at 561.

The district court disagreed, finding the notice requirement more extensive than necessary because it requires disclosures to unrelated parties. Thus, the district court found that the law could have been more narrowly tailored to achieve the State's interest. But less extensive means would not further the State's interest: Disclosing a plan's network terms and restrictions instead to covered persons alone fails to increase the number of providers in a plan's network. So too disclosing to only those providers with whom a plan already has a relationship.

### B. Section 510B.4(4)'s referral-discrimination prohibition.

The district court enjoined enforcement of section 510B.4(4)'s "anti-referral provision" as violating the First Amendment. App.Vol.IV.682-

686, R.Doc.54 at 66-70.[2] The court did so only because it misinterpreted the law.

Section 510B.4(4) prohibits PBMs and third-party payors from "discriminat[ing] against a pharmacy . . . with respect to . . . referral." Referral should be understood in the formal medical sense: "'to send or direct for diagnosis or treatment.'" *Brandt v. Griffin*, 147 F.4th 867, 889 (8th Cir. 2025) (en banc) (quoting *Refer: Medical Definition*, Merriam-Webster). The context of the act confirms as much.

SF383 separately says PBMs may not "impose a monetary advantage or penalty that would affect a covered person's choice." Iowa Code § 510B.4B(1)(*a*). That includes prohibiting PBMs from "promoti[ng] one participating pharmacy over another" or "comparing the reimbursement rates of a [participating] pharmacy against mail order pharmacy reimbursement rates." *Id.*

Because that separate promotion-and-comparison limitation applies only to PBMs, whereas the referral-discrimination prohibition

---

[2] Section 510B.4(4) includes several prohibitions, only one of which prohibits "referral." Because the district court analyzed only "referral" under the First Amendment, Defendant requests the Court—if it affirms that decision—to clarify that enforcement of the remainder of this section is not enjoined on First Amendment grounds.

applies to PBMs and third-party payors, the Legislature's explanation of what is prohibited under the former should not be included within the latter. Else, one of the two prohibitions as to PBMs would be rendered superfluous. *See Bribriesco-Ledger v. Klipsch*, 957 N.W.2d 646, 650-651 (Iowa 2021).

Recently this Court interpreted "refer" in its formal medical sense when the context made sense to do so. *Brandt*, 147 F.4th at 889. And here, where the statute uses "referral" in reference to a pharmacist, the law similarly indicates the formal sense of the term should be applied.

Yet the district court interpreted "referral" to cover the same conduct as "promotion." The court said section 510B.4(4) prohibits third-party payors from disclosing "the comparative advantages of particular pharmacies," "factually accurate information and guidance that would assist consumer decision-making." App.Vol.IV.688-689, R.Doc.54 at 72-73. In support, Plaintiffs' only evidence was a declaration saying "Pella Corporation cannot tell its employees" beneficial information, like where their employees can save money. R.Doc.16 at 30.

But that all fits the promotion-and-comparison section, which applies only to PBMs—and which the court determined Plaintiffs lacked

standing to challenge. The Legislature there used different language and applied it only to PBMs, so it must carry a different meaning than the referral-discrimination prohibition. But the court and Plaintiffs adopted the term's colloquial understanding to justify an injunction.

Though Defendant's interpretation is the one the text commands, even if this Court finds two plausible interpretations, it should "adopt the interpretation that upholds the law's constitutionality." *State v. Abrahamson*, 696 N.W.2d 589, 593 (Iowa 2005); *see also* Iowa Code § 4.4(1).

Properly interpreted, only the promotion-and-comparison limitation prohibits any entity from "comparing the reimbursement rates." Iowa Code § 510B.4B(1)(*a*). The district court enjoined the referral-discrimination prohibition based on conduct it does not cover. This Court should vacate that decision.

2. Properly interpreted, "referral" as used in section 510B.4(4) "is not part of the 'speech process.'" *Brandt*, 147 F.4th at 889. It is part of the process of providing prescription drugs. Even if the referral-discrimination prohibition regulates speech, "it does so only as an incidental effect." *Id.*

And this section satisfies *Central Hudson*. Like with the notice requirement, the premise of the district court's analysis here was accepting Plaintiffs' interpretation that SF383 does not address misleading practices. App.Vol.IV.684, R.Doc.54 at 68 ("[T]he State does not contend that such speech misleads consumers."). PBMs' and third-party payors' misleading practices sit at the heart of the Legislature's choice to enact SF383. Those opaque practices proceed under the guise of saving the consumer money—restricting those practices furthers Iowa's substantial interests in transparency, choice, and access to healthcare.

## V. The Injunction Is Overbroad.

Even if this Court determines some injunction is warranted, the district court's injunction is overbroad for two reasons.

