Nos. 25-2494, 25-2591

---

IN THE

**United States Court of Appeals for the Eighth Circuit**

---

IOWA ASSOCIATION OF BUSINESS AND INDUSTRY, *et al.*,

*Plaintiffs-Appellees / Cross-Appellants*,

v.

IOWA INSURANCE COMMISSIONER, Doug Ommen,

*Defendant-Appellant / Cross-Appellee*.

---

On Appeal/Cross-Appeal from the United States District Court
for the Southern District of Iowa
Case No. 4:25-cv-211
(The Honorable Stephanie M. Rose)

---

# RESPONSE AND REPLY BRIEF OF DEFENDANT-APPELLANT/CROSS-APPELLEE

---


BRENNA BIRD
Attorney General of Iowa

ERIC WESSAN
*Solicitor General*

PATRICK C. VALENCIA
*Deputy Solicitor General*

Hoover State Office Building
1305 East Walnut Street
Des Moines, Iowa 50319
(515) 823-9117 / (515) 281-8770
eric.wessan@ag.iowa.gov
patrick.valencia@ag.iowa.gov


February 12, 2026


*Counsel for Defendant-Appellant / Cross-Appellee*

## SUMMARY OF CASE AND STATEMENT ON ORAL ARGUMENT

This case presents key questions of justiciability, of the scope of ERISA preemption, and of the scope of federal courts' equitable authority to grant injunctive relief. This Court's action is needed to ensure the limits of Article III, the Supremacy Clause, and equity are applied.

Iowa's Legislature enacted Senate File 383 to restrict pharmacy benefit managers and third-party payors' ability to engage in harmful conduct. SF383 will protect Iowa's community pharmacies and ensure better choice, care, costs, and—crucially—health outcomes for Iowans. The district court preliminarily enjoined 13 sections of SF383 under ERISA preemption and First Amendment grounds and properly denied relief as to ten other sections Plaintiffs now cross appeal. Though the court erred in finding Plaintiffs likely to succeed on the preemption and First Amendment merits at all, there are other more pronounced errors.

*First*, the court determined Plaintiffs' claims against sections that do not even regulate Plaintiffs were justiciable. *Second*, the court skipped a key part of the ERISA preemption analysis, which Supreme Court precedent says would have saved most of the law now enjoined. *Third*, the court granted nonparties injunctive relief—despite *Trump v. CASA*.

Defendant requests 15 minutes per side for oral argument.

## TABLE OF CONTENTS

**<u>Page</u>**

SUMMARY OF CASE AND STATEMENT ON ORAL ARGUMENT .......... i

TABLE OF AUTHORITIES .......... iv

STATEMENT OF THE ISSUES FOR REVIEW .......... 1

INTRODUCTION .......... 3

STATEMENT OF THE CASE .......... 5

I. Plaintiffs' Cross-Appeal. .......... 5

SUMMARY OF THE ARGUMENT .......... 9

ARGUMENT .......... 11

I. Standard of Review. .......... 11

II. Plaintiffs' Claims Against the Parts of SF383 Regulating Only PBMs Are Not Justiciable. .......... 12

A. Plaintiffs lack standing to bring First Amendment challenges against laws regulating only PBMs. .......... 13

B. There is no ERISA-functional-interdependence exception to Article III standing. .......... 16

C. Plaintiffs lack an equitable cause of action to assert preemption claim against laws regulating only PBMs. .......... 24

D. Plaintiffs lack standing to challenge section 510B.4B(4). .......... 26

III. Plaintiffs Are Not Likely to Succeed on the Preemption Merits. .......... 27

**TABLE OF CONTENTS—Continued**

**Page**


A. ERISA's insurance Saving Clause covers all enjoined sections and most sections raised on cross-appeal. .......... 27

B. No section is "connection with" preempted. .......... 37

IV. Plaintiffs Are Not Likely to Succeed on the First Amendment Merits. .......... 50

V. The Injunction Is Overbroad. .......... 62

A. Extending the injunction to cover nonparty PBMs exceeds limits on equity and Article III judicial power. .......... 63

B. Section 510B.8B(3)'s dispensing fee is severable, just like every otherwise permissible SF383 regulation. .......... 66

VI. The District Court Abused Its Discretion by Downplaying the State's Irreparable Harm and Waiving Rule 65(c)'s Mandatory Injunction Bond. .......... 68

A. The equities strongly weigh against preliminary relief. .......... 68

B. This Court should reaffirm that Rule 65(c) injunction bonds are not optional. .......... 70

CONCLUSION .......... 72

CERTIFICATE OF COMPLIANCE .......... 73

CERTIFICATE OF SERVICE .......... 74

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*1-800-411 Pain Referral Serv. LLC v. Otto*,
744 F.3d 1045 (8th Cir. 2014) .......... 2, 12, 54
*281 Care Comm. v. Arneson*,
638 F.3d 621 (8th Cir. 2011) .......... 26
*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) .......... 1, 24
*ASARCO, LLC v. Union Pac. R. Co.*,
762 F.3d 744 (8th Cir. 2014) .......... 24, 65
*Biden v. Nebraska*,
600 U.S. 477 (2023) .......... 18
*Board of Trs. of State Univ. of New York v. Fox*,
492 U.S. 469 (1989) .......... 54
*Brandt v. Griffin*,
147 F.4th 867 (8th Cir. 2025) .......... 1, 56, 57, 58
*Breeden v. Iowa Dep't of,*
*Corrs.*, 887 N.W.2d 602 (Iowa 2016) .......... 66
*Bribriesco-Ledger v. Klipsch*,
957 N.W.2d 646 (Iowa 2021) .......... 59
*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
447 U.S. 557 (1980) .......... 51, 54, 60
*Denmon v. Kan. Couns., Inc.*,
149 F.4th 1010 (8th Cir. 2025) .......... 22
*Dixon v. City of St. Louis*,
950 F.3d 1052 (8th Cir. 2020) .......... 2, 27, 69
*Equip. Mfrs. Inst. v. Janklow*,
300 F.3d 842 (8th Cir. 2002) .......... 49
*Ex parte Young*,
209 U.S. 123 (1908) .......... 1
*Fleck v. Wetch*,
937 F.3d 1112 (8th Cir. 2019) .......... 15, 50, 64
*FMC Corp. v. Holliday*,
498 U.S. 52 (1990) .......... 29
*Gilbert v. Des Moines Area Com. Coll.*,
495 F.3d 906 (8th Cir. 2007) .......... 65

**Page(s)**

*Glenwood Bridge, Inc. v. City of Minneapolis*,
940 F.2d 367 (8th Cir. 1991) .......... 71
*Hodak v. City of St. Peters*,
535 F.3d 899 (8th Cir. 2008) .......... 13
*Hyll v. Xyquad, Inc.*,
939 F.2d 627 (8th Cir. 1991) .......... 2, 71
*Jacam Chem. Co. 2013, LLC v. Shepard*,
101 F.4th 954 (8th Cir. 2024) .......... 15, 16, 33, 36, 54
*Jake's, Ltd., Inc. v. City of Coates*,
356 F.3d 896 (8th Cir. 2004) .......... 14, 17
*Kentucky Ass'n of Health Plans, Inc. v. Miller*,
538 U.S. 329 (2003) .......... 1, 28, 29, 31, 32, 33, 34, 36
*Kowalski v. Tesmer*,
542 U.S. 125 (2004) .......... 12
*Liberty Mut. Insurance v. Donegan*,
746 F.3d 497 (2d Cir. 2014) .......... 20, 21
*Lorillard Tobacco Co. v. Reilly*,
533 U.S. 525 (2001) .......... 54, 56
*Mader v. United States*,
654 F.3d 794 (8th Cir. 2011) .......... 71
*Michigan Corr. Org. v. Michigan Dep't of Corr.*,
774 F.3d 895 (6th Cir. 2014) .......... 24
*Murthy v. Missouri*,
603 U.S. 43 (2024) .......... 22
*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins.*,
514 U.S. 645 (1995) .......... 46, 47
*NGS Am., Inc. v. Barnes*,
998 F.2d 296 (5th Cir. 1993) .......... 31
*PCMA v. Gerhart*,
852 F.3d 722 (8th Cir. 2017) .......... 41, 44
*PCMA v. Mulready*,
78 F.4th 1183 (10th Cir. 2023) .......... 18
*PCMA v. Rowe*,
429 F.3d 294 (1st Cir. 2005) .......... 53
*PCMA v. Wehbi*,
18 F.4th 956 (8th Cir. 2021) .......... 1, 18, 37, 39, 40, 44, 45, 49
*PhRMA v. Stolfi*,
153 F.4th 795 (9th Cir. 2025) .......... 2, 55, 56

Page(s)

*Planned Parenthood Minn., N.D., S.D. v. Rounds*,
530 F.3d 724 (8th Cir. 2008)........11, 12, 68
*Prudential Ins. Co. of Am. v. National Park Medical Ctr., Inc.*,
413 F.3d 897 (8th Cir. 2005)........18, 30, 31
*Rathmann Grp. v. Tannenbaum*,
889 F.2d 787 (8th Cir. 1989)........71
*Religious Sisters of Mercy v. Becerra*,
55 F.4th 583 (8th Cir. 2022)........16
*Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*,
826 F.3d 1030 (8th Cir. 2016)........71
*Rodgers v. City of Des Moines*,
435 F.3d 904 (8th Cir. 2006)........65
*Rutledge v. PCMA*,
592 U.S. 80 (2020)........1, 39, 40, 41, 42, 46, 48
*Sanderson v. Hanaway*,
163 F.4th 1101 (8th Cir. 2026)........63
*Shaw v. Delta Air Lines, Inc.*,
463 U.S. 85 (1983)........43
*State v. Abrahamson*,
696 N.W.2d 589 (Iowa 2005)........59
*State v. Books*,
225 N.W.2d 322 (Iowa 1975)........67
*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014)........1, 14, 16
*Tenn. Electric v. Tenn Valley Auth.*,
306 U.S. 118 (1939)........25
*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........22
*Trump v. CASA, Inc.*,
606 U.S. 831 (2025)........2, 13, 14, 17, 20, 63, 64, 65, 69
*United States v. Donath*,
107 F.4th 830 (8th Cir. 2024)........71
*UNUM Life Ins. Co. of Am. v. Ward*,
526 U.S. 358 (1999)........34
*Uzuegbunam v. Preczewski*,
592 U.S. 279 (2021)........23
*Zauderer v. Office of Disciplinary Counsel*,
471 U.S. 626 (1985)........1, 51, 52

Page(s)

**Statutes**

29 U.S.C. § 1108 .......... 41
29 U.S.C. § 1144 .......... 1, 37
Iowa Code § 4.4 .......... 2
Iowa Code § 4.12 .......... 2, 66
Iowa Code § 510B.4 .......... 33, 56, 57, 59, 60
Iowa Code § 510B.4B .......... 6, 7, 8, 12, 13, 14, 26, 27, 29, 32, 34, 35, 36, 39, 40, 42, 43, 45, 49, 50, 51, 58, 59, 60, 61
Iowa Code § 510B.8 .......... 6, 7, 12, 32, 34, 35, 37, 38, 39, 40, 45, 47
Iowa Code § 510B.8B .......... 6, 7, 8, 12, 29, 36, 44, 46, 66, 67
Iowa Code § 510B.8D .......... 34, 38, 44
Iowa Code § 510B.8E .......... 6, 7, 12, 37, 48
Iowa Code § 510B.10 .......... 26
Iowa Code § 510B.12 .......... 66

**Rules**

Fed. R. App. P. 28 .......... 16, 33, 36, 54
Fed. R. App. P. 41 .......... 70

**Other Authorities**

John Harrison, *Ex parte Young*, 60 Stan. L. Rev. 989 (2008) .......... 24

## STATEMENT OF THE ISSUES FOR REVIEW

1. Whether Plaintiffs' claims for injunctive relief against laws that are not enforceable against them are justiciable.

**Cases**: *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)

*Ex parte Young,* 209 U.S. 123 (1908)

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015)

2. Whether the district court abused its discretion by (1) enjoining enforcement of 10 SF383 sections as "connection with" preempted under ERISA without applying ERISA's insurance Saving Clause, or (2) by declining to enjoin 10 others that are either not "connection with" preempted or are covered by the Saving Clause.

**Cases**: *Rutledge v. PCMA*, 592 U.S. 80 (2020)

*Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003)

*PCMA v. Wehbi*, 18 F.4th 956 (8th Cir. 2021)

**Statutes**: 29 U.S.C. § 1144(a)

29 U.S.C. § 1144(b)(2)(A

3. Whether the First Amendment prohibits regulating inherently misleading commercial speech.

**Cases**: *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985)

*Brandt v. Griffin*, 147 F.4th 867 (8th Cir. 2025) (en banc)

*1-800-411 Pain Referral Serv. LLC v. Otto*, 744 F.3d 1045 (8th Cir. 2014)

*PhRMA v. Stolfi*, 153 F.4th 795 (9th Cir. 2025)

**Statute**: Iowa Code § 4.4(1)

4. Whether the district court abused its discretion in granting nonparty relief and declining to apply Iowa's severability law, or whether this Court should extend the "as-applied" relief against all SF383, and as applied to parties and nonparties alike.

**Case**: *Trump v. CASA, Inc.*, 606 U.S. 831 (2025)

**Statute**: Iowa Code § 4.12

5. Whether the district court abused its discretion in assessing the preliminary-injunction factors and waiving the mandatory injunction-bond requirement.

**Case**: *Dixon v. City of St. Louis*, 950 F.3d 1052 (8th Cir. 2020)

*Hyll v. Xyquad, Inc.*, 939 F.2d 627 (8th Cir. 1991)

## INTRODUCTION

Iowa's law, Senate File 383, addresses misleading practices of pharmacy benefit managers ("PBMs") and their affiliated health benefit plans by mandating PBM transparency. PBMs' practices harm Iowans and Iowa's community pharmacies. And as Defendant's declarations established, and as the FTC's recent settlement with one of the largest PBMs explained, increasing PBM transparency will benefit community pharmacies and patients by ensuring better choice, care, and costs, and thus better health outcomes for Iowans. *See* FTC, *FTC Secures Landmark Settlement with Express Scripts* (Feb. 4, 2026), perma.cc/6W57-MFKG.

Plaintiffs fail to engage with their threshold deficiencies. Most importantly: No Plaintiff is a PBM. Thus, most of Plaintiffs' claims are non-justiciable, because Plaintiffs cannot seek relief based on the legal rights of nonparty PBMs. Plaintiffs instead ask this Court to, in effect, create a novel ERISA "functional interdependence" exception to Article III standing. But this Court need not break new ground here. Instead, it should apply ordinary limits on equity and Article III and reject Plaintiffs' challenges of laws regulating only PBMs.

On the preemption merits, the district court overlooked a key part of the ERISA-preemption analysis: the insurance Saving Clause. Plaintiffs claim the district court analyzed the clause but forgot to show its work. Given the district court failed to cite Supreme Court precedent saving a State's any-willing-provider law from preemption, Plaintiffs' telling of the story is hard to believe. Properly applied, the Saving Clause saves nearly every challenged SF383 section. And those sections on cross-appeal that are not saved fall within precedent rejecting ERISA preemption, as the district court recognized.

On the First Amendment, Plaintiffs challenge a law that regulates speech only incidentally, as confirmed by recent Eighth Circuit precedent that Plaintiffs ignore. They argue another statute is unduly burdensome, without establishing a supporting record. And they distort statutes to fit their claims, because the statutes do not cover the speech they assert. This Court need not accept Plaintiffs' unsupported assertions; it need only vacate the injunction, reject Plaintiffs' cross-appeal claims, and remand to allow Plaintiffs to attempt to meet their burden going forward.

In the end, the district court erred at each step of the preliminary-injunction analysis. Worse, the court extended the injunction to cover

nonparty PBMs. And it did so while failing to sever every otherwise permissible section, despite SF383's severability clause.

And now, Plaintiffs on cross-appeal ask this Court to extend injunctive relief even further. Plaintiffs ask this Court to "invalidate the entirety of the remainder of SF 383," "as applied" to Plaintiffs and non-party PBMs. Pls. Br. 63. But the district court understood that standing and ERISA-preemption precedents required declining injunctive relief on those claims. Applying Eighth Circuit and Supreme Court precedents, this Court should do the same.

This Court should vacate the injunction and reject Plaintiffs' claims on cross-appeal.

## STATEMENT OF THE CASE

### I. Plaintiffs' Cross-Appeal.

Plaintiffs sought relief in the district court against 26 parts of SF383. R.Docs. 1, 6. The district court enjoined Defendant's enforcement of 13 of those parts, one under two theories—10 under ERISA-preemption grounds, two under First Amendment, and two as inseverable (including one it had found preempted). App.Vol.IV.702-703, R.Doc.54 at 86-87. Defendant appealed and requested that this Court

vacate the injunction or, at a minimum, narrow the scope of the overbroad injunction to honor Iowa's double-presumption of severability here and the Supreme Court's recent limiting of universal injunctions, other than as an incidental effect of a party-specific injunction. *See* Def. Br. 19-73.

Plaintiffs cross-appeal, asking this Court to "invalidate the entirety of the remainder of SF 383, as applied to Plaintiffs," by which they mean as applied to Plaintiffs and Plaintiffs' non-party PBMs. Pls. Br. 63.

Plaintiffs focus on the denial of injunctive relief as to nine parts of SF383 that, Plaintiffs argue, are ERISA preempted: Sections 510B.4B(1)(*a*) ("anti-steering" requirement on PBMs), 510B.4B(2)(*b*) (notice duty on third-party-payors), 510B.8(4) (requiring PBMs use pass-through pricing), 510B.8(5) and (7) (PBM cost-sharing rules), 510B.8B(3) (requiring PBMs reimburse retail pharmacies a dispensing fee), 510B.8B(4)(*a*) and (*b*) (requiring PBMs to submit quarterly report), and 510B.8E (requiring PBM to give pharmacies right to appeal).

Only one of those nine sections imposes duties on Plaintiffs. *See* Iowa Code § 510B.4B(2)(*b*) (notice duty on third-party-payors). The district court concluded that section "resembles the permissible

disclosures in *Wehbi*" and thus was not preempted. App.Vol.IV.671, R.Doc.54 at 55.

For the other eight sections, which regulate only PBMs, the district court determined they were not preempted: Because of their "exclusive application to PBMs" some regulated only "PBM conduct" or "PBM-pharmacy relationships that fall outside ERISA's regulatory scope," App.Vol.IV.649-652, R.Doc.54 at 33-36 (section 510B.4B(1)(*a*)); App.Vol.IV.671, R.Doc.54 at 55 (sections 510B.8B(4)(*a*) and (*b*)); App.Vol.IV.679, R.Doc.54 at 63 (section 510B.8E); and others were permissible cost regulations. App.Vol.IV.660, R.Doc.54 at 44 (section 510B.8(4)); App.Vol.IV.663, R.Doc.54 at 47 (section 510B.8B(3)); App.Vol.IV.669, R.Doc.54 at 53 (sections 510B.8(5) and (7)).

The tenth section Plaintiffs raise on cross-appeal is section 510B.4B(1)(*e*), which prohibits only PBMs from requiring mail-order-pharmacy exclusivity. Plaintiffs did not seek injunctive relief against that section as preempted, so the district court did not analyze that section in its opinion nor did its clear decretal language include that section in the scope of the ordered injunctive relief. App.Vol.IV.702, R.Doc.54 at 86. On cross-appeal, Plaintiffs argue in a footnote that the

district court implicitly enjoined enforcement of section 510B.4B(1)(*e*) without mentioning it in the order's decretal language and that relief should be affirmed on appeal. Pls. Br. 42 n.10. Defendant construes that argument as part of Plaintiffs' cross-appeal.

Plaintiffs abandon any preemption arguments relating to three sections the district court determined were not preempted: Section 510B.4B(1)(*c*) (accreditation requirement) and sections 510B.8B(1)-(2) (reimbursement rate). Pls. Br. 18 n.5, 47 n.12. Plaintiffs instead contend that enforcing those sections should be enjoined under their lack-of-severability theory, in which they ask the Court to enjoin enforcing all of SF383. *Id.*

Plaintiffs also argue on cross-appeal that part of one of those ten sections violates the First Amendment. Pls. Br. 57-61 (challenging only the "anti-promotion" subset of section 510B.4B(1)(*a*) "anti-steering" limitation as violating the First Amendment). The district court concluded Plaintiffs lacked standing to challenge that requirement, because that section regulated only PBMs and no Plaintiff is a PBM. App.Vol.IV.632-633, R.Doc.54 at 16-17.

## SUMMARY OF THE ARGUMENT

**I.** Plaintiffs' claims to enjoin laws regulating PBMs are non-justiciable. The district court enjoined Defendant's enforcement of five sections that impose duties only on nonparty PBMs; Plaintiffs' cross-appeal raises nine more. But Plaintiffs are not PBMs, so those sections do not regulate Plaintiffs. Plaintiffs thus lack injury-in-fact, redressability, and a cause of action.

**II.** The district court erred in finding 10 sections preempted by ERISA, but properly rejected ERISA preemption as to the others. The court failed to apply ERISA's Saving Clause, which saves every enjoined SF383 section and nearly every section raised on cross-appeal. Indeed, Supreme Court and this Court's precedent saved laws like several SF383 sections. But the court did not mention that precedent.

On the preemption merits, the district court erred in finding any likely success. "Connection with" preemption pertains to state laws binding plans or administrators to specific rules about benefit eligibility or requiring payment of specific benefits. State laws, like SF383, that do not dictate that "who" or the "what" of plan benefits are not preempted.

**III.** SF383 does not violate the First Amendment. The notice requirement regulates inherently misleading commercial speech and satisfies *Zauderer* scrutiny. And recent Ninth Circuit precedent confirms that it would even satisfy *Central Hudson* scrutiny. But Plaintiffs do not address that authority.

The referral-discrimination prohibition does not regulate speech. As this Court's recent en banc decision confirms, regulating medical "referrals" has only an incidental effect on speech. Plaintiffs do not address that authority either. Instead, Plaintiffs defend the district court's atextual reading of the statute.

The anti-promotion section regulates PBMs. Plaintiffs argue only that it restricts employer's speech. But employers are not PBMs. Plaintiffs thus fail to assert any protected speech within the law's scope.

**IV.** Even if some injunction is warranted, it must be limited to parties. Yet the district court extended injunctive relief to nonparties (PBMs). An "as applied" injunction enjoining Defendant from enforcing the law against nonparty PBMs is beyond courts' equitable authority.

Then the court failed to apply SF383's severability clause and enjoined SF383's dispensing fee requirement as inextricably tied to

SF383's anti-discrimination framework. But the structure of the statute confirms that the fee has independent effect. The dispensing fee—like every otherwise permissible SF383 section—should be severed.

**V.** The district court abused its discretion in assessing the remaining preliminary-injunction factors. It downplayed the State's irreparable harm, which weighs against any relief. And it did not consider that nonparty relief disrupted the status quo. The court further abused its discretion by waiving Rule 65(c)'s mandatory injunction bond. Perhaps recognizing that error, Plaintiffs claim the court did not waive bond because it set the amount at zero. But in the court's own words, it "waive[d] the bond requirement entirely."

This Court should vacate the preliminary injunction and reject Plaintiffs' claims on cross-appeal.

## ARGUMENT

### I. Standard of Review.

This Court reviews a preliminary injunction for abuse of discretion, reviewing legal conclusions de novo and factual findings for clear error. *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 730 (8th Cir. 2008). Because Plaintiffs seek to enjoin enforcement of a state

statute, they must show they are "likely to prevail on the merits." *Id.* The same standard applies when reviewing an order denying a preliminary injunction. *1-800-411-Pain Referral Serv., LLC v. Otto*, 744 F.3d 1045, 1053 (8th Cir. 2014).

## II. Plaintiffs' Claims Against the Parts of SF383 Regulating Only PBMs Are Not Justiciable.

The district court enjoined Defendant's enforcement of five sections that regulate only PBMs. But that is not justiciable. Def Br. 20-30.

Nine of the ten sections Plaintiffs raise on cross-appeal similarly impose duties only on PBMs. *See* Iowa Code §§ 510B.4B(1)(*a*), 510B.4B(1)(*e*), 510B.8(4), 510B.8(5), 510B.8(7), 510B.8 B(3), 510B.8B(4)(*a*), 510B.8B(4)(*b*), 510B.8E. Though the district court was correct that those claims fail on the preemption merits, this Court need not go that far. Instead, it should conclude those claims are non-justiciable.

Plaintiffs believe it "gets things exactly backwards" to require PBMs to bring ERISA preemption claims against laws regulating only PBMs. Pls. Br. 28. But that is not novel. That is a traditional Article III limit: Parties "cannot rest [their] claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 542 U.S. 125, 129 (2004).

The bottom line is this: PBM customers cannot sue on PBMs' behalf without pleading third-party standing. If Plaintiffs want to base their First Amendment or preemption claims on the rights or interests of PBMs, then they should plead, and brief, third-party standing. *See Trump v. CASA*, *Inc.*, 606 U.S. 831, 866 (2025) (Alito, J., concurring) (explaining how third-party standing, not nonparty injunctive relief, might be a proper route to assert the legal rights or interest of others). But Plaintiffs did not do that.

Nor could they establish third-party standing if they tried. Most consequentially, Plaintiffs cannot satisfy the hindrance standard. *See Hodak v. City of St. Peters*, 535 F.3d 899, 904 (8th Cir. 2008). "Hindrance" asks about "the likelihood and ability of the third parties . . . to assert their own rights." *Id.* But PBMs face no obstacle to vindicating their own rights—"the Pharmaceutical Care Management Association (PCMA), is a serial litigant that typically takes the front line in seeking to nullify states' efforts to regulate them." Community Pharmacies Amici Br. 17.

### A. Plaintiffs lack standing to bring First Amendment challenges against laws regulating only PBMs.

Section 510B.4B(1)(*a*)'s "anti-promotion" requirement restricts PBMs from promoting one participating pharmacy over another to affect

a covered person's choice. As the district court explained, Plaintiffs lack injury-in-fact when "resting their claim to relief on the legal rights or interests of third parties." App.Vol.IV.632, R.Doc.54 at 16. That was correct. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (explaining injury-in-fact).

The court also could have relied on lack of redressability—because an injunction against Defendant's enforcement against these Plaintiffs would not redress any asserted injury. Defendant could still enforce that section against nonparty PBMs. *See CASA*, 606 U.S. at 841-847, 851-852 (nonparties may not be part of intended scope of injunctive relief). Plus, such an obey-the-law injunction would be improper. *See Jake's, Ltd., Inc. v. City of Coates*, 356 F.3d 896, 904 (8th Cir. 2004).

Plaintiffs argue that "there are no special standing rules applicable for First Amendment claims," so the district court should have applied here the reasoning it applied to find standing for the preemption claims. Pls. Br. 29. *But see* Pls. Br. 23-28 (advocating special standing rules as to preemption claims, without any supporting authority). But the district court did not apply anything other than a standard Article III injury-in-fact analysis on this First Amendment claim: Section 510B.4B(1)(a)

restricts PBMs' ability to promote one pharmacy over another, and it imposes no restrictions on Plaintiffs' speech, because it is undisputed that no Plaintiff is a PBM.

Plaintiffs, for the first time on cross-appeal, extend their indemnity theory of standing for preemption claims to this First Amendment claim. *See* Pls. Br. 30; R.Doc.44 at 5-6. But this Court ordinarily does not consider arguments advanced for the first time on appeal, especially where "the record on appeal generally would not contain the findings necessary to an evaluation of the validity" of the arguments. *Fleck v. Wetch*, 937 F.3d 1112, 1116 (8th Cir. 2019). And the facts are important here, where Plaintiffs invoke an attenuated indemnification theory.

Regardless, Plaintiffs fail to develop the argument. Pls. Br. 30. For example, Plaintiffs fail to explain with record support how the "anti-promotion" limitation on PBMs implicates any indemnification clause. And a "party may not make bare-bones assertions hoping that [this Court] will do its work for it by developing the argument and putting flesh on its bones." *Jacam Chem. Co. 2013, LLC v. Shepard*, 101 F.4th 954, 963 (8th Cir. 2024) (quotation marks omitted). Any argument here

based on indemnification clauses is forfeit. *See id.*; *see also* Fed. R. App. P. 28(a)(8)(A).

The membership-organization Plaintiff ABI also cannot establish standing. Plaintiffs do not press unique arguments in favor of ABI's standing on this claim. ABI pleaded standing on behalf of its members, App.Vol.I.11, R.Doc.1 ¶17, so it must identify at least one member who has suffered the harm. *See Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 601-602 & n.12 (8th Cir. 2022). But ABI did not plead that any of its members are PBMs. App.Vol.I.9, R.Doc.1 ¶8; R.Doc.19. So its standing fails the same as the other Plaintiffs.

### B. There is no ERISA-functional-interdependence exception to Article III standing.

1. The same reasoning should have applied to Plaintiffs' preemption claims: Plaintiffs cannot "rest[] their claim to relief on the legal rights or interests of third parties." App.Vol.IV.632, R.Doc.54 at 16. Plaintiffs lack injury-in-fact and redressability, because laws regulating only PBMs do not regulate Plaintiffs. *See* Def. Br. 22-27; *Susan B. Anthony List*, 573 U.S. at 159.

On appeal, Plaintiffs focus on the injury-in-fact aspect of their standing deficiencies. They do not respond to Defendant's lack-of-

redressability argument. Pls. Br. 23-28. *But see* Def. Br. 23 (arguing lack of redressability); *id.* 4, 15, 21 (same).

Redressability presents a fundamental deficiency with the preemption claims: An injunction against Defendant's enforcement against these Plaintiffs would not redress any asserted injury. Plaintiffs' asserted injuries stem from enforcement of these sections against nonparty PBMs. Pls. Br. 24-25 n.6. Yet a party-specific injunction, as the Supreme Court requires, *CASA*, 606 U.S. at 841-847, 851-852, still allows Defendant to enforce the challenged sections against nonparty PBMs. More, such an injunction would be an improper obey-the-law injunction—ordering Defendant not to enforce sections against Plaintiffs when those sections impose no duties, and are thus not enforceable, against Plaintiffs at all. *See Jake's, Ltd.*, 356 F.3d at 904.

2. Plaintiffs double down on the district court's novel ERISA-preemption standing theory. Recall that the district court rested Plaintiffs' standing on "the functional interdependence between ERISA plans and the intermediaries essential to their operation," meaning PBMs. App.Vol.IV.630, R.Doc.54 at 14. Rather than admit that theory's novelty, Plaintiffs defend the misconception that *Wehbi* "provides

dispositive guidance." Pls. Br. 25-26 (quoting App.Vol.IV.631, R.Doc.54 at 15).

*Wehbi*'s plaintiff was the PBM trade association, *PCMA v. Wehbi*, 18 F.4th 956, 966 (8th Cir. 2021), so that case provides no guidance here where no plaintiff is a PBM. *Wehbi*'s "functional interdependence" analysis supported allowing a non-ERISA entity like a PBM to assert a "relation to" preemption claim. *Id.* at 966-967. Plaintiffs also invoke *PCMA v. Mulready*. But that case fails for the same reason: The plaintiff was the PBM trade association. *PCMA v. Mulready*, 78 F.4th 1183, 1195-96, 1200 (10th Cir. 2023). Plaintiffs fail to engage with that key distinction.

Plaintiffs then say this Court has allowed ERISA plans to bring preemption claims against laws directed at their service providers. Pls. Br. 26 (citing *Prudential Ins. Co. of Am. v. National Park Medical Ctr., Inc.*, 413 F.3d 897 (8th Cir. 2005)). But that misapprehends *Prudential*. There, the regulated party was a plaintiff, and the ERISA plan was a co-plaintiff. *Prudential*, 413 F.3d at 901. The plan's standing was not at issue, because a regulated co-plaintiff had standing. *See Biden v. Nebraska*, 600 U.S. 477, 489 (2023) (only one plaintiff needs standing for

a case to proceed). Like *Wehbi* and *Mulready*, *Prudential* offers no guidance on the standing question here.

In short, Plaintiffs cite no case applying their "functional interdependence" theory of ERISA-preemption standing. Because there is none.

And even if it had support, a "functional interdependence" theory is inapplicable here. The district court said plans are "functionally dependent" on PBMs because it is "practically impossible" for plans to operate without PBMs. App.Vol.IV.631, R.Doc.54 at 15 (cleaned up). But Plaintiffs' allegations defeat that premise. The complaint alleges that "many [ABI members] contract with PBMs." App.Vol.I.9, R.Doc.1 ¶8; App.Vol.IV.620, R.Doc.54 at 4 (citing R.Doc.1 ¶8). But "many" is not all. Plaintiffs' amici agree with that reality. *See* Iowa Insurers Amicus at 14 (noting that some plans "administer their own plans" instead of contracting with PBMs); *id.* at 12 (employers are "not required to utilize a PBM," though many do). In other words, it is not impossible for Plaintiffs to operate without a PBM.

3. Plaintiffs lastly defend the district court's alternative basis for standing, the "standard indemnification provisions in [Plaintiffs'] PBM

contracts" that create "direct financial exposure for ERISA plans." App.Vol.IV.631, R.Doc.54 at 15; Pls. Br. 26-28. That reasoning was wrong on the law and the facts.

To start, the district court applied the indemnification theory to find Plaintiffs had injury-in-fact. But that theory does not solve Plaintiffs' redressability problem. Def. Br. 23. A party-specific injunction will not redress any asserted injury arising from Defendant's enforcement of the law against nonparties. *CASA*, 606 U.S. at 841-847, 851-852.

To defend the indemnification theory, Plaintiffs rely solely on *Liberty Mut. Insurance v. Donegan*, 746 F.3d 497 (2d Cir. 2014), *aff'd sub nom. Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312 (2016). But *Liberty Mutual* is distinguishable. Def. Br. 27; Community Pharmacies Amici Br. 20-21. The service provider there was acting as the plaintiff-ERISA plan's agent. *Liberty Mutual*, 746 F.3d at 501-502. The plaintiff-ERISA plan challenged a subpoena issued to their service provider, demanding the plan's information. *Id.* The court determined the plaintiff-ERISA plan had standing to challenge that subpoena because, based on an indemnification clause, the plaintiff-ERISA plan faced a choice to either allow its service provider to comply and turn over plan data, or direct

non-compliance with the subpoena and indemnify the service provider for subsequent civil penalties. *Id.* at 502.

Plaintiffs gloss over a key difference here: The *Liberty Mutual* subpoena involved whether the plan would allow its service provider to turn over the plan's data, whereas the SF383 sections here regulate PBMs in their own business affairs.

More, the agreement in *Liberty Mutual* is far broader than either of the two indemnification clauses Plaintiffs cited in the district court or on appeal. Community Pharmacies Amici Br. 20-21 (detailing differences between *Liberty Mutual* and Plaintiffs' R.Doc.39-2 indemnification clause). *Compare* App.Vol.IV.711, R.Doc.66 at 8:17-23 (Plaintiffs' counsel quoting indemnification provision from R.Doc.40, which is a sealed document, on the public record), *with* App.Vol.II.216, R.Doc.39-2 at 25 (similar indemnification clause at ¶11.2). The triggering conditions in the indemnification clauses would not plausibly require indemnification of compliance costs resulting from Defendant's enforcement against PBMs. Community Pharmacies Amici Br. 20.

In all events, Plaintiffs' indemnification theory fails to establish standing on a section-by-section basis, as is their burden. "[S]tanding is

not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). The standing analysis can be "fact-intensive." *Denmon v. Kan. Couns., Inc.*, 149 F.4th 1010, 1014 (8th Cir. 2025). When plaintiffs introduce evidence to support their preliminary-injunction burden of showing that they are likely to succeed, "the plaintiff cannot rest on mere allegations, but must instead point to factual evidence." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024).

Here that means Plaintiffs must tie their indemnification theory to each PBM regulation, explaining how each duty imposed on a PBM triggers an indemnification clause. *See* App.Vol.IV.794, R.Doc.66 at 91:12-14 (Defendant's counsel arguing that "Plaintiffs haven't met their burden to go section by section on this contractual theory of standing."). In other words, Plaintiffs must establish their factual basis for standing as to each claim they raise. *TransUnion*, 594 U.S. at 431.

But Plaintiffs have not done so. There is no explanation in this record how any—no less every—PBM regulation causes "regulatory compliance costs" harms to Plaintiffs. The indemnification theory is, at best, attenuated and, at worst, undeveloped.

Plaintiffs must establish standing from the "outset." *Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021). And they do not dispute that no allegation in the complaint mentions the indemnification clauses. Instead, their indemnification-clause theory arose only in reply at the district court, where they cited two indemnification clauses but failed to explain how those clauses are triggered by each challenged SF383 PBM regulation. Pls. Br. 27 (citing reply brief and hearing transcript).

The district court did not cite any allegations or record evidence supporting the indemnification theory. App.Vol.IV.632, R.Doc.54 at 16. The court found plan sponsors are harmed in the form of "increased costs, compliance obligations, or contractual indemnification." App.Vol.IV.632, R.Doc.54 at 16.

On appeal, like in the district court, Plaintiffs cite two indemnification clauses and then rest their case, failing to explain how those clauses are triggered by each challenged SF383 PBM regulation. Pls. Br. 27; App.Vol.II.216, R.Doc.39-2 at 25 (¶11.2); App.Vol.II.384, R.Doc.40 at 30 (¶7.3j); *see also* App.Vol.IV.711, R.Doc.66 at 8:17-23 (quoting indemnification provision from R.Doc.40, which is sealed, on the public record).

Plaintiffs instead leave Defendant, and now this Court, with homework to tie together their premise and conclusion. But "judges are not like pigs, hunting for truffles buried in briefs or the record." *ASARCO, LLC v. Union Pac. R. Co.*, 762 F.3d 744, 753 (8th Cir. 2014) (cleaned up). That undeveloped theory does not suffice to show likely success in establishing standing.

### C. Plaintiffs lack an equitable cause of action to assert preemption claim against laws regulating only PBMs.

"[I]f an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015). The question here is whether PBM statutes regulate Plaintiffs such that Defendant could bring enforcement actions against Plaintiffs. If so, then the equitable concept of an anti-suit injunction applies. Because "[a]s classically understood, anti-suit injunctions permit potential defendants in legal actions to raise in equity a defense available at law." *Michigan Corr. Org. v. Michigan Dep't of Corr.*, 774 F.3d 895, 906 (6th Cir. 2014) (citing John Harrison, *Ex parte Young*, 60 Stan. L. Rev. 989, 997-999 (2008)).

Plaintiffs do not dispute that they pleaded a cause of action under the Supremacy Clause. App.Vol.I.11, R.Doc.1 at ¶15. Nor do they dispute that they must ground any cause of action in *Ex parte Young* and its concept of an anti-suit injunction. Nor do Plaintiffs dispute that *Ex parte Young* does not grant them a cause of action to assert claims against laws that cannot be enforced against them.

Together, those simple propositions mean that Plaintiffs lack a cause of action to assert preemption claims against any section that regulates only PBMs. After all, Defendant cannot bring an enforcement action against Plaintiffs to enforce those sections, so Plaintiffs are not "potential defendants" for purposes of an anti-suit injunction. Def. Br. 27-30.

Plaintiffs disagree, arguing instead that laws regulating only PBMs are "effectively" enforceable against Plaintiffs too. Pls. Br. 30-31. But arguments for why Plaintiffs have suffered injury-in-fact (albeit wrong there, too) do not establish equitable cause of action. *Cf. Tenn. Electric v. Tenn Valley Auth.*, 306 U.S. 118, 137-138 (1939) (monetary injury-in-fact does not automatically establish equitable cause of action). Those

theories do not explain how Defendant might enforce PBM regulations against Plaintiffs.

More, those theories fail here for similar reasons that they fail to establish injury-in-fact and redressability. The "functional equivalence" theory taken from *Wehbi* explains why PBMs may bring ERISA preemption claims; it has nothing to do with what claims non-PBM Plaintiffs may pursue. And the indemnification theory is undeveloped on this record.

### D. Plaintiffs lack standing to challenge section 510B.4B(4).

"When a statute is challenged as unconstitutional, the proper defendants are the officials whose role it is to administer and enforce the statute." *281 Care Comm. v. Arneson*, 638 F.3d 621, 631 (8th Cir. 2011). Defendant does not have a role in enforcing section 510B.4B(4); only "covered person[s] or pharmac[ies]" do. Iowa Code § 510B.4B(4). An injunction against Defendant's enforcement of that section does not redress any injury to Plaintiffs.

Plaintiffs respond that because Defendant enforces insurance laws, he has a role in enforcing this section. Pls. Br. 28 n.7. Defendant is charged with enforcing compliance with chapter 510B. *See* Iowa Code

§ 510B.10(1). But that does not mean, in equitable terms, that he has a role in enforcing every part of the law. Defendant does not enforce the severability clause—that is a rule courts apply when interpreting the statute. Similarly, Section 510B.4B(4) is not a regulatory requirement Defendant enforces—it is a rule courts will apply when determining whether a covered person or pharmacy has a cause of action.

Consider a hypothetical. A Plaintiff violates section 510B.4B(2). An aggrieved pharmacy may bring a section 510B.4B(4) cause of action against Plaintiff to "enjoin the continuation" of Plaintiff's violation of section 510B.4B(2). Separately, Defendant may initiate enforcement against Plaintiff for violating section 510B.4B(2). But nowhere does Defendant enforce section 510B.4B(4).

Plaintiffs' claim fails Article III's redressability requirement.

## III. Plaintiffs Are Not Likely to Succeed on the Preemption Merits.

### A. ERISA's insurance Saving Clause covers all enjoined sections and most sections raised on cross-appeal.

A district court abuses its discretion when it disregards "a relevant factor that should have been given significant weight." *Dixon*, 950 F.3d at 1055. Despite recognizing ERISA's insurance Saving Clause as an

exception to ERISA's express preemption, the district court did not apply it. App.Vol.IV.638, R.Doc.54 at 22. Plaintiffs claim Defendant's issue is that the court did not "more fully and overtly" address the clause. Pls. Br. 51. That is wrong. The abuse of discretion lies in the district court's failure to analyze the clause at all.

Plaintiffs say the district court analyzed the Saving Clause, but its analysis "was more implicit than overt." Pls. Br. 52. Defendant has more faith in the district court than that. Because had the court analyzed the Saving Clause, there would have been no way around binding Supreme Court precedent holding that the Saving Clause covers a State's any-willing-provider law regulating third-party administrators. *See Kentucky Ass'n of Health Plans v. Miller*, 538 U.S. 329, 334-336 & n.1 (2003). Given the district court's failure to engage with (or even cite) *Miller*, the better read is that it simply overlooked the Saving Clause analysis amid its expedited review of Plaintiffs' challenge of 26 parts of Iowa's law. This Court should correct that error.

Had the court done ERISA's Saving Clause analysis, it would have saved each section the court found ERISA preempted. Def. Br. 31-38. The

Saving Clause covers most of those sections raised on cross-appeal too.[1] And for the saved laws, the only exception is as applied to self-funded ERISA plans, under the "deemer" clause. *FMC Corp. v. Holliday*, 498 U.S. 52, 61-63 (1990). *Contra* Pls. Br. at 55-56 (arguing for broader application of deemer clause).

### 1. SF383 regulates insurance, thus satisfying *Miller*'s first prong.

*Miller* instructs that prong one is not narrowly applicable to just laws "regulat[ing] 'insurance companies' or even the business of insurance.'" 538 U.S. at 336 n.1. It also applies to laws regulating non-insurers who "provide only administrative services to self-insured plans." *Id.* That is sufficiently "within the activity of insurance" for Saving Clause purposes. *Id.*

Applied here, that means not only do the parts of SF383 regulating Plaintiffs satisfy prong one, but so too the parts regulating PBMs—because PBMs are non-insurers providing administrative services to insurers. Def. Br. 32-35.

---

[1] The only sections raised on cross-appeal for which Defendant does not make a Saving Clause argument are sections 510B.4B(2)(*b*) and 510B.8B(4). That does not waive any such argument on remand.

Plaintiffs' sole argument otherwise is that SF383 is more than "minimally concerned with PBMs." Pls. Br. 53-54. But their standing, preemption, and scope-of-injunction arguments reason that any law regulating PBMs is functionally a regulation of an ERISA plan. If that theory is taken seriously, then it should be applied consistently to the Saving Clause analysis too. And that would mean that, even if SF383 is "focused on" PBMs, it is the "functional equivalent" of a law "focused on" ERISA plans.

Plaintiffs claim they are not trying to have it both ways; instead, they reason, the Saving Clause concerns whether the regulated entity "carr[ies] risk." Pls. Br. 54 n.13. But whether the regulated entity "carries risk" is not part of *Miller*'s simplified two-pronged approach. Understandably, Plaintiffs cite no authority supporting their theory.

In the district court, Plaintiffs relied on several distinguishable cases. Def. Br. 33-34. On appeal, they no longer cite any of those cases. They instead quote this Court's analysis of the deemer clause in *Prudential*. Pls. Br. 54 (citing 413 F.3d at 912-913). But just as *Miller*'s Saving Clause analysis should not be taken "out of context" and applied

to the deemer clause analysis, 413 F.3d at 912, *Prudential*'s deemer clause analysis should not be applied to the Saving Clause analysis.

As for *Prudential*'s Saving Clause analysis, like *Miller*, *Prudential* held that an any-willing-provider law, even one applied to "non-insurance entities," was "a law which regulates insurance, and is saved from preemption," subject to the deemer clause exception as applied to self-funded plans. 413 F.3d at 911-912 (cleaned up). So too here.

**2. Each enjoined section substantially affects the risk pool.**

Under *Miller*'s second prong, Plaintiffs primarily argue in broad strokes that PBM regulations do not satisfy prong two because PBMs do not carry risk. Their only authority is a 1993 Fifth Circuit case. *See NGS Am., Inc. v. Barnes*, 998 F.2d 296, 299 (5th Cir. 1993). Coming one decade before *Miller*, that case applied pre-*Miller* precedents (reliant on an amorphous three-factor balancing test) that the Supreme Court said "failed to provide clear guidance," "rais[ing] more questions than they answer and provid[ing] wide opportunities for divergent outcomes." *Miller*, 538 U.S. at 340. That is why *Miller* made a "clean break" from those earlier precedents. *Id.* at 339 n.3, 342.

This Court should apply *Miller*— the law need not "actually spread risk," but "substantially *affect* the risk pooling." *Id.* Regardless of the entity regulated, if the law affects the number of providers, the scope of permissible bargains between insurers and insureds, or the terms under which an insurer must pay for risk, then it substantially affects the risk pooling. *See id.*; Community Pharmacies Amici Br. 28-30 (explaining how ERISA's Saving Clause covers SF383's PBM sections).

For the two enjoined any-willing-providers sections (sections 510B.4B(1)(*b*) and (2)(*a*)), two enjoined cost-sharing sections (sections 510B.4B(1)(*f*) and 510B.8(3)), and one cost regulation the district court did not enjoin (section 510B.8(5)), Plaintiffs' only argument that those sections do not satisfy prong two merely repeats their theory that no PBM law *can* be saved. Pls. Br. 56. Because Plaintiffs are not PBMs, that therefore concedes that those sections, as applied to Plaintiffs, satisfy prong two. And it means that if this Court concludes that PBM laws can be saved, then those sections, as applied to PBMs, also satisfy prong two.

Plaintiffs otherwise do not engage in a section-specific analysis. In one sentence, they generally assert that "most" of the challenged parts of SF383 "have nothing to do with spreading risk." Pls. Br. 55; *but see*

*Miller*, 538 U.S. 339 n.3 (law need not "actually spread risk"). Plaintiffs then reference the types of regulations they believe do not spread risk, ending the parenthetical list with "etc." Pls. Br. 55. It is exceedingly difficult for Defendant to know what arguments Plaintiffs believe that list raises. Such "bare-bones assertions" should forfeit the argument. *See Jacam*, 101 F.4th at 963; Fed. R. App. P. 28(a)(8)(A). At a minimum, it fails to address or rebut Defendant's section-by-section prong two analysis. Def. Br. 37-38. Indeed, if the district court correctly found, as Plaintiffs defend, that those sections "dictate" or "mandate" substantive terms of insurance coverage and are thus preempted, the Supreme Court says that affects risk pooling. *Miller*, 538 U.S. at 338-339 & n.3.

As to the enjoined sections that Plaintiffs' list may reference in passing, those satisfy prong two.

Plaintiffs reference sections that "protect[] pharmacies from discrimination." Defendant understands that to reference section 510B.4(4). Prohibiting discrimination against pharmacies will "expand[] the number of providers from whom an insured may receive health services," which *Miller* says substantially affects risk pooling. 538 U.S. at 338-339 & n.3.

The contract-terms sections, sections 510B.8D(1), (2), require contracts to mandate pass-through pricing. The Supreme Court has "repeatedly held that state laws mandating insurance contract terms are saved from preemption." *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 375 (1999).

And the "cause of action" section Plaintiffs' list references, section 510B.4B(4), authorizes covered persons or pharmacies to enforce the any-willing-provider duties that Plaintiffs effectively concede affect the risk pooling. That section affects risk pooling too; it "expand[s] the number of providers from whom an insured may receive health services." *Miller*, 538 U.S. at 338-339 & n.3. It is also like independent-review provisions the Supreme Court held saved. *Id.*

To be clear, Plaintiffs' parenthetical list does not mention two enjoined sections Defendant challenges on appeal: Specialty-drug (section 510B.4B(1)(*d*)) or deductible-credit (section 510B.8(6)). Any argument for why those sections do not affect risk pooling is thus forfeit. And would be wrong on the merits. Def. Br. 37-38.

Plaintiffs lastly argue that the "cost-sharing provisions," even if saved from preemption, remain preempted because they conflict with an

ERISA fiduciary-duty section. Pls. Br. 56-57. But the only fiduciary duty statute cited applies to a self-funded plan. And any laws covered by the Saving Clause are not saved from preemption as applied to self-funded plans, because of the "deemer" clause exception to the Saving Clause. So it is unclear what Plaintiffs gain from this alternative argument.

Even still, the referenced cost-sharing sections apply only to PBMs. *See* Pls. Br. 10-12 (any section referred to as "cost-sharing" regulates PBM duties, *e.g.*, sections 510B.4B(1)(*f*) and 510B.8(3)). And PBMs are not ERISA fiduciaries. *See* Community Pharmacies Amici at 4-6 (detailing difference between PBMs and ERISA fiduciaries). So PBM cost-sharing rules cannot conflict with any ERISA fiduciary duties.

### 3. ERISA's Saving Clause covers most sections raised on cross appeal.

Most of the sections Plaintiffs cross-appeal regulate only PBMs. And for the same reasons Plaintiffs' argument fails for the wrongly enjoined PBM sections, those arguments fail on cross-appeal too: Laws regulating PBMs may fall within the Saving Clause. Those sections, like the enjoined sections, satisfy *Miller*'s first prong.

Beyond the bare-bones parenthetical list, Plaintiffs do not analyze *Miller* prong two as applied to each section they raise on cross-appeal.

*Jacam*, 101 F.4th at 963; Fed. R. App. P. 28(a)(8)(A). For the two cross-appeal sections referenced in parenthetical, those arguments fail.

Section 510B.4B(1)(*a*) prohibits PBMs from steering covered persons away from the pharmacy of the person's choice. To explain the law is to show how it, like SF383's other anti-discrimination sections, will "expand[] the number of providers from whom an insured may receive health services." *Miller*, 538 U.S. at 338-339 & n.3.

The dispensing fee similarly affects the risk pooling. *See* Iowa Code § 510B.8B(3). On the preemption merits, Plaintiffs argue the fee will "caus[e] plans immediately to alter plan terms to eliminate benefits or increase beneficiaries' cost-sharing." Pls. Br. 49. In other words, as Plaintiffs describe it, the dispensing fee might affect what the insured or insurer pay for the risk. *Miller*, 538 U.S. at 339 n.3. And as Defendant views it, the dispensing fee will expand the number of providers by setting a floor reimbursement rate, helping to prevent or slow the continued closure of retail pharmacies across Iowa. R.Doc.31 at 4-5. That too substantially affects risk pooling under *Miller*, 538 U.S. at 338-339 & n.3. *See also* Community Pharmacies Amici Br. 30-33 (applying Saving Clause to dispensing fee).

Plaintiffs' parenthetical list does not reference several sections they raise on cross-appeal: Pass-through pricing (section 510B.8(4)), cost-sharing (section 510B.8(7)), pharmacy appeal (section 510B.8E), and mail-order exclusivity (section 510B.4B(1)(*e*)). Any argument for why those sections do not affect risk pooling is thus forfeit.

* * *

The only applicable exception to the Saving Clause analysis is that States may not apply their otherwise-saved laws to self-funded ERISA plans. But that exception, as in *Miller*, does not prevent applying the law to PBMs servicing self-funded plans.

### B. No section is "connection with" preempted.

No SF383 section preordains an ERISA plan's choices about who to cover or what benefits to provide. *Wehbi*, 18 F.4th at 968 (explaining "connection with" preemption).[2]

[2] Plaintiffs' amici raised implied preemption. ERIC Amici Br. 27-32. But Plaintiffs pleaded and briefed only an express preemption claim under ERISA's express preemption clause. *See, e.g.*, R.Doc.16 at 12 (citing ERISA's express preemption clause, 29 U.S.C. § 1144(a)); App.Vol.I.18, R.Doc.1 ¶ 38 (same). This Court should not consider a separate implied preemption claim.

### 1. Cost- and reimbursement-related sections.

SF383's contract-terms sections (Iowa Code §§ 510B.8D(1), (2)) require PBM contracts to use pass-through pricing, which is separately required by state law that the district court did not find preempted (Iowa Code § 510B.8(4)). The district court reasoned that "intruded on fiduciary discretion." App.Vol.IV.672, R.Doc.54 at 56. But ERISA plans are not immune from generally applicable State laws, so requiring contracts to comply with such State laws cannot intrude on a fiduciary duty. Def. Br. 44-45.

Plaintiffs' main argument is that the contract terms violate a statutory fiduciary duty. But the fiduciary duty the court and Plaintiffs cite "has nothing to do with state-law regulations of the goods and services that third parties can provide to ERISA plans." Community Pharmacies Amici Br. 23-25; *see id.* at 25 (highlighting slippery slope that district court's theory would cause).

The district court and Plaintiffs otherwise fail to explain why requiring contracts to comply with permissible state laws violates fiduciary duties. Because the district court correctly found the pass-

through-pricing requirement itself was a permissible cost regulation, the contract terms too are permissible.

Plaintiffs next defend the district court's reasoning on three cost-sharing rules. The court reasoned that the "regulatory effect" of sections 510B.4B(1)(*f*) and 510B.8(3) on PBMs "flows backward to circumscribe plan design itself." App.Vol.IV.654, R.Doc.54 at 38. Plaintiffs fail to squarely address the flaws in such a flow-backwards theory of preemption. Def. Br. 46-47.

Then, along with section 510B.8(6), the district court reasoned those three sections dictate cost-sharing arrangements and eliminate plan discretion. But Plaintiffs fail to explain which covered persons or which specific benefits those sections dictate.

Laws that "reach[] beyond cost controls" and which might have an "effect . . . on benefit structure" are not preempted unless they impose "specific rules for determining beneficiary status" or "requir[e] payment of specific benefits." *Wehbi*, 18 F.4th at 968. The cost-sharing rules here might alter a plan's incentives or "shopping decisions." *Rutledge v. PCMA*, 592 U.S. 80, 87-88 (2020). But that is not enough for preemption.

Consider a mail-order-pharmacy benefit. After SF383, plans may still offer that benefit. SF383 does not prohibit or require it. But if a plan chooses to offer it, that offering might cost more (or less) if the PBM chose to offer that mail-order-pharmacy benefit at higher (or lower) cost-sharing or imposes additional (or less) fees. Any change in the plan's shopping incentives is not attributable to section 510B.4B(1)(*f*) or 510B.8(3). It is "attributable to the independent actions of PBMs." *Wehbi*, 18 F.4th at 969. Downstream effects on plan shopping decisions do not trigger preemption. *Rutledge*, 592 U.S. at 91.

Laws that require "comply[ing] with a particular process" or "pricing methodology" might require a plan to "recalculate and reprocess how much it" owes. *Id.* at 90. But they do not impermissibly dictate plan benefits.

### 2. Prohibition on unreasonably specialty designations.

The district court found section 510B.4B(1)(*d*) preempted because it inhibits fiduciaries from "reasonably" designating a drug as a specialty drug. App.Vol.IV.648, R.Doc.54 at 32. The law's plain text proves that wrong. It only prohibits PBMs from "[u]nreasonably" doing so. Iowa Code § 510B.4B(1)(*d*). That is not preempted because it neither "requir[es]

payment of specific benefits" nor "bind[s] plan administrators to specific rules for determining beneficiary status." *Rutledge*, 592 U.S. at 87; *see* Community Pharmacies Amici Br. at 26-27.

Plaintiffs reiterate the district court's reasoning that the law "eliminates" a plan's ability to designate drugs as specialty and thus interferes with "fiduciary decision-making." App.Vol.IV.647, R.Doc.54 at 31. But as Plaintiffs note elsewhere, fiduciaries must act reasonably. Pls. Br. 44 (citing 29 U.S.C. § 1108(b)(2)(A)). And the specialty-drug section prohibits only unreasonable PBM conduct. As the district court correctly reasoned for other SF383 sections, there can be no conflict between fiduciary duties and state law establishing professional standards. App.Vol.IV.656-657, R.Doc.54 at 40-41.

Plaintiffs invoke *Gerhart*. Pls. Br. 39 (citing *PCMA v. Gerhart*, 852 F.3d 722, 731 (8th Cir. 2017)). *Gerhart* took issue with state law that lacked "the yardstick" the State would use to measure "correctness" of a reimbursement rate. *Gerhart*, 852 F.3d at 731. Even if that part of *Gerhart* remains good law post-*Rutledge*, it is not instructive here, where the law provides a familiar legal yardstick: reasonable.

### 3. Cause of action to enforce section 510B.4B duties.

Section 510B.4B(4) authorizes private actors to enforce non-ERISA duties. Plaintiffs argue that ERISA does not allow a pharmacy to bring a claim against a plan or its fiduciaries, so any cause of action granted to pharmacies must be preempted. Pls. Br. 45-46. That runs headlong into *Rutledge*, which upheld a state law granting a pharmacy a self-help enforcement mechanism, allowing the pharmacy to enforce a PBMs' failure to comply with the state law reimbursement regulations. 592 U.S. at 85. "[R]esponsibility lies first with the PBM for" violating the state law. *Id.* at 91. So too here.

Plaintiffs otherwise do not say which ERISA remedies this section duplicates, supplements, or supplants. Plaintiffs instead resort to incorporating their preemption arguments as to other SF383 sections. As Plaintiffs tell it, because the "any-willing pharmacy, cost-sharing, and mail-order directives negate ERISA-plan terms and design," Pls. Br. 46, therefore the cause-of-action section is not independent of ERISA.

Not only does that fail to present an argument for why section 510B.4B(4) itself should be preempted, but even that telling does not address section 510B.4B's anti-steering, accreditation, or notice

requirements. And those independent state law duties too may be enforced by section 510B.4B(4)'s cause of action. At a minimum, any injunction against section 510B.4B(4)'s enforcement should be narrowed to those section 510B.4B subsections that the Court holds preempted. Plaintiffs did not dispute that request on appeal. Def. Br. 51-52; Pls. Br. 45-46.

#### 4. Sections raised on cross-appeal.

*Anti-steering*. Section 510B.4B(1)(*a*) prohibits PBMs from steering covered persons to the PBM's preferred pharmacy. The district court recognized that is outside the scope of ERISA preemption, as a regulation of how PBMs "may communicate with plan participants" affecting "solely how PBMs may present information" and operating only after "plan design decisions have been made." App.Vol.IV.649-652, R.Doc.54 at 33-36.

Rather than engage with that PBM-specific analysis, Plaintiffs invoke their reasoning for why laws regulating plans are preempted. Pls. Br. 47. Plaintiffs rely on *Shaw*, which preempted a state law mandating pregnancy benefits. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983). But unlike *Shaw*, the anti-steering section does not require plans to cover

specific benefits or bind plans to specific rules for determining beneficiary status, because it governs only PBM conduct. Plans remain free to offer whatever benefits and set whatever beneficiary-status rules.

*Reporting and notice requirements*. Sections 510B.8B(4)(a) and (b) require PBMs to issue a quarterly report of all drugs reimbursed at 10% above or below the national average drug acquisition cost. ERISA is concerned with disuniformity in a *plan*'s ERISA reporting requirements. *Wehbi*, 18 F.4th at 969. Those requirements apply only to PBMs and do not require disclosing any plan information. The district court correctly understood that "distinction proves decisive." App.Vol.IV.670, R.Doc.54 at 54.

Plaintiffs rely on *Gerhart*. Pls. Br. 50 (citing 852 F.3d at 731). Even if that part of *Gerhart* remains good law, it is not instructive because the issue there was the State requiring disclosure of PBMs' methodologies for reimbursement, which included "the economic bases for a plan's provision" of benefits. 852 F.3d at 731. But nothing in SF383's disclosure requirement mandates disclosure of plan data.

In all events, since *Gerhart*, this Court has upheld PBM and plan disclosure requirements that have a *de minimis* effect on plans. *Wehbi*,

18 F.4th at 969. And Plaintiffs do not develop any argument as to why the disclosure requirement causes more than a *de minimis* effect.

Section 510B.4B(2)(*b*) similarly survives. That section requires third-party payors to "inform covered persons of the names and locations of all" pharmacy providers participating in the plan. Applying *Wehbi*, the district court reasoned that requirement was "the sort of 'modest disclosure requirement[]' that impose[s] but *de minimis* burdens" on plan administration, because it did not compel proprietary disclosures but only straightforward information. App.Vol.IV.671, R.Doc.54 at 55 (citing 18 F.4th at 969). That was correct.

Plaintiffs hardly develop an argument on cross-appeal as to this section. Pls. Br. 47-48. At a minimum, they fail to explain why the disclosure requirement causes anything more than a *de minimis* effect. Indeed, they fail to acknowledge the district court's analysis of *Wehbi* and *Gobeille*.

*Cost and reimbursement rules*. Plaintiffs challenge three cost or reimbursement rules on cross-appeal. Each challenge fails.

First, the district court correctly determined section 510B.8(4)'s pass-through-pricing requirement was a cost regulation that did not

intrude on fiduciary duties. App.Vol.IV.658-660, R.Doc.54 at 42-44. Cost regulations requiring a particular "pricing methodology" are not preempted so long as their effect is not "so acute that it will effectively dictate plan choices." *Rutledge*, 592 U.S. at 88, 90. As the district court explained, the pass-through-pricing requirement "further[s] rather than hinder[s] fiduciary duties" because it "ensur[es] that rebates flow to [ERISA plans and sponsors] rather than being retained by PBMs." App.Vol.IV.659, R.Doc.54 at 43. Plaintiffs do not address this commonsense conclusion, nor do they argue the law has an acute effect.

Second, section 510B.8B(3)'s dispensing fee requirement is a permissible cost regulation. Plaintiffs argue only that it has an acute effect on plans, and thus dictates plan choices, because it took effect too quickly. The district court rightly disagreed. App.Vol.IV.663-665, R.Doc.54 at 47-50.

"Acute" means a law imposing "an exorbitant tax leaving consumers with a Hobson's choice." *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins.*, 514 U.S. 645, 664, 668 (1995). The Supreme Court coined the "acute" concept; it is not a statutory term that requires a dictionary. Considering how the Supreme Court has

understood "acute," as the district court explained, a $10.68 dispensing fee is nowhere near as "exorbitant" a tax as a 13% surcharge on a hospital rate, which *Travelers* determined was not acute. App.Vol.IV.664, R.Doc.54 at 48.

Plaintiffs' understanding of "acute" relates to timing—the law takes effect too quickly, they reason. But Plaintiffs admitted the fee would be permissible it if took effect later, *id.*, thus conceding the fee is not "acute," as used in *Travelers*. Plaintiffs lack precedent for their understanding. The district court properly declined to adopt that novel interpretation, applying *Travelers* instead.

In any event, the district court concluded in the alternative that the fee was not "acute" even if Plaintiffs' timing-based definition were correct. App.Vol.IV.665, R.Doc.54 at 49. Plaintiffs fail to explain why that alternative conclusion was wrong.

Third, sections 510B.8(5) and (7) impose cost-sharing rules on PBMs. The district court concluded those sections were "permissible costs regulations that govern PBM administration." App.Vol.IV.667-669, R.Doc.54 at 51-53. Rather than engage with the district court's analysis, distinguishing those sections from other impermissible cost-sharing rules,

Plaintiffs broadly assert "[t]here is no analytical distinction between" them. Pls. Br. 49-50.

Though the court wrongly determined that other cost-sharing rules dictated benefits or plan designs, thus impermissibly eliminating plan discretion, the court rightly distinguished these two PBM cost-sharing rules: "Plans retain complete discretion over formularies, network composition, cost-sharing levels, and underlying benefit designs." App.Vol.IV.668, R.Doc.54 at 52. As in *Rutledge*, such cost regulations "impose[] procedural requirements" and "affect[] the computational methodology," "without mandating specific plan structures or benefit designs." *Id.* Plaintiffs fail to develop argument against that distinction.

*Pharmacy appeal*. Plaintiffs recognize their uphill battle on their challenge to section 510B.8E, given *Rutledge* upheld a state law requiring administrative appeal for pharmacies. Pls. Br. 51 (citing 592 U.S. at 84). And like in *Rutledge*, the "responsibility" for any downstream effect on plans here "lies first with the PBM." 592 U.S. at 91.

Plaintiffs' sole argument against *Rutledge* is that section 510B.8E is "much broader" because it includes a "third party payor's, health plan's, or health carrier's" violations. Pls. Br. 51. But the law mandates PBMs

provide pharmacies with an appeal right; context suggests that appeal governs the PBM-pharmacy relationship. And that is exactly the interpretation the district court applied. App.Vol.IV.678-679, R.Doc.54 at 62-63. This Court should not apply Plaintiffs' overbroad interpretation in the face of a plausible (and correct) interpretation that avoids preempting a state law. *See Wehbi*, 18 F.4th at 972 ("[T]he practice of pharmacy is an area traditionally left to state regulation.").

*Mail-order exclusivity*. In a footnote, Plaintiffs argue section 510B.4B(1)(*e*) should be included by implication in the district court's ordered relief. Pls. Br. 42 n.10. But the district court's order detailed which sections it found preempted, and it did not include section 510B.4B(1)(*e*). App.Vol.IV.702, R.Doc.54 at 86. So Plaintiffs' argument is more properly considered part of their cross-appeal, asking this Court to expand the injunctive relief ordered below. *But see Equip. Mfrs. Inst. v. Janklow*, 300 F.3d 842, 848 & n.2 (8th Cir. 2002) ("[T]his Court will not consider a claim improperly presented in a footnote.").

But Plaintiffs did not include that section in their request for injunctive relief, so it is forfeit. R.Doc.16 at 7 (citing that section only in the background section). This Court ordinarily does not consider

arguments, no less claims for injunctive relief, raised for the first time on appeal. *Fleck*, 937 F.3d at 1116. And had Plaintiffs briefed the claim in district court, it would fail for the same reasons as the other mail-order and anti-discrimination sections.

## IV. Plaintiffs Are Not Likely to Succeed on the First Amendment Merits.

The district court wrongly enjoined enforcement of SF383's notice requirement and referral-discrimination prohibition on First Amendment grounds. Plaintiffs' arguments are largely identical to their district court briefing, adding two footnotes to update their brief on appeal. *Compare* R.Doc.16 at 27-31, *with* Pls. Br. 57-62. Plaintiffs fail to engage with the new authorities Defendant cited on appeal—including recent cases from the full Eighth Circuit and the Ninth Circuit. Those authorities confirm that the district court erred.

The district court did not address Plaintiffs' First Amendment claim as to section 510B.4B(1)(*a*)'s anti-promotion requirement, because Plaintiffs lacked standing to challenge that PBM-focused section. Plaintiffs now cross-appeal and ask this Court to consider that claim in the first instance.

Commercial speech First Amendment challenges are subject to either intermediate scrutiny under *Central Hudson* or less scrutiny under *Zauderer*. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 564-566 (1980); *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 650-651 (1985). Each section satisfies those standards. Def. Br. 52-61.

Plaintiffs do not dispute that Defendant's asserted governmental interests are substantial. Pls. Br. 62 (narrowing argument on appeal to focus on narrow tailoring, whether the interests are "substantial or not").

**1. Section 510B.4B(2)(*a*)'s notice requirement.**

The notice requirement says if a third-party payor restricts participation in its pharmacy network, then it must notify all pharmacies in the geographical coverage area and offer them the opportunity to participate under identical terms. Iowa Code § 510B.4B(2)(*a*). Thus, previously willing pharmacies will now be able to make an informed decision on whether to participate—rather than be left in the dark because of PBM and third-party payors' inherently misleading practices.

1. PBMs' and third-party payors' misleading practices cause a lack of consumer choice and skyrocketing prescription drug costs, all while

they claim their practices keep costs down. Def. Br. 53-54. *Zauderer* applies because the notice requirement addresses those "inherently misleading" practices by increasing transparency and thus consumer access and choice. *Zauderer*, 471 U.S. at 650-651.

Defendant argued that *Zauderer* governs review of this section because the law addresses "inherently misleading" commercial speech. Def. Br. 53-56. On appeal, Plaintiffs do not argue that this section would fail *Zauderer*'s lower level of scrutiny, instead pressing arguments only under *Central Hudson*'s heightened standard. Pls. Br. 60-62. So if this Court agrees with Defendant that *Zauderer* applies, then it should hold that the notice requirement complies with the First Amendment. Plaintiffs forfeit any argument to the contrary under *Zauderer*.

2. To be sure, the notice requirement satisfies *Zauderer*, which requires laws be "reasonably related to the State's interest in preventing deception of consumers" and not "unduly burde[n]" speech. 471 U.S. at 650-651. As detailed in Defendant's declarations, SF383's notice requirement increases transparency and consumer access and choice, thus preventing consumer deception by doing what PBMs and third-party payors claim their misleading practices do. Def. Br. 54.

Plaintiffs assert, without substantiation or explanation, that the notice requirement is not directed at misleading practices. Pls. Br. 61. And Plaintiffs generally assert that the notice requirement requires third-party payors to reveal "commercially sensitive information that they otherwise would not disclose." Pls. Br. 58.

But the notice requirement is no different than permissible "product labeling laws" that might require disclosure of, what Plaintiffs believe is, commercially sensitive information. *PCMA v. Rowe*, 429 F.3d 294, 316 (1st Cir. 2005) (Boudin and Dyk, JJ., jointly concurring and opinion of the court as to First Amendment). And like the permissible disclosure requirement in *Rowe*, SF383's notice requirement "protect[s] covered entities from questionable PBM business practices." *Id.* Plaintiffs do not address *Rowe*.

3. Plaintiffs' argument on appeal against the validity of the notice requirement under *Central Hudson* boils down to this, without further development: "[T]here are several non-speech-related means by which the state could have sought to increase pharmacy network access." Pls. Br. 61. That fails for three reasons.

*First*, Plaintiffs cannot merely assert that the law is unduly burdensome; they must build a supporting record. "To decide whether the disclosure requirements are 'unduly burdensome' when applied to [plaintiffs], the record must contain more than allegations; it must contain facts demonstrating the undue burden such requirements have on the company's ability to [comply with the disclosure requirement]." *1-800-411-Pain Referral*, 744 F.3d at 1063. The district court failed to hold Plaintiffs to their burden. On appeal, too, Plaintiffs fail to develop that argument. *Jacam*, 101 F.4th at 963; Fed. R. App. P. 28(a)(8)(A).

*Second*, Plaintiffs' theory appears to drift into a least-restrictive-means requirement, which the Supreme Court has clarified *Central Hudson* does not require. *Bd. of Trs. of State Univ. of New York v. Fox*, 492 U.S. 469, 479-481 (1989). *Central Hudson* requires only "a reasonable fit between the means and ends of the regulatory scheme." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 561 (2001). That there may be lesser means to further the State's interest does not answer the inquiry.

*Third*, the notice requirement satisfies *Central Hudson*, because it directly advances the State's substantial interests.

As the Ninth Circuit recently held, this Court should reject Plaintiffs' First Amendment compelled-speech challenge to a state law requiring prescription-drug related disclosures, because it "preserv[ed]" a "fair bargaining process" by reducing "informational asymmetries" that plague the prescription drug process, "facilitating informed commercial transactions, and improving the efficiency of the pharmaceutical market." *PhRMA v. Stolfi*, 153 F.4th 795, 826 (9th Cir. 2025). Indeed, it "is common sense that collecting and publishing information about drug pricing, costs, and pharmaceutical market conditions 'directly advances'" the State's interests. *Id.* at 827

So too here. But Plaintiffs do not address *Stolfi*, despite having relied on *Stolfi*'s since-reversed district court predecessor, R.Doc.16 at 31; App.Vol.IV.687, R.Doc.54 at 71 (district court citing same).

The notice requirement directly advances transparency, and thus consumer access and choice, by ensuring equal access to information for all pharmacies. Pharmacies previously cut out of the information loop—to the detriment of consumer's access and choice—will now be able to participate in the market. That will stymie consumer deception. Def. Br. 54 (collecting declaration cites).

On appeal, Plaintiffs fail to identify what lesser means the State could have used. The district court reasoned that the notice requirement could have been limited to providers already in a plan's network, instead of prospective pharmacy participants. App.Vol.IV.687-688, R.Doc.54 at 71-72. But courts are allowed to apply "common sense" under *Central Hudson*. *Lorillard*, 533 U.S. at 555; *Stolfi*, 153 F.4th at 827. And requiring a third-party payor to notify pharmacies within its network of the restrictions placed on pharmacies to join the third-party payor's network makes no sense. It neither increases transparency nor promotes consumer choice and access. That option thus does not amount to a lesser means to directly advance the State's substantial interests.

#### 2. Section 510B.4(4)'s referral-discrimination prohibition.

The district court enjoined enforcement of only the "referral" part of section 510B.4(4) because it misinterpreted the statute's plain text. A proper interpretation, guided by *Brandt v. Griffin*, 147 F.4th 867, 889 (8th Cir. 2025) (en banc), confirms that Plaintiffs' claim fails at *Central Hudson* step one, because this section does not regulate speech more than incidentally.

To begin, Plaintiffs argue in support of enjoining enforcement of only the "referral" part of that section, analyzing none of the section's other limitations. Pls. Br. 58. Plaintiffs did not dispute Defendant's request on appeal that, if this Court affirms on this First Amendment claim, it clarify that enforcement of the remainder of this section is not enjoined on First Amendment grounds. Def. Br. 58 n.2. Defendant thus limits argument on this claim to the "referral" limitation, which prohibits PBMs and third-party payors from "discriminat[ing] against a pharmacy . . . with respect to . . . referral." Iowa Code § 510B.4(4).

The district court did not have the benefit of *Brandt*, which instructs how to properly interpret the term "referral" in an act like this one. 147 F.4th at 889. There the subject matter of the act was medical treatment of minors, and this Court reasoned that the whole statute supported interpreting "refer" to mean "a formal 'referral for' treatment, not merely informing patients about the availability of procedures." *Id.* So too here—even more so because the statute here does not use the term refer but "referral."

As Defendant explained, Def. Br. 58-60, the formal interpretation of "referral" contradicts the district court's admittedly "expansive"

understanding of the statute here. App.Vol.IV.684, R.Doc.54 at 68 (applying "the expansive meaning of 'referral'"). Indeed, the district court's interpretation reflects the understanding *Brandt* rejected, where the Court declined to interpret "refer" to mean "informing patients about" available procedures. 147 F.4th at 889.

The rest of SF383 confirms the formal interpretation is the correct one—particularly when comparing Plaintiffs' and the district court's expansive understanding with what is separately prohibited under section 510B.4B(1)(*a*). Def. Br. 59.

And when interpreted properly, a formal referral "is not part of the speech process." *Brandt*, 147 F.4th at 889. In *Brandt*, it was part of "the treatment process," *id.*, and here it is part of how to provide prescription drugs. As in *Brandt*, any regulation of speech is "only an incidental effect." *Id.* Plaintiffs' claim thus fails under *Central Hudson*'s first factor because the law does not regulate speech.

But Plaintiffs ignore *Brandt*. Instead, Plaintiffs respond to Defendant's incidental-speech argument in a footnote, lacking citations to any supporting authority. Pls. Br. 59 n.15. Plaintiffs say that "even formal medical understanding involves a doctor communicating with a

patient about options." Pls. Br. 59 n.15. But that conflicts with now binding horizontal precedent.

Plaintiffs then champion the district court's expansive reading of the statute, arguing that the law prevents PBMs and third-party payors "from providing *truthful* information regarding the availability of lower-cost or higher-quality pharmacy offerings." Pls. Br. 59 n.15, 61; *but see State v. Abrahamson*, 696 N.W.2d 589, 593 (Iowa 2005) (constitutional-avoidance canon).

*Brandt* aside, Plaintiffs have no response to Defendant's argument that the district court wrongly interpreted "referral" in section 510B.4(4) to do the same work as section 510B.4B(1)(*a*)'s separate promotion-and-comparison limitation. Def. Br. 58-60. The Legislature used different language in the latter section—not "referral"—and applied it only to PBMs. Yet the district court adopted an interpretation that renders some part of one of the two sections superfluous. *But see Bribriesco-Ledger v. Klipsch*, 957 N.W.2d 646, 650-651 (Iowa 2021). Properly interpreted, the section does not "muzzl[e] employers from speaking the truth." Pls. Br. 61. It restricts employers only from discriminating in how they make certain formal referrals.

In short, *Brandt*, and the need to avoid rendering parts of the law superfluous, confirm the district court erred in expansively interpreting section 510B.4(4).

Plaintiffs make no argument in the alternative as to why Defendant's narrower understanding of the law would not satisfy *Central Hudson* scrutiny. Def. Br. 61 (applying *Central Hudson* to this section). So if this Court agrees with Defendant's interpretation, then it should hold that section 510B.4(4) survives *Central Hudson* and thus complies with the First Amendment.

### 3. Plaintiffs' cross-appeal: Section 510B.4B(1)(*a*)'s "anti-promotion" section.

Plaintiffs' interpretive flaws continue on cross-appeal, where they ask this Court to enjoin enforcement of the "anti-promotion" section based on protected speech the section does not cover. This Court should decline to enjoin section 510B.4B(1)(*a*) on First Amendment grounds.

This section prohibits only PBMs from "promotion of one participating pharmacy over another" that might "affect a covered

person's choice." Iowa Code § 510B.4B(1)(*a*).[3] It imposes no restrictions on employers or any third-party payors. Yet Plaintiffs argue only that the section fails *Central Hudson* because it "muzzl[es] employers" from "providing *truthful* information regarding the availability of lower-cost or higher-quality pharmacy offerings." Pls. Br. 61.

So this Court's analysis here can be simple: Plaintiffs' sole argument under the First Amendment fails because the asserted protected speech is not within the statute's scope. Indeed, the section, by its plain text, does not prohibit employers from doing anything. *See* Iowa Code § 510B.4B(1)(*a*) ("A pharmacy benefits manager shall not . . ."). It regulates only PBMs. Indeed, that is the entire reason the district court concluded Plaintiffs lacked standing to challenge that section. App.Vol.IV.633, R.Doc.54 at 17.

---

[3] Plaintiffs' First Amendment argument in the district court and on appeal is limited to the "promotion" subset of the statute, but the section covers more. R.Doc.16 at 28-30; Pls. Br. 58, 60-61. Defendant requests the Court, if it enjoins this section on First Amendment grounds, clarify that enforcement of the remainder of this section is not enjoined on First Amendment grounds.

## V. The Injunction Is Overbroad.

Plaintiffs continue to ask courts to "invalidate the entirety of the remainder of SF 383, as applied to Plaintiffs," Pls. Br. 63, but they do not mean only as applied to Plaintiffs. They ask for relief as applied to Plaintiffs and Plaintiffs' non-party PBMs, contractors, and agents, Pls. Br. 65-66. That fails to abide *CASA* and Iowa's double presumption of severability of state laws.

If this Court upholds any part of the district court's injunction or expands that injunctive relief to include sections raised in Plaintiffs' cross-appeal, it should ensure the relief is properly narrowed to afford relief: (1) only to parties, and to nonparties only incidentally, and (2) only to those sections held to violate ERISA's express preemption or the First Amendment, and not extended to any other sections given Iowa's double presumption of severability and that every section but one can survive on its own right.

The district court failed to do that. This Court should, at a minimum, correct that error.

### A. Extending the injunction to cover nonparty PBMs exceeds limits on equity and Article III judicial power.

Nonparty relief may be an injunction's "*practical effect*," but it cannot be its purpose. *CASA*, 606 U.S. at 844. Yet nonparty relief—as to PBMs—was an essential purpose of the district court's order. Def. Br. 62-64. This Court should limit the scope of any injunctive relief to the parties.

Though post-*CASA* this Court has remanded for district courts to consider the appropriate scope of injunctive relief in the first instance, *e.g.*, *Sanderson v. Hanaway*, 163 F.4th 1101, 1109 (8th Cir. 2026), it need not remand here because the district court already considered *CASA* in shaping the scope of its injunction. The district court erred.

In the district court and on appeal, Plaintiffs argue "complete relief" is only possible here "if their adjunct PBMs likewise are protected from enforcement" because "it is practically impossible for Plaintiffs" to operate without PBMs. Pls. Br. 22. The district court agreed—reasoning that PBMs' and plans' "functional interdependence" necessitated broader relief. App.Vol.IV.698, R.Doc.54 at 82.

But there is no "functional interdependence" exception to Article III's limits. Courts lack power to grant "relief that extend[s] beyond the

parties" to the case. *CASA*, 606 U.S. at 844. More, that reasoning contradicts the record: Some Plaintiffs do not even contract with PBMs, so it is not impossible to operate without them. App.Vol.IV.620, R.Doc.54 at 4 (citing R.Doc.1 ¶8).

Plaintiffs raise one argument on appeal that is missing from their complaint and preliminary-injunction motion and briefing: Because PBMs are "in privity" with Plaintiffs, "they could be bound by any judgment" and so "should obtain the benefit of the ruling as well." Pls. Br. 65-66. But this Court ordinarily does not consider arguments advanced for the first time on appeal, especially where "the record on appeal generally would not contain the findings necessary to an evaluation of the validity" of the arguments. *Fleck*, 937 F.3d at 1116 (quotation marks omitted). And that is so here, where Plaintiffs' argument relies on facts neither pressed in nor found by the district court.

Even assuming Plaintiffs are implicitly invoking indemnification provisions in their PBM contracts, they do not direct this Court to the necessary facts supporting their privity theory of nonparty relief. Pls. Br. 65-66 (providing no record support). This Court need not relieve Plaintiffs

of their duty to develop their arguments. *See ASARCO*, 762 F.3d at 753; *Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006) ("[Plaintiff] fails to direct us to specific record locations supporting [their] challenge. Without some guidance, we will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments."); *cf. Gilbert v. Des Moines Area Com. Coll.*, 495 F.3d 906, 915 (8th Cir. 2007) ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.").

This case is at a preliminary stage. So if Plaintiffs want to seek relief for their nonparty PBMs, then they could amend their complaint to plead third-party standing, *CASA*, 606 U.S. at 866 (Alito, J., concurring) or convince their PBMs to sue for their own injunctive relief. But if Plaintiffs want to rely on a fact-intensive privity theory of nonparty relief, then they should raise that in the district court first.

### B. Section 510B.8B(3)'s dispensing fee is severable, just like every otherwise permissible SF383 regulation.

Iowa's laws are presumed severable. Iowa Code § 4.12; *see Breeden v. Iowa Dep't of Corrs.*, 887 N.W.2d 602, 609 (Iowa 2016). Doubly so here, where SF383 included a severability clause. Iowa Code § 510B.12.

Plaintiffs ask this Court to deem SF383 inseverable in its entirety. Pls. Br. 62. But the analysis here begins with a heavy thumb on the scale in favor of severability, and Plaintiffs fail to explain why each of the otherwise permissible SF383 sections cannot be given independent effect. Def. Br. 65-68.

The district court understood that almost every remaining section can be given independent effect because "SF383 encompasses multiple discrete regulatory provisions that can function independently" and which "serve distinct but related purposes" and can therefore "function independently." App.Vol.IV.695, R.Doc.54 at 79. Other than asserting that the Court's work would become impermissibly legislative, Plaintiffs do not carry their burden of developing why any permissible section is too intertwined with impermissible ones to be given effect. And neither of the two cases Plaintiffs cite in support held a state legislative act entirely inseverable despite a severability clause. Pls. Br. 62-63.

But the district court did incorrectly reason the otherwise permissible dispensing-fee section was not severable from the preempted "anti-discrimination and anti-steering provisions." App.Vol.IV.696, R.Doc.54 at 80. The dispensing fee is a discrete regulation that serves a distinct purpose and thus can function independently. The district court erred by making findings about legislative intent and consumer behavior, when it should have honored the clearest expression of legislative intent: The statute's text. Indeed, when "there is a severability clause in the statute itself the presumption is inescapable that this was the legislative intent." *State v. Books*, 225 N.W.2d 322, 325 (Iowa 1975). "[J]udicial conjecture about market dynamics and general legislative intent is not a substitute for statutory text." Community Pharmacies Amici Br. 31-33.

Plaintiffs defend the district court's speculative assumptions, reporting that the district court "ably found the facts" concerning the Legislature's intent. Pls. Br. 63-64. But that is exactly the error.

More, it is unclear why the court considered the dispensing fee "related" to anti-discrimination and anti-steering sections, when it resides in the same section (section 510B.8B) as reimbursement-rate requirements the court upheld—including two parts Plaintiffs no longer

argue are preempted. Pls. Br. 18 n.5, 47 n.12. The statute's plain text and structure thus confirm that the dispensing fee can, and should, be given independent effect from any preempted sections.

Contrary to Plaintiffs' conclusory response that Defendant "has not shown the necessary clear error or any other abuse of discretion," Pls. Br. 64, if the district court's fact-finding take precedence over the statute's text, Defendant explained the abuse of discretion. The court's market assumptions were wrong. Def. Br. 67. And, worse, the court began from a flawed premise that all "anti-discrimination and anti-steering provisions" were preempted, yet several such sections were not preempted. Def. Br. 68. Including one that Plaintiffs no longer argue is preempted. Pls. Br. 47 n.12. Plaintiffs did not respond to those arguments.

## VI. The District Court Abused Its Discretion by Downplaying the State's Irreparable Harm and Waiving Rule 65(c)'s Mandatory Injunction Bond.

### A. The equities strongly weigh against preliminary relief.

Plaintiffs must establish they are "likely to prevail on the merits," but they fail to satisfy that rigorous standard. *Rounds*, 530 F.3d at 730. That is fatal to their cross-appeal, as with the other claims on appeal.

The equities weigh against injunctive relief too. The State continues to suffer irreparable harm when enforcement of its duly enacted statute is enjoined. *CASA*, 606 U.S. at 860-861. When dealing in the realm of protecting public health and economic well-being, that harm is substantial. *See, e.g.*, App.Vol.I.158, R.Doc.31-1 ¶¶41, 42 (highlighting that PBM transparency, like SF383 requires, results in excessive consumer savings: $35,000 monthly savings for one plan sponsor as to just one specialty drug; triple rebate savings for another); Def. Br. 70 (citing supporting declarations).

The district court spotlighted Plaintiffs' asserted irreparable harm, then disregarded the State's irreparable harm by saying that any such harm is obviated because—in the court's view—Plaintiffs are right on the merits. App.Vol.IV.693, R.Doc.54 at 77. But the merits is a distinct factor from the State's harm and the public interest. *Dixon*, 950 F.3d at 1055 (abuse of discretion to disregard "a relevant factor").

The district court's injunctive relief as to nonparty PBMs disrupted the status quo, as would any further relief Plaintiffs seek on cross-appeal. Before the district court's issuance of the preliminary injunction, Defendant could enforce the law against nonparty PBMs; similarly,

Defendant may presently enforce the sections Plaintiffs raise on cross-appeal against anyone. Plaintiffs do not dispute those realities, instead arguing about whether Defendant was "in the midst of enforcing SF 383 against anyone," which is irrelevant. Pls. Br. 67.

### B. This Court should reaffirm that Rule 65(c) injunction bonds are not optional.

District courts may determine the amount of an injunction bond, but they lack discretion to waive it. Rule 65(c) is unambiguous in that regard. Indeed, when the federal rules leave the decision whether to require bond to the court's discretion, they expressly say so. *See, e.g.*, Fed. R. App. P. 41(d)(3) ("The court may require a bond or other security as a condition to granting or continuing a stay of the mandate."). Yet here the district court "waive[d] the bond requirement entirely." App.Vol.IV.700-701, R.Doc.54 at 84-85. That was an abuse of discretion.

Plaintiffs report that the district court "set the amount at zero." Pls. Br. 68. But the district court made clear it "waive[d] the bond requirement entirely." It did not set bond at zero—it required no bond at all. That distinction matters. Plaintiffs otherwise fail to engage with Defendant's arguments on the Rule's text or distinctions about cases on which the district court relied.

The Court's clarification is needed on the importance of Rule 65(c)'s mandatory bond requirement. District courts, and plaintiffs, continue to invoke *Richland/Wilkin Joint Powers Auth. v. United States Army Corps of Eng'rs*, 826 F.3d 1030, 1043 (8th Cir. 2016) as the definitive authority allowing courts to waive Rule 65(c). Not only is that case distinguishable on its facts, Def. Br. 71-72, it is contrary to binding circuit precedent.

This Court has long understood Rule 65(c) to be mandatory when private parties, not public-interest groups, seek injunctive relief. *See Hyll v. Xyquad, Inc.*, 939 F.2d 627, 632 (8th Cir. 1991); *Rathmann Grp. v. Tannenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); *cf. Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 373 (8th Cir. 1991) (remanding for entry of preliminary injunction and directing court to require Rule 65(c) security).

*Richland/Wilkin*'s later holding cannot be reconciled with those earlier cases. Under the prior panel rule, this Court "is bound by the decision of a prior panel." *United States v. Donath*, 107 F.4th 830, 836 (8th Cir. 2024) (quoting *Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc)). Earlier panels recognized Rule 65(c)'s mandatory

language. *Richland/Wilkin* then created an atextual exception to Rule 65(c).

This Court should un-muddy the waters in the wake of *Richland/Wilkin* and confirm that Rule 65(c) means what it says.

## CONCLUSION

For these reasons, this Court should vacate the preliminary injunction and reject Plaintiffs' cross-appeal claims.

February 12, 2026

Respectfully submitted,

BRENNA BIRD
Attorney General of Iowa

ERIC WESSAN
*Solicitor General*

/s/ Patrick C. Valencia
PATRICK C. VALENCIA
*Deputy Solicitor General*

Hoover State Office Building
1305 East Walnut Street
Des Moines, Iowa 50319
(515) 823-9117 / (515) 281-5191
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov
patrick.valencia@ag.iowa.gov

*Counsel for Defendant-Appellant/Cross-Appellee*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g) and Local R. 25A, I certify the following:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2)(A) because it contains 12,994 words, excluding those parts exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because the brief has been prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft Office 365.

3. This brief complies with the electronic filing requirements of Local R. 25A because the text of the electronic brief is identical to the text of the paper copies and because the electronic version of this brief has been scanned for viruses and no viruses were detected.

February 12, 2026

*/s/ Patrick C. Valencia*
PATRICK C. VALENCIA
*Deputy Solicitor General*

*Counsel for Defendant-Appellant/Cross-Appellee*

**CERTIFICATE OF SERVICE**

I certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on February 12, 2026. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

February 12, 2026

*/s/ Patrick C. Valencia*
PATRICK C. VALENCIA
*Deputy Solicitor General*

*Counsel for Defendant-Appellant/Cross-Appellee*