**Nos. 25-2494, 25-2591**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

---

Iowa Association of Business and Industry; Iowa Bankers Benefit Plan; Iowa Laborers District Council Health and Welfare Fund; Des Moines Orthopaedic Surgeons, P.C.; Iowa Spring Manufacturing & Sales Company,

*Plaintiffs-Appellees/Cross-Appellants*

v.

Iowa Insurance Commissioner, Doug Ommen,

*Defendant-Appellant/Cross-Appellee*

---

On Appeal from the United States District Court
for the Southern District of Iowa (Chief Judge Stephanie M. Rose)

---

# REPLY BRIEF OF APPELLEES/CROSS-APPELLANTS


Ryan G. Koopmans
KOOPMANS LAW GROUP, LLC
500 East Court Ave., Suite 420
Des Moines, IA 50309
Telephone: (515) 978-1140
Email: ryan@koopmansgroup.com

Anthony F. Shelley
*Counsel of Record*
MILLER & CHEVALIER CHARTERED
900 Sixteenth St. NW
Washington, DC 20006
Telephone: (202) 626-5800
Email: ashelley@milchev.com

*Counsel for Plaintiffs/Appellees/Cross-Appellants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................ 1

ARGUMENT ........................................................................................ 2

I. PLAINTIFFS HAVE STANDING TO CHALLENGE UNDER THE FIRST AMENDMENT THE ANTI-STEERING PROVISION APPLICABLE TO PBMS ........................................................................ 2

II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR ERISA-PREEMPTION CLAIM ON THE SF 383 PROVISIONS AT ISSUE ON CROSS-APPEAL ........................................ 4

A. Defendant Fails to Heed Preemption Basics ........................................ 4

B. ERISA Preempts the SF 383 Provisions at Issue on Cross-Appeal ........................................................................ 7

C. The SF 383 Provisions at Issue on Cross-Appeal Are Not Saved Insurance Regulations ........................................................ 14

D. Recent DOL Proposed Rules and Congressional Action Confirm that ERISA Preempts State PBM-Aimed Regulation .......... 20

III. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR FIRST-AMENDMENT CLAIM CHALLENGING THE ANTI-PROMOTION PROVISION ................................................ 22

IV. BECAUSE NONE OF THE REMAINDER OF SF 383 IS SEVERABLE, SF 383 SHOULD BE ENJOINED IN ITS ENTIRETY AS APPLIED TO PLAINTIFFS ................................................ 24

CONCLUSION ........................................................................................ 29

CERTIFICATE OF COMPLIANCE ........................................................ *Post*

CERTIFICATE OF SERVICE ........................................................ *Post*

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*,
447 U.S. 557 (1980) .......... 24

*Egelhoff v. Egelhoff*,
532 U.S. 141 (2001) .......... 4, 8, 12

*Free Enter. Fund v. PCAOB*,
561 U.S. 477 (2010) .......... 27

*Gobeille v. Liberty Mut. Ins. Co.*,
577 U.S. 312 (2016) .......... *passim*

*Kentucky Ass'n of Health Plans, Inc. v. Miller*,
538 U.S. 329 (2003) .......... *passim*

*Koenig v. Aetna Life Ins. Co.*,
No. 13-CV-00359, 2015 U.S. Dist. LEXIS 145656
(S.D. Tex. Oct. 27, 2015) .......... 17

*Metro. Life Ins. Co. v. Mass.*,
471 U.S. 724 (1985) .......... 19

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995) .......... 10, 11

*NGS Am. v. Barnes*,
998 F.2d 296 (5th Cir. 1993) .......... 16, 17

*PCMA v. Gerhart*,
852 F.3d 722 (8th Cir. 2017) .......... 13, 16

*PCMA v. Mulready*,
78 F.4th 1183 (10th Cir. 2023), *cert. denied*,
145 S. Ct. 2843 (2025) .......... *passim*

*PCMA v. Wehbi*,
18 F.4th 956 (8th Cir. 2021) .......... *passim*

*Pilot Life Ins. Co. v. Dedeaux*,
481 U.S. 41 (1987) .......... 15, 16

*Rutledge v. PCMA*,
592 U.S. 80 (2020) .......... 4, 16

*Shaw v. Delta Air Lines*,
463 U.S. 85 (1983) .......... 9, 19

*Sisney v. Kaemingk*,
15 F.4th 1181 (8th Cir. 2021) .......... 27

*State v. Monroe*,
236 N.W.2d 24 (Iowa 1975) (en banc) .......... 28

*Zauderer v. Office of Disciplinary Council*,
471 U.S. 626 (1985) .......... 23

**Statutes**

Consolidated Appropriations Act, 2026,
H.R. 7148, 119th Cong. (Feb. 3, 2026) .......... 21

29 U.S.C. § 1002 .......... 5

29 U.S.C. § 1104 .......... 5, 8

29 U.S.C. § 1144 .......... *passim*

Iowa Code § 4.12 .......... 24, 25, 26, 27

Iowa Code § 510B.1 .......... 3

Iowa Code § 510B.4 .......... 25

Iowa Code § 510B.4B .......... *passim*

Iowa Code § 510B.8 .......... *passim*

Iowa Code § 510B.8B .......... *passim*

Iowa Code § 510B.8D .......... 24, 26

Iowa Code § 510B.8E .......... 5, 13, 18

Iowa Code § 510B.12 ........................................................................................24

**Other Authorities**

Fed. R. App. P. 28(j) ........................................................................................22

Fed. R. App. P. 28.1 ........................................................................................29

Dep't of Labor, Employee Benefits Security Admin., *Improving Transparency into Pharmacy Benefit Manager Fee Disclosure*, 91 Fed. Reg. 4348 (Jan. 30, 2026) ........................................................................20

*Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/specifically ........................................................................15

*PCMA v. Mulready*, U.S. Amicus Brief, No. 23-1213 (May 27, 2025), https://www.supremecourt.gov/DocketPDF/23/23-1213/359728/20250527171343811_23-1213_Mulready.pdf ..................................................6

## INTRODUCTION

On cross-appeal, in defending the parts of the District Court's decision denying preliminary relief concerning SF 383, Defendant repeats the same mistakes he makes in attacking the District Court's preliminary injunction: he rigidly demarcates PBMs from ERISA plans in order to deny Plaintiffs' standing to sue; takes an impermissibly narrow (and sometimes demonstrably erroneous) view of ERISA preemption; implausibly condemns the entire ERISA-plan and PBM communities for allegedly misleading behavior that purportedly nullifies their First-Amendment protections; and insists on the federal courts acting like a legislature to save the patchwork remaining parts of SF 383 from being struck along with its illegal portions. Under a correct view of standing, preemption, the First Amendment, and severability, the Court should reverse the parts of the District Court's decision denying Plaintiffs' request for a preliminary injunction, thereby nullifying SF 383 in its entirety as applied to Plaintiffs (and their agents, including PBMs).

Of note at the outset, Plaintiffs case for preemption has become even stronger since their last brief. *See* Corrected Response & Principal Brief of Appellees/Cross-Appellants ("Pls.' Principal Br."), Doc. 5598277 (Jan. 16, 2026). During that period, the U.S. Department of Labor ("DOL") issued proposed regulations that would closely regulate the relationship between PBMs and ERISA

plans, and then Congress enacted even more sweeping amendments to ERISA covering similar ground. *See infra* pp. 20-22. DOL's and Congress's actions show that the regulation of PBM services for ERISA plans is a topic well within ERISA's ambit and interests, so that state laws on the subject necessarily "relate to" ERISA plans and are preempted under 29 U.S.C. § 1144(a).

## ARGUMENT

### I. PLAINTIFFS HAVE STANDING TO CHALLENGE UNDER THE FIRST AMENDMENT THE ANTI-STEERING PROVISION APPLICABLE TO PBMS

In asserting standing to challenge under the First Amendment the anti-promotion aspect of the anti-steering provision applicable to PBMs (Iowa Code § 510B.4B(1)(a)), Plaintiffs rested on the same bases providing them with standing to challenge on preemption grounds various SF 383 provisions applicable to PBMs. For one thing, Plaintiffs can sue about provisions applicable to PBMs because PBMs are their adjuncts under *PCMA v. Wehbi*, 18 F.4th 956 (8th Cir. 2021). For another, because of indemnification clauses in their contracts with PBMs, Plaintiffs face injury themselves if Defendant takes enforcement measures against PBMs for failure to comply with the anti-steering provision.

Defendant rehashes his arguments on those standing grounds in his Response and Reply Brief ("Def.'s Resp. Br."), Doc. 5608147 (Feb. 13, 2026), to which Plaintiffs responded in their Principal Brief. But Defendant ignores

Plaintiffs' first basis for standing, which is that the PBM-oriented provisions, including the anti-steering provision, necessarily implicate Plaintiffs through the provisions' statutory language. *See* Pls.' Principal Br. 24. As Plaintiffs put it, the PBM's obligations "are defined entirely as to *beneficiaries of ERISA plans* or in conjunction with the *ERISA plan itself*." *Id.* The very definition of PBM in the Iowa Code is "a person who, pursuant to a contract or other relationship *with a third-party payor*, either directly or through an intermediary, manages a prescription drug benefit *provided by the third-party payor*." Iowa Code § 510B.1(17) (emphasis added).

Hence, an SF 383 provision applicable to a PBM cannot avoid also regulating the third-party payor itself (which, here, are Plaintiffs or Plaintiff Iowa Association of Business and Industry's members), since a PBM brings itself within SF 383's ambit solely when it administers the third-party payor's health plan. The Court can begin and end the standing inquiry by simply taking the statute at face value: Defendant's enforcement of PBM-oriented provisions like the anti-steering section inevitably affects Plaintiffs because a PBM can get into crosshairs with Defendant only when it is managing plans like Plaintiffs'.[1]

[1] Defendant appears to suggest that in making their argument in this Court and in the District Court on indemnification provisions, Plaintiffs improperly have publicly quoted a sealed document. *See* Def.'s Resp. Br. 21, 23. In reality, Plaintiffs sought and obtained the District Court's approval to do so at the hearing below. *See* App.711, R.Doc.66 at 8:17-23. They also openly noted in the parties'

## II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR ERISA-PREEMPTION CLAIM ON THE SF 383 PROVISIONS AT ISSUE ON CROSS-APPEAL

### A. Defendant Fails to Heed Preemption Basics

Defendant's defense against preemption of the SF 383 provisions at issue on cross-appeal rests on miscomprehension of basic ERISA-preemption tenets and disregard of persuasive, thoughtful case law. To start with, Defendant defends various SF 383 provisions, including the anti-steering provision (Iowa Code § 510B.4B(a)), by contending ERISA preempts solely state laws that "require plans to cover specific benefits or bind plans to specific rules determining beneficiary status." Def.'s Resp. Br. 44. *Rutledge v. PCMA* emphasized that state laws of that sort certainly are preempted, *see* 592 U.S. 80, 86-87 (2020), but it did not purport to limit ERISA preemption exclusively to that standard. Most notably, it is hornbook law that ERISA *also* preempts, for instance, any state law "that 'governs . . . a central matter of plan administration' or 'interferes with nationally uniform plan administration,'" *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 320 (2016) (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001)) – standards that make no appearance in Defendant's Response Brief.

---

joint motion to file a portion of the Joint Appendix under seal that Plaintiffs would in their public briefing cite to pages of the sealed volume of the Joint Appendix that did not contain the sensitive pricing data triggering the sealing. *See* Doc. 5566169, ¶ 4 (Oct. 7, 2025).

Next, Defendant contends that the preemption inquiry in this case cannot involve traditional notions of implied or conflict preemption, because Plaintiffs supposedly have not invoked them and because they allegedly are different than express preemption under 29 U.S.C. § 1144(a). *See* Def.'s Resp. Br. 37 n.2. To the contrary, Plaintiffs have relied on conflict preempt in addition to § 1144(a), such as by arguing on cross-appeal that ERISA's enforcement provision implicitly preempts an SF 383 remedy. *See* Pls.' Principal Br. 50-51 (asserting preemption of Iowa Code § 510B.8E(1)-(3)). Moreover, a theme throughout Plaintiffs' presentation, including on cross-appeal matters, *see id.* at 48 (asserting preemption of Iowa Code §§ 510B.8(4)); *see also infra* pp. 11-12 (asserting preemption of Iowa Code § 510B.8(5), (7)), is that SF 383 impermissibly impedes fiduciary discretion. ERISA's fiduciary standards are set forth in 29 U.S.C. § 1104; any state law that touches on a fiduciary's obligations not only seeks to govern a central matter of plan administration and therefore "relate[s] to" ERISA plans, so as to fall under § 1144(a), but also conflicts with the statutory fiduciary provision itself insofar as it undermines a fiduciary's discretion.[2]

[2] Another basic ERISA-law error Defendant makes is to assert that ERISA's fiduciary-duties section (§ 1104) applies just "to self-funded plans." Def.'s Resp. Br. 35. It applies to *all* ERISA-plan fiduciaries, which includes anyone handling plan assets or having or exercising discretion in the administration or management of an ERISA plan. 29 U.S.C. § 1002(21)(A).

Finally, in the entirety of the discussion regarding ERISA preemption in his Response Brief, Defendant fails even to mention the Tenth Circuit's decision in *PCMA v. Mulready*, let alone grapples with its negative implications for his preemption positions. But *Mulready* is thorough and well-reasoned (*see* 78 F.4th 1183, 1193-1204 (10th Cir. 2023), *cert. denied*, 145 S. Ct. 2843 (2025)); was careful to emphasize its consistency with *Wehbi* (*see id.* at 1196, 1203); was subject to a petition for certiorari that the Supreme Court denied after obtaining the Solicitor General's views, which were *against* reviewing the Tenth Circuit's decision because the Tenth Circuit was "correct" and Oklahoma's positions against preemption were "unsound" (U.S. Amicus Br. at 10-11, *PCMA v. Mulready*, No. 23-1213 (May 27, 2025), https://www.supremecourt.gov/DocketPDF/23/23-1213/359728/20250527171343811_23-1213_Mulready.pdf); and ultimately found in favor of preemption on, for example, state cost-sharing and mail-order pharmacy restrictions closely analogous to ones Plaintiffs challenge on cross-appeal. *See* 78 F.4th at 1198-1200; Pls.' Principal Br. 49-50 (asserting preemption of Iowa Code § 510B.8(5), (7)). Against that backdrop, Defendant's Response Brief made one mention of *Mulready*, on standing.

### B. ERISA Preempts the SF 383 Provisions at Issue on Cross-Appeal

For preemption purposes, Plaintiffs' cross-appeal focuses on eight provisions of SF 383. *See* Pls.' Principal Br. 47-51. Nothing in Defendant's Response Brief undermines Plaintiffs' showing on those provisions.

#### *1. Anti-Steering Provision (Iowa Code § 510B.4B(1)(a))*

Defendant maintains that ERISA does not preempt the anti-steering provision applicable to PBMs because the provision does not mandate plans to provide specific benefits or to accept beneficiary status. Def.'s Resp. Br. 43-44. According to Defendant, plans establish coverage provisions and beneficiary status well before any PBM steering, so that § 510B.4B(1)(a) cannot possibly bind plans in the way ERISA demands for preemption. *See id.* at 43.

The initial problem with Defendant's argument is its premise that ERISA preemption operates just for state laws that compel plans to cover specific benefits or set beneficiary rules. As Plaintiffs just showed, ERISA preemption extends to a much wider variety of state measures, including "laws that govern, or interfere with the uniformity of, plan *administration*." *Gobeille*, 577 U.S. at 320 (emphasis added). The anti-steering provision requires PBMs, who *administer* prescription-drug benefits on behalf of ERISA plans, to adopt a treat-all-pharmacies-the-same approach when administering the ERISA plan, thus skewing the plan's administration to the state's preferences concerning pharmacies rather than

aligning with the plan's and beneficiary's best interests. In any event, the anti-steering provision *does* bind ERISA plans to state-dictated coverage: when a state insists, as with the anti-steering provision, that the ERISA plan's chosen administrator (here, the PBM) abstain from "copayment or coinsurance variation" or "reduction[s] in reimbursement" for using certain pharmacies or stay silent about the advantages of using the ERISA plan's favored pharmacies – and instead abide by the state's (allegedly) more egalitarian approach toward pharmacies – the state effectively substitutes its coverage priorities for the plan's. Iowa Code § 510B.4B(1)(a); *see Egelhoff*, 532 U.S. at 147 ("to determine whether a state law [is preempted], we look . . . to *the nature of the effect of the state law on ERISA plans*") (emphasis added; cleaned up).

### ***2. Notice Provision to Covered Persons about In-Network Pharmacies (Iowa Code § 510B.4B(2)(b))***

In their Principal Brief, Plaintiffs showed that ERISA preempts SF 383's notice provision requiring ERISA plans themselves (not even PBMs) to notify their beneficiaries of the names and locations of pharmacies within the ERISA plan's network. The provision constitutes the creation of an additional obligation for ERISA-plan administrators that, if regulated at all, must be through ERISA's fiduciary-duties section, 29 U.S.C. § 1104. *See* Pls.' Principal Br. 47-48.

In response, Defendant (echoing the District Court) says SF 383 calls for the disclosure of just "straightforward information" and is *de minimis* under *Wehbi*, so

that it should escape preemption. Not so. ERISA proscribes state laws that in any manner affect ERISA's central areas of plan administration, such as "reporting, disclosure, and fiduciary responsibility." *Shaw v. Delta Air Lines*, 463 U.S. 85, 91 (1983). Here, "[t]he state statute imposes duties that are inconsistent with the central design of ERISA, which is to provide a *single* uniform national scheme for the administration of ERISA plans without interference from laws of the several States even when those laws, to a large extent, impose parallel requirements." *Gobeille*, 577 U.S. at 326-27 (emphasis added). As to *Wehbi*, its supposed *de minimis* exception was not applied to rescue a state law that interfered with central matters of plan administration, a point *Mulready* explains. *See Mulready*, 78 F.4th at 1202-03 (distinguishing *Wehbi*); *Wehbi*, 18 F.4th at 968 (using *de minimis* language when addressing "a noncentral matter of plan administration") (cleaned up).

### ***3. Passthrough by PBM of Drug Manufacturers' Rebates (Iowa Code § 510B.8(4))***

Plaintiffs showed in their Principal Brief that ERISA preempts SF 383's requirement in Iowa Code § 510B.8(4) that PBMs pass through rebates to health carriers or ERISA-plan sponsors, because the provision clips fiduciary discretion to fashion compensation arrangements for the plan's insurers and PBMs. Defendant (again echoing the District Court) retorts that the provision "'further[s] rather than hinder[s] fiduciary duties' because it 'ensur[es] that rebates flow to [ERISA plans

and sponsors] rather than being retained by PBMs.'" Def.'s Resp. Br. 46 (quoting App.659, R.Doc.54 at 43). In is enough simply to reply (as with the SF 383 requirement of notice to beneficiaries about in-network providers) that, under *Gobeille*, it makes no difference whether the state law helps or is parallel on a central matter of plan administration, for the area is exclusively ERISA's province.[3]

#### *4. Dispensing Fee for Retail Pharmacies (Iowa Code § 510B.8B(3))*

The parties' disagreement regarding the acute-effects-on-plans test enunciated in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.* ("*Travelers*"), 514 U.S. 645 (1995), concerns whether *Travelers* exclusively limits the standard to state laws with "'exorbitant'" economic ramifications. Def.'s Resp. Br. 46 (quoting *Travelers*, 514 U.S. at 664). The Supreme Court's choice of terminology – *i.e.*, "acute" – indicates otherwise. With the dispensing fee imposed under Iowa Code § 510B.8B(3), the Iowa legislature enacted a severe and sudden (namely, acute) financial requirement applicable to ERISA plans. ERISA plans would have had no time to adjust to it

[3] Congress's recent amendments to ERISA address expressly the passthrough of rebates by PBMs, confirming that the topic is one for federal, not state, regulation. *See infra* p. 21.

had it not been enjoined, and they likely would have cut benefits in draconian fashion to accommodate the fee. *See* Pls.' Principal Br. 49.

The acuteness standard really would have no content at all if it did not apply to a state-law surcharge with an abrupt impact in the range of millions of dollars for just a single ERISA plan. *See* App.73, R.Doc.6-2, ¶ 30. The Iowa legislature chose an overly aggressive effective date for the dispensing fee, and the consequence is it created a state law causing acute financial stress for ERISA plans that merits invalidation under *Travelers*.

#### ***5.&6. Credit for Cost-Sharing Irrespective of Source of Funds (Iowa Code § 510B.8(5)) & Cost-Sharing Rules for High-Deductible Health Plans (Iowa Code § 510B.8(7))***

The cost-sharing provisions on cross-appeal are analytically the same as the ones on appeal and likewise are preempted by ERISA because, as *Mulready* emphasizes, they are "quintessential state laws that mandate benefit structures." 78 F.4th at 1199; *see* Pls.' Principal Br. 40-42, 49-50. Again, Defendant does not address *Mulready*, simply instead asserting in conclusory fashion (and wrongly) that plan terms on beneficiary copays, coinsurance, and deductibles are innocuous "cost" matters. Def.'s Resp. Br. 48.

Defendant's other response is that the cost-sharing provisions at issue on cross-appeal apply just to PBMs, with plans supposedly "'retain[ing] complete discretion over formularies, network composition, cost-sharing levels, and

underlying benefit designs.'"  *Id.* (quoting App.668, R.Doc.54 at 52).  However, even assuming a plan still freely established its benefit design, Iowa undermines that design with these sections of SF 383 by then mandating that the plan's administrator – its contracted PBM – instead follow *the state's rules* for cost-sharing.  It is another example of Iowa, in effect, negating the plan's design by dictating the behavior of the entity who administers the plan design.  Put differently, it is no different for Iowa directly to order a plan to adopt certain cost-sharing conventions than for it indirectly to accomplish the same goal by requiring the plan's administrator (at pain of state penalty) to apply the state's cost-sharing conventions.  Again, ultimately, it is "the nature of the effect of the state law on ERISA plans" that informs preemption analysis; and here, the nature of the effect of  Iowa Code § 510B.8(5) and (7) is to commandeer the plan's design by dictating rules to the party (the PBM) who, of necessity, administers the plan's prescription-drug benefits.  *Egelhoff*, 532 U.S. at 147 (cleaned up).

### ***7. Quarterly Reporting to Defendant (Iowa Code § 510B.8B(4)(a)-(d))***

Defendant's argument in defense of SF 383's requirement that PBMs file quarterly reports with the state is that "ERISA is concerned with disuniformity in a *plan's* ERISA reporting requirements," and supposedly nothing in Iowa Code § 510B.8B(4)(a)-(d) "require[s] disclosing any plan information."  Def.'s Resp. Br. 44.  But Defendant misconstrues the reporting requirement.  It requires *claims* data,

which is plan information, because the PBM must include "[t]he month the prescription was dispensed" and "[t]he amount the pharmacy was reimbursed," which also assumedly includes copays and coinsurance paid by the beneficiaries. Iowa Code § 510B.8B(4)(b)(1), (3). Compiling reports that encompass plan data and that PBMs mandatorily must file with the state (not electively at the request of private parties) is the sort of reporting that *PCMA v. Gerhart*, 852 F.3d 722, 731 (8th Cir. 2017), found ERISA to preempt (in the part of the decision remaining good law).

### *8. PBM Appeal Mechanism (Iowa Code § 510B.8E(1)-(3))*

Defendant appears to concede that ERISA preempts any supplementary remedy state law provides to contest an ERISA plan's actions. Consequently, he seeks to interpret the remedy in Iowa Code § 510B.8E(1)-(3) as applicable solely to disputes regarding "the PBM-pharmacy relationship." Def.'s Resp. Br. 49. Nonetheless, the provision, on its face, states that the PBM must permit a pharmacy "to appeal *any* matter." Iowa Code § 510B.8E(1) (emphasis added). Defendant is not empowered to narrow the legislature's provision to one he perceives would more easily survive preemption. This Court, at a minimum, should order the enjoining of the provision insofar as it authorizes pharmacies to utilize the appeal process to enforce any aspects of SF 383 applicable to third-party payors, health plans, or health carriers.

### C. The SF 383 Provisions at Issue on Cross-Appeal Are Not Saved Insurance Regulations

#### *1. SF 383 Is Not "Specifically" Directed Toward Insuring Entities*

For the SF 383 provisions that Plaintiffs contend on cross-appeal are preempted, the question with respect to the first prong of the insurance savings-clause test boils down to whether state-law provisions mostly aimed at non-risk-bearing entities (here, PBMs) but who assist insurers in ERISA-plan administration are state laws "specifically directed toward entities engaged in insurance." *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003). Defendant answers "yes," based on a footnote in *Miller*. *Id.* at 336 n.1. But Defendant puts too much weight on that footnote, and the correct answer is that a state law primarily directed at entities carrying no risk (like PBMs) is *not* specifically directed toward insurers.

To be sure, *Miller* in its footnote does say that, in the setting there presented, non-insuring health-maintenance organizations "administering self-funded plans" were close enough to the insurers themselves "to bring them within the activity of insurance for purposes of § 1144(b)(2)(A)." *Id.* However, the Supreme Court so spoke in the context of a state law that had minimal overbreadth to non-insuring entities, otherwise applying entirely to actual insurers. Those circumstances are a far cry from the current situation. It is one thing to say that a law is specifically

directed toward insurers when it is 95% directed to them and just 5% directed to non-insurers (roughly so in *Miller*) than to say it is specifically directed toward insurers when it is (as here) about 80% directed to non-insurers (PBMs) and just 20% directed toward insuring entities (third-party payors). For at least three reasons, *Miller* should not be extended from its minimal-overbreadth situation to the maximum overbreadth occurring here.

*First*, the wording of the standard is that the state law must be *specifically* directed toward entities engaged in insurance. "Specifically" means "in a definite and exact way," "with precision," and "indicat[ing] . . . exact identity." "Specifically," *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/specifically. SF 383 in no manner is aimed with precision or exactitude at insurers: it is a state law scooping in insuring entities as a way of better accomplishing the statute's main purpose of regulating non-insuring PBMs.

*Second*, earlier Supreme Court case law instructs that state laws whose main application is for non-insurers are not specifically directed toward insurers. In *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 50 (1987), the Supreme Court emphasized that a state law, to be saved, "must not just have an impact on the insurance industry, but must be specifically directed toward that industry." There, the Court found *un*saved Mississippi's body of bad-faith insurance law because it was a compartment of "the general principles of Mississippi tort and contract law."

*Id.* If a state law is not saved when the majority of the law's applications are to non-insurers (as in *Pilot Life*), then it should follow that SF 383 is not saved, since the majority of its provisions apply to non-insuring PBMs. While Defendant might argue that *Pilot Life* pre-dates *Miller*, the "specifically directed toward entities engaged in insurance" prong of the *Miller* test, in fact, comes from *Pilot Life*. *See Miller*, 538 U.S. at 334, 341 n.4.

*Third*, no prior decision involving a state law principally aimed at regulating PBMs or third-party administrators ("TPAs"), of which PBMs are a species, has found the law to be a saved state insurance regulation: not *Rutledge*, not *Wehbi*, not *Gerhart*, not *Mulready*. True, the savings-clause argument was not raised in those particular cases (other than in *Mulready* belatedly at the appellate level); but the argument was absent likely because litigants and courts could not readily imagine that a state law aimed at administrators is actually a law aimed at insurers. Instead, case law straightforwardly contrary to Defendant's position pre-existed the legion of recent state PBM-law litigation challenges. *See NGS Am. v. Barnes*, 998 F.2d 296, 299 (5th Cir. 1993) (rejecting application of savings clause to state law regulating TPAs, since it does not "regulate[] the business of insurance").[4]

[4] Defendant treats *Barnes* as bad law simply because it pre-dates *Miller*. But *Barnes* did not turn on any legal considerations now foreign under *Miller*. Courts within the Fifth Circuit have continued to rely on *Barnes*'s savings-clause analysis

One additional point on *Miller*'s first prong warrants mention on reply: For SF 383 sections at issue on cross-appeal, Defendant contends that Plaintiffs should be foreclosed from challenging application of *Miller*'s first prong to non-risk-bearing PBMs that assist ERISA plans, because Plaintiffs also assert standing based on PBMs being their functional equivalent. *See* Def.'s Resp. Br. 35 (on savings clause, Defendant incorporating "same" arguments for cross-appeal as asserted on appeal). Under Defendant's logic, PBMs must be treated for savings-clause purposes as insurers, because for standing purposes Plaintiffs say PBMs are interchangeable with the ERISA plans themselves. *See id.* at 30.

But Plaintiffs explained in their Principal Brief why Defendant's analogy is inapt, *see* Pls.' Principal Br. 54-55 n.13, and Defendant does not address the substance of that argument. Plaintiffs have standing to challenge the PBM-oriented provisions of SF 383 because PBMs, of necessity, *administer* Plaintiffs' ERISA plans' prescription-drug benefits. The savings clause, on the other hand, in asking if a state law is specifically directed to entities engaged in insurance focuses on the *insuring*-character of the entities on which the state law is focused. A PBM, like a TPA, "stands in the shoes of the insurer for all purposes *except the bearing of risk.*" *Barnes*, 998 F.2d at 299 (cleaned up). Thus, while PBMs' and Plaintiffs'

---

post-*Miller*. *E.g.*, *Koenig v. Aetna Life Ins. Co.*, No. 13-CV-00359, 2015 U.S. Dist. LEXIS 145656, at *25-26 (S.D. Tex. Oct. 27, 2015).

equivalence for administrative purposes gives Plaintiffs standing to challenge Iowa laws applied to PBMs, the fact that PBMs are not Plaintiffs' equivalent when it comes to *insurance duties* allows them simultaneously to show, rightly, that Iowa's focus in SF 383 on PBMs prevents the law from being characterized as directed toward insurers.

### ***2. The Parts of SF 383 at Issue on Cross-Appeal Do Not Substantially Affect the Risk-Pooling Arrangement Between Insurer and Insured***

In their Principal Brief, Plaintiffs noted in general fashion that most of SF 383's provisions are not of the type traditionally fitting *Miller*'s second prong: they do not *transfer risk* between insurers and insureds. Sticking to the SF 383 provisions at issue on cross-appeal, matters such as promoting certain pharmacies to beneficiaries (Iowa Code § 510B.4B(1)(a)), providing information to beneficiaries about pharmacies' in-network status (*id.* § 510B.4B(2)(b)), ensuring that PBMs pay passthrough rebates to ERISA-plan sponsors or insurers (*id.* § 510B.8(4)), adding a dispensing-fee surcharge to prescriptions filled by certain pharmacies (*id.* § 510B.8B(3)), reporting data to the state (*id.* § 510B.8B(4)(a)-(d)), and appellate remedies for pharmacies (*id.* § 510B.8E(1)(3)) have little to do with who – between the insurer and insured – shall carry the risk of loss in the event of the insured's sickness or injury. It is a state's *coverage mandates* that ordinarily are categorized as risk-bearing provisions, and – among the provisions at

issue on cross-appeal – only the cost-sharing mandates in Iowa Code §§ 510B.8(5) and 510B.8(7) potentially fit that bill. *See Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 728, 727 (1985) (finding to be saved a Massachusetts "mandated-benefit statute[]" that "specified minimum mental-health-care benefits be provided [to] a Massachusetts resident who is insured under a general insurance policy").

Defendant criticizes Plaintiffs' approach, saying Plaintiffs had the obligation to go one by one through the various SF 383 provisions (including those on cross-appeal) and show they are saved from preemption. But it is *Defendant* who has the burden of showing that "any of the narrow exceptions to § 514(a) [29 U.S.C. § 1144(a)] saves these laws from pre-emption." *Shaw*, 463 U.S. at 100; *see generally Mulready*, 78 F.4th at 1204 (describing savings clause "as an affirmative defense").

And when he does try to meet his burden, Defendant does so ineffectively. For the SF 383 provisions on cross-appeal, he engages in a sort-of "elbow is connected to the arm-bone, which is connected to the shoulder" approach, whereby he can connect just about any legal provision to a change in coverage or expansion of insureds' options under the insurance policy, through hypothetical downstream ramifications from the state law. *See* Def.'s Resp. Br. 35-36. However, *Miller* itself rejects the notion that state laws qualify as insurance regulations merely because they might, in some manner, eventually, hamper insurers or help insureds;

the laws must "*substantially* affect the risk pooling arrangement between the insurer and the insured," as in regulating "the scope of permissible bargains between insurers and insureds." 538 U.S. at 338-39 (emphasis added). Defendant has failed to show that state-law provisions regulating reporting, requiring the sharing of information about providers, taxing or surcharging for the benefit of providers, or increasing providers' remedies alter, and substantially so, any coverage conditions between insurers and insureds.[5]

### D. Recent DOL Proposed Rules and Congressional Action Confirm that ERISA Preempts State PBM-Aimed Regulation

If preemption of SF 383 provisions like those on cross-appeal remained in doubt, federal regulatory and legislative activity just since the filing of Plaintiffs' Principal Brief confirms the case. On January 30, 2026, DOL issued proposed regulations governing PBMs that provide services to ERISA plans. *See* Dep't of Labor, Employee Benefits Security Admin., *Improving Transparency into Pharmacy Benefit Manager Fee Disclosure*, 91 Fed. Reg. 4348 (Jan. 30, 2026).

---

[5] It is in this part of his Response Brief that Defendant particularly pounds the drumbeat of forfeiture, unreasonably criticizing Plaintiffs' appellate tactics and asserting they have forfeited various contentions. Plaintiffs have raised no issues on appeal that they did not raise below; nor have they pursued any argument not also present in their District Court presentation. There is nothing untoward about adding additional detail and case law support on appeal to an argument pursued below. Defendant does the same, *see, e.g.*, Def.'s Resp. Br. 54-60, but Plaintiffs do not shout "forfeiture."

These proposed regulations, currently focused on self-funded ERISA plans (but with DOL noting possible expansion to insured ones), would (if finalized) set standards for determining if an ERISA-plan / PBM contract is sufficiently reasonable to avoid ERISA infraction and otherwise would require disclosure by PBMs about – among other matters – their compensation, spread-pricing (*i.e.*, collecting more from ERISA plans than paid to pharmacies for benefits), and manufacturer-rebate collections.

Then on February 3, 2026, Congress amended ERISA to add mandates governing the relationship between ERISA plans (both self-funded and insured) and their PBMs. *See* Consolidated Appropriations Act, 2026 ("CAA"), H.R. 7148, 119th Cong. §§ 6701-02 (Feb. 3, 2026). In relevant part, the ERISA amendments require disclosures from PBMs to ERISA plans about PBM compensation, require reports from PBMs concerning drug prices they negotiate, mandate passthrough to ERISA plans of drug-manufacturer rebates obtained by PBMs (*id.* § 6702(a)(2)), and extend ERISA's governance to subcontracts between service-providers to ERISA plans (such as TPAs) and entities (such as PBMs) whom the service-providers hire to help them.

With ERISA, Congress "inten[ded] to establish the regulation of employee welfare benefit plans as exclusively a federal concern." *Gobeille*, 577 U.S. at 321 (cleaned up). Given DOL's proposed rules and the CAA's ERISA amendments, it

is apparent that within the ERISA sphere is ERISA plans' relationships with their PBMs – otherwise DOL could not, and Congress would not, regulate them through ERISA. It cannot be that the matters covered by SF 383 fail to "relate to" ERISA plans for purposes of 29 U.S.C. § 1144(a) when the same topics are regulated by DOL and Congress through ERISA.[6]

## III. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR FIRST-AMENDMENT CLAIM CHALLENGING THE ANTI-PROMOTION PROVISION

On cross-appeal, Plaintiffs seek the extension of the District Court's First-Amendment holding to the anti-promotion aspect of the anti-steering provision applicable to PBMs, Iowa Code § 510B.4B(1)(a), given that they have standing to pursue a challenge to the anti-steering section (despite the District Court ruling otherwise). *See* Pls.' Principal Br. 58 & n.14. Defendant's lone response is that Plaintiffs have misread the anti-promotion provision as somehow muzzling *their* speech, when it silences only PBMs. *See* Def.'s Resp. Br. 61. But it is Defendant who has misread Plaintiffs' Principal Brief, which states that "the *muzzling of PBMs* functions, under *Wehbi* and due to indemnification obligations, as a

[6] Plaintiffs recognize that their presentation on the new federal measures was not part of their Principal Brief, since the developments occurred after the filing of that brief. The above discussion is in the spirit of a letter pursuant to Fed. R. App. P. 28(j) about new authorities. Plaintiffs have no objection if Defendant wishes to file a Rule 28(j) response letter limited to addressing the new authorities.

regulation of Plaintiffs themselves." Pls.' Principal Br. 30 (emphasis added). As highlighted earlier, PBMs are the administrators of the ERISA plans' prescription-drug coverage, and the PBMs' inability to promote one pharmacy over another that serves the plans' and beneficiaries' best interests is the same as Plaintiffs themselves (if they self-administered their plans) being unable to do so.

Ultimately, the anti-promotion provision violates the First Amendment because it prevents PBMs (as administrators of Plaintiffs' plans) from speaking freely to covered persons to provide beneficial, accurate information about their prescription-drug options. Though Defendant harps over and over again that everything Plaintiffs and their PBMs do constitutes "misleading" behavior (Def.'s Resp. Br. 3, 51, 52, 53), so that he can trigger lesser constitutional scrutiny under *Zauderer v. Office of Disciplinary Council*, 471 U.S. 626 (1985), the District Court saw through his conclusory accusations in its findings concerning the analogous anti-referral aspect of the anti-discrimination provision, Iowa Code § 510B.4B(1)(a). There, the District Court determined that "the regulated speech here concerns truthful information about lawful commercial transactions – specifically, communications regarding pharmacy services"; like the anti-referral provision, the anti-promotion provision "prohibits . . . PBMs from directing beneficiaries toward particular pharmacies based on fees, cost-sharing arrangements, or other plan considerations – speech that serves both the economic

interests of the speakers and the informational needs of consumers." App.683-84, R.Doc.54 at 67-68. In short, under *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 561 (1980), the anti-promotion provision constitutes "unwarranted government regulation."

## IV. BECAUSE NONE OF THE REMAINDER OF SF 383 IS SEVERABLE, SF 383 SHOULD BE ENJOINED IN ITS ENTIRETY AS APPLIED TO PLAINTIFFS

The District Court held that two provisions of SF 383 were inseverable from the illegal parts: (1) Iowa Code § 510B.8B(3), which establishes the dispensing fee for prescriptions filled at retail pharmacies; and (2) Iowa Code § 510B.8D(2), which calls for the supersession of SF 383 over contrary contract terms in third-party payor / PBM contracts. On cross-appeal, Plaintiffs maintain that the District Court should have found much more inseverable – namely, all of the remainder of SF 383 (as applied to Plaintiffs). That is the only outcome consistent with the limits on a federal court's powers under Article III of the Constitution.

The District Court viewed its task on severability as guided by SF 383's severability provision, Iowa Code § 510B.12, which incorporates Iowa Code § 4.12. *See* App.694, R.Doc.54 at 78. Based on those provisions, Defendant contends that a presumption in favor of severability applies here. *See* Def.'s Resp. Br. 66. He is incorrect, again. Section 4.12 does not say Iowa laws "are presumed severable." *Id.* It states that a "provision" or "application" of a statute ruled illegal

is severable if, and only if, the rest "can be given effect without the invalid provision or application." Iowa Code § 4.12. Accordingly, rather than presuming statutes to be severable, § 4.12 requires analysis of the remaining SF 383 provisions and a judgment-call on whether each can remain effective without the unlawful portions of SF 383.

This state-law-mandated inquiry is a daunting task for a federal court, especially with respect to SF 383. The District Court showed its work on the two provisions it found inseverable, and its effort was substantial.

On the dispensing fee, the District Court had pages of briefing, issued specific questions to the parties to address at its hearing (*see* App.707, R. Doc.66 at 4:6-7), heard lengthy argument from each side at the hearing, received evidence via competing declarations, and – as Defendant concedes – both made fact-findings regarding "consumer behavior" and addressed "legislative intent" in its preliminary-injunction decision. Def.'s Resp. Br. 67. Based on the facts and legislative intent it determined, the District Court surmised that ERISA plans and PBMs, of necessity, in order to satisfy the plans' fiduciary obligations, *must* steer beneficiaries to the least costly options. *See generally* App.621-26, 696, R.Doc.54 at 5-10, 80. Moreover, plans and PBMs could, and would, do so with ERISA preempting the anti-discrimination provision (Iowa Code § 510B.4) and the anti-referral element of the anti-discrimination provision barred by the First

Amendment. The result, inevitably, would be that leaving the dispensing fee in place, with the anti-discrimination provision declared illegal, would "driv[e] business away from" retail pharmacies and "produc[e] an effect opposite to the legislature's protective intent" toward retail pharmacies. App.696, R.Doc.54 at 80. Therefore, the dispensing fee, the District Court said, must go too.

The Court similarly "identifie[d] [as inseverable] . . . Iowa Code § 510B.8D(2), which provides that contractual requirements override conflicting terms but depends entirely on the underlying [preempted] contractual mandates." *Id.* Though the District Court stopped there, the same sort of inquiry was necessary under Iowa Code § 4.12 for all of SF 383's provisions otherwise not declared illegal: can they "be given effect without the invalid provision or application"? Iowa Code § 4.12. And the question is hard for many other parts of SF 383, complicated even more when considering any insurance savings-clause results.

For example, with the First Amendment barring the notice requirement in the any-willing-pharmacy provision in Iowa Code § 510B.4B(2)(a), *see* App.686-88, R.Doc.54 at 70-72, and if Defendant were right that the two any-willing-pharmacy provisions (Iowa Code §§ 510B.4B(1)(b), 510.4B(2)(a)) otherwise survive *Miller*'s test and are saved for insured plans, can requirements that plans or PBMs let all willing pharmacies enter the network (in insured situations) be

effective if willing pharmacies cannot compel plans and PBMs to share with them the commercially sensitive conditions for joining the network? Even the provision requiring PBMs quarterly to report data to the state (Iowa Code § 510B.8B(4)(a)-(d)) becomes suspect, in light of the District Court enjoining the illegal parts of SF 383. Would the Iowa legislature have wanted PBMs and regulators to proceed through the tasks of reporting and digesting the complex data this provision mandates, if the data collected covered the transactions of just market participants not subject to injunction?

The point is that the severability analysis for SF 383 under Iowa Code § 4.12 is long, arduous, and fraught with economics and guesswork about legislative choices – which leads to the Article III problem. Under Article III, severing cannot occur if it "would entail quintessential legislative work (in the case of a statute) . . . that the Constitution does not empower federal courts to undertake." *Sisney v. Kaemingk*, 15 F.4th 1181, 1194 (8th Cir. 2021) (cleaned up). Federal courts may not "blue-pencil" a statute and thereby assume an "editorial freedom [that] belongs to the Legislature." *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 509-10 (2010).

Yet, that is exactly what the District Court must do here. It must judge, provision by provision, whether the remainder of SF 383 can "be given effect" (Iowa Code § 4.12) with broad swaths of the statute missing for many market

participants. Further, it must pencil out words from certain sections (say, taking "referral" out of the anti-discrimination provision and (if Plaintiffs are correct) "promotion" out of the anti-steering provision applicable to PBMs) and glue those sections back together. All the while, the District Court must keep an eye on "apparent legislative intent." *State v. Monroe*, 236 N.W.2d 24, 35 (Iowa 1975) (en banc) (cleaned up).

In the circumstances of *this* case, the Court should hold that the entire statute falls with the illegal parts. This is a unique situation involving a highly complex, comprehensive, interwoven statute that regulates PBMs, health plans, third-party payors, insurance carriers, pharmacies, and covered persons; and the preemption and First-Amendment rulings (if Plaintiffs prevail) will leave holes throughout the statute. Certainly, severing is possible when a provision or two in a statute falls. However, when, as here, a federal court is faced with determining whether a state legislature would have enacted a measure that is a whisper of its original, and in the process must make inordinately complicated economic and legislative judgments, the solution consistent with Article III is not to sever and to leave it to the state legislature to redraw the statute.[7]

---

[7] In this reply, Plaintiffs have not addressed the sections of Defendant's Response Brief that involve Issue 3 (whether Plaintiffs have a federal cause of action to challenge SF 383 PBM-oriented provisions), Issue 7 (whether the District Court erred in extending the preliminary injunction to Plaintiffs' contractors and agents), and Issue 8 (whether the District Court abused its discretion on the preliminary-

## CONCLUSION

The Court should reverse the District Court's preliminary-injunction decision as to all issues Plaintiffs raise on cross-appeal, *see* Pls.' Principal Br. 1-4 (list of Issues Presented).

March 16, 2026

Respectfully submitted,

*/s/ Anthony F. Shelley*

Anthony F. Shelley
MILLER & CHEVALIER CHARTERED
900 Sixteenth St. NW
Washington, DC 20006
Telephone: (202) 626-5800
Facsimile: (202) 626-5801
Email: ashelley@milchev.com

Ryan G. Koopmans
KOOPMANS LAW GROUP, LLC
500 East Court Ave., Suite 420
Des Moines, IA 50309
Telephone: (515) 978-1140
Email: ryan@koopmansgroup.com

*Counsel for Plaintiffs/Appellees/Cross-Appellants*

injunction factors and by waiving a bond). *See* Pls.' Principal Br. 2-4 (listing Issues Presented for Review). Since these are not cross-appeal issues, Plaintiffs understand Fed. R. App. P. 28.1(c)(4) to preclude Plaintiffs from addressing them.

# <u>CERTIFICATE OF COMPLIANCE</u>

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This Corrected brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) because:

**<u>X</u>** this reply brief contains 6,485 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), or

2. This Corrected brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because:

**<u>X</u>** this Corrected brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point font in Times New Roman, or

3. I further certify that the .pdf files for this Corrected brief were scanned for viruses and no viruses were found in the files.

March 16, 2026

*<u>/s/ Anthony F. Shelley</u>*
Anthony F. Shelley

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2026, I electronically filed the foregoing **REPLY BRIEF OF APPELLEES/CROSS-APPELLANTS** with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Patrick C. Valencia, Assistant Attorney General
Eric H. Wessan, Assistant Attorney General
Office of Iowa Attorney General
1305 E. Walnut Street
Des Moines, IA 50319
patrick.valencia@ag.iowa.gov
eric.wessan@ag.iowa.gov

*Counsel for Defendant-Appellant/Cross-Appellee*

*/s/ Anthony F. Shelley*
Anthony F. Shelley