The district court correctly rejected Plaintiffs' sweeping request for relief "against enforcement of the entire statute." App.Vol.IV.626, R.Doc.54 at 10. Plaintiffs pleaded facial relief, App.Vol.I.8, R.Doc.1 at 3, 37; R.Doc.16 at 11; Defendant countered that facial relief under an ERISA-preemption claim is improper. R.Doc.31 at 12-16. So Plaintiffs replied that their challenge was as-applied to Plaintiffs' "ERISA-plan circumstances, with the remainder of the law being invalid" because it is

inseverable. R.Doc.44 at 1. Plaintiffs disclaimed facial relief but still sought nonparty relief.

The court erred by accepting Plaintiffs' invitation to (1) extend injunctive relief to nonparty PBMs, *cf. CASA*, 606 U.S. at 841-847, 851-852, and (2) enjoin as inseverable part of SF383 the court determined not preempted. If the injunction survives, this Court should correct those errors.

### A. The district court erred by granting relief to nonparty PBMs.

Courts lack power to grant "relief that extend[s] beyond the parties." *CASA*, 606 U.S. at 844. Courts instead "may administer complete relief *between the parties*." *Id.* at 851 (quotation marks omitted). "While party-specific injunctions sometimes advantage nonparties, they do so only incidentally." *Id.* (cleaned up). Like in a public-nuisance case, where private injury makes the public nuisance "a private nuisance," party relief may advantage nonparties plagued by the same public nuisance, but "that benefit [is] merely incidental." *Id.* at 852 (cleaned up). Nonparty benefit may be an injunction's "*practical effect,*" but it cannot be a central, intended purpose. *Id.*

The district court here determined that a "plaintiff-specific injunction" would be "largely a pyrrhic victory, so it "extend[ed] the injunction beyond the named parties" to Plaintiffs' PBMs. App.Vol.IV.697-699, R.Doc.54 at 81-83. But Plaintiffs chose to follow in Pyrrhus of Epirus's footsteps. Extending the injunction so Plaintiffs would enjoy their win is error.

The district court's injunctive relief is not merely an "'indivisible remedy' that incidentally benefits third parties." *CASA*, 606 U.S. at 865 (Thomas, J., concurring). That nonparty relief is an essential facet of the district court's injunctive relief: For Defendant to "understand precisely which entities are covered by th[e] preliminary relief," the district court ordered Plaintiffs to file a list of names of nonparties. App.Vol.IV.699, R.Doc.54 at 83; *see also* R.Docs.55, 67.

Nor is this one of those cases where "there is no way 'to peel off just the portion of the nuisance that harmed the plaintiff.'" *CASA*, 606 U.S. at 852 (quoting *Rodgers v. Bryant*, 942 F.3d 451, 462 (8th Cir. 2019) (Stras, J., concurring in part and dissenting in part)). The court could have "peeled off" parts of the law that impose duties on Plaintiffs and

declined to enjoin parts of the law that party-specific relief would not effectuate.

The district court said the "modern structure" of PBMs' and plans' "functional interdependence" necessitated broader relief. App.Vol.IV.698, R.Doc.54 at 82. The district court implies that PBMs have grown so powerful that they operate within a penumbra of preemption and are entitled to injunctive relief without suing. That cannot be so.

Worse, that reasoning is belied by Plaintiffs' allegations. The court said "ERISA plans cannot feasibly operate" without PBMs. *Id.* But earlier it recognized, based on the complaint, that "many"—but not all—of Plaintiff ABI's members contract with PBMs. App.Vol.IV.620, R.Doc.54 at 4 (citing R.Doc.1 ¶8). Thus, some of Plaintiffs' members do operate without PBM services.

Even so, PBMs' outsized market power does not alter the historical limits on equity and judicial power: Courts lack power to grant "relief that extend[s] beyond the parties" to the case. *CASA*, 606 U.S. at 844. If any part of the injunction survives, this Court should limit its effect to the parties.

### B. The district court erred by enjoining enforcement of section 510B.8B(3) as inseverable.

SF383 warrants a double presumption of severability. The Legislature enacted a severability clause in the law. SF383 § 8. And Iowa's laws are presumed severable. Iowa Code § 4.12. As the district court noted, in Iowa "the cardinal principle of statutory construction is to save and not to destroy." *Breeden v. Iowa Dep't of Corrs.*, 887 N.W.2d 602, 609 (Iowa 2016). If remaining sections "can be given effect," then they should be preserved. Iowa Code § 4.12.

The district court understood, in part, when a law is inseverable—subsection 8D(2) is tied to subsection 8D(1), so if the latter is preempted then the former fails with it. App.Vol.IV.694-696, R.Doc.54 at 78-80. *See Breeden*, 887 N.W.2d at 610 (law could not be given effect where its requirements expressly tied to a separate, unconstitutional law). Indeed, subsection 8D(2) cannot be given independent effect. But if this Court holds subsection 8D(1) should not be enjoined, then 8D(2) should be resurrected too.

The district court correctly determined that many other non-offending sections of SF383 could be given independent effect, because "SF383 encompasses multiple discrete regulatory provisions that can

function independently." App.Vol.IV.695, R.Doc.54 at 79. Those sections "serve distinct but related purposes within Iowa's comprehensive approach to PBM regulation" and do not "depend upon one another for their effectiveness." *Id.* That conclusion included SF383's "reimbursement standards." *Id.*

Like SF383's other reimbursement standards, section 510B.8B(3)'s dispensing fee sets an independent cost-floor mechanism to achieve "distinct but related purposes." App.Vol.IV.661, R.Doc.54 at 45; App.Vol.IV.665, R.Doc.54 at 49; App.Vol.IV.695, R.Doc.54 at 79. So it too is severable.

Despite all the district court got correct as to severability, it wrongly assumed the dispensing fee was merely a stick, App.Vol.IV.696, R.Doc.54 at 80, rather than an independent carrot intended to mandate a price floor that will independently help rural pharmacies remain viable and thus promote consumer access, App.Vol.IV.175, R.Doc.31-4 ¶19; App.Vol.IV.190, R.Doc.31-7 ¶7.

The district court was wrong to assume the fee would "driv[e] business away from the rural pharmacies." App.Vol.IV.696, R.Doc.54 at 80. Plaintiffs allege the fee—and other parts of SF383—will result in

higher costs not just to plans, but to consumers. App.Vol.I.33, R.Doc.1 at ¶60(d). Indeed, one of Plaintiffs' theories is that employers should be able to tell their employees where to go to save money by avoiding the dispensing fee. App.Vol.I.8, R.Doc.1 at ¶7; R.Doc.16 at 2; App.Vol.I.66, R.Doc.6-1 ¶¶16-17 (detailing expected increased costs for enrollees). And the district court understood that, noting that "PBMs may eventually renegotiate their contracts with plans and plan sponsors to account for this added cost." App.Vol.IV.665, R.Doc.54 at 49; *see also* App.Vol.IV.621, R.Doc.54 at 5. The premise is that PBMs and plans would pass onto consumers the increased costs caused by the dispensing fee and other parts of SF383.

And consumers often choose to pay more for what they view as a better-quality or a necessary product. Rural Iowans might welcome a small fee in return for the ability to visit a brick-and-mortar location, talk to an in-person pharmacist, and avoid mail-order prescriptions. That independent effect furthers the Legislature's intent to increase consumer access and help rural pharmacies avoid operating at a constant loss. The district court wrongly assumed the fee's independent effect would be to drive business away from rural pharmacies.

And the court overstated its preemption conclusions. The district court hypothesized that without the anti-discrimination and anti-steering provisions, the dispensing fee "could incentivize plans and PBMs to avoid affected pharmacies entirely." App.Vol.IV.696, R.Doc.54 at 80. But several anti-steering mechanisms remain: The promotion-and-comparison limitation, Iowa Code § 510B.4B(1)(*a*), and the requirement ensuring fair reimbursement for unaffiliated pharmacies, *id.* § 510B.8B(1). And those sections prohibit, in part, "unduly influenc[ing] participant choice through PBM-directed steering mechanisms." App.Vol.IV.650, R.Doc.54 at 34. The court ignored those permissible sections by reasoning that all "anti-steering" sections were preempted.

One last point: the district court rested its severability conclusion on the anti-discrimination framework preemption. So if this Court vacates the injunction as to any part of that framework, it should vacate the injunction as to the dispensing fee too.

## VI. The District Court Abused Its Discretion by Downplaying the Irreparable Harm to the State and Public and by Waiving the Injunction Bond.

### A. The other preliminary-injunction factors weigh against relief.

Plaintiffs' failure to show they are "likely to prevail on the merits" is fatal. *Rounds*, 530 F.3d at 732. And the remaining preliminary injunction factors weigh against relief too.

Plaintiffs' delay in seeking relief further undercuts any irreparable-harm argument. *See Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 603 (8th Cir. 1999). Plaintiffs were long aware of the possible legislation. *See* Iowa ABI, *Iowa Legislature Passes Costliest Health Care Mandate in State History* (May 12, 2025), perma.cc/SU5D-RYW6. The bill passed both chambers by May 12. Then the Governor signed it into law on June 11. Yet Plaintiffs waited until two business days before the law's effective date to seek emergency injunctive relief.

As to the equities, the injunction irreparably harms the State, is not in the public interest, and disrupted the status quo. The district court abused its discretion by discounting the substantial harm to the State and public. App.Vol.IV.693, R.Doc.54 at 77. Enjoining enforcement of a state law "clearly inflicts irreparable harm on the State." *Abbott v. Perez*,

585 U.S. 579, 602 n.17 (2018). And Defendant has a unique interest in enforcing SF383 to protect Iowans' access to healthcare and to police conflicts of interest. *Accord Veix*, 310 U.S. at 38-39.

Restricting Iowa from exercising this power risks Iowans' health, *see, e.g.*, App.Vol.I.175-176, R.Doc.31-4 ¶¶18-23; R.Doc.24-6, R.Doc.24-6 ¶5; App.Vol.I.167, R.Doc.31-3 ¶13; App.Vol.I.162-163, R.Doc.31-2 ¶¶7-9; App.Vol.I.190, R.Doc.31-7 ¶¶6-7, thus outweighing Plaintiffs' alleged harm. So too does the harm to consumers that will occur while the law is enjoined. App.Vol.I.158, R.Doc.31-1, ¶41.

Finally, the district court abused its discretion when it said injunctive relief was necessary to "preserve[] the status quo." App.Vol.IV.693, R.Doc.54 at 77. The temporary restraining order, issued June 30, applied only to Plaintiffs, App.Vol.I.124-125, R.Doc.17 at 24-25. The order did not prevent Defendant "from enforcing SF 383 against non-parties." *Id.* SF383 took effect July 1, and from that date until the preliminary injunction SF383 was enforceable against nonparties. The district court's order—by issuing nonparty relief—disrupted the status quo.

### B. The district court should have required injunction bond as Rule 65(c) mandates.

Preliminary injunctions impose serious costs on States. Yet district courts continue to waive Rule 65(c)'s mandatory injunction bond. Fed. R. Civ. P. 65(c) ("[C]ourt may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper."). The district court "waive[d] the bond requirement entirely." App.Vol.IV.700-701, R.Doc.54 at 84-85. That violates the Rule's mandatory language. The Rule provides one exception—inapplicable here—and no other.

The district court cited a case from this Court suggesting courts have discretion "in determining the appropriate bond amount." *Id.* (citing *Richland/Wilkin Joint Powers Auth. v. United States Army Corps of Eng'rs*, 826 F.3d 1030, 1043 (8th Cir. 2016)). Though courts have discretion to determine bond amount, they lack discretion in determining whether to require a bond at all. More, *Richland/Wilkin* said an "important public interest in the enforcement of NEPA" allows district courts discretion to waive the bond requirement. 826 F.3d at 1043. This is not a NEPA case.

The court also relied on an Eleventh Circuit case that says courts "may elect to require no security at all." App.Vol.IV.700, R.Doc.54 at 84. But that case's context is key: It applied precedent waiving bond for "public-interest litigation." *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. 1981). And this complex ERISA litigation is not public-interest litigation. The district court should have imposed a bond.

If this Court finds an injunction proper, Defendant requests bond in the amount detailed in the district court, based off SF383's penalty scheme. App.Vol.I.88-89, R.Doc.8 at 4-5; R.Doc.31 at 45.

## CONCLUSION

For these reasons, this Court should vacate the preliminary injunction.

October 1, 2025

Respectfully submitted,

BRENNA BIRD
Attorney General of Iowa

ERIC WESSAN
*Solicitor General*

*/s/ Patrick C. Valencia*
PATRICK C. VALENCIA
*Deputy Solicitor General*

Hoover State Office Building
1305 East Walnut Street
Des Moines, Iowa 50319
(515) 823-9117 / (515) 281-5191
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov
patrick.valencia@ag.iowa.gov

*Counsel for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g) and Local R. 25A, I certify the following:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2)(A) because it contains 12,993 words, excluding those parts exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because the brief has been prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft Office 365.

3. This brief complies with the electronic filing requirements of Local R. 25A because the text of the electronic brief is identical to the text of the paper copies and because the electronic version of this brief has been scanned for viruses and no viruses were detected.

October 1, 2025

*/s/ Patrick C. Valencia*
PATRICK C. VALENCIA
*Deputy Solicitor General*

*Counsel for Defendant-Appellant*

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on October 1, 2025. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

October 1, 2025

*/s/ Patrick C. Valencia*
PATRICK C. VALENCIA
*Deputy Solicitor General*

*Counsel for Defendant-Appellant